**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**GABRIELLE VALDEZ, as**
**Guardian Ad Litem for JANE DOE, a minor,**

     **Plaintiff,**

**vs.**                                    **Case No.**

**TAOS MUNICIPAL SCHOOLS;**
**LILLIAN TORREZ, ROBERT TRUJILLO,**
**LISA ABEYTA-VALERIO, and**
**EMY DEHERRERA in their individual capacities;**

     **Defendants.**

<u>**Jury Trial Requested**</u>

<u>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS,**
**NEGLIGENCE, AND OTHER TORTIOUS CONDUCT**</u>

COMES NOW the Plaintiff, by and through counsel, and brings the following causes of action under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1, et seq., and New Mexico common law.

<u>**INTRODUCTION**</u>

In the fall of 2018, Plaintiff Jane Doe, a young and vulnerable fourteen-year-old Taos High School freshman, was raped and sexually assaulted multiple times in different secluded locations throughout the school and campus. The perpetrator, T.R., was an older male student at the high school with a history of harassing and sexually abusing other young female students. One year prior, in the fall of 2017, T.R. raped and sexually assaulted "Jane Doe 2," another young female student in at least one of the same locations. Jane Doe 2 disclosed the sexual abuse to Defendant Taos Municipal Schools, and a criminal investigation into the same was ongoing at the time Plaintiff Doe was assaulted in 2018. At the time T.R. sexually abused Plaintiff Doe, Defendants

were aware of not only T.R.'s reputation for sexually aggressive behavior, but his sexual abuse of Jane Doe 2. Yet even after Taos Municipal Schools learned of T.R.'s abuse of Jane Doe 2, it failed to expel or otherwise discipline T.R., or mitigate T.R.'s unsupervised contact with female students. Taos Municipal Schools similarly failed to enhance monitoring of these secluded areas of the campus known to harbor sexual assaults.

## PARTIES

1.  Plaintiff Gabrielle Valdez is the Guardian Ad Litem for minor Jane Doe. Ms. Valdez is an attorney in good standing within the state of New Mexico, and is a resident of Albuquerque, New Mexico. She brings this action on behalf of Jane Doe for all causes of action within the instant complaint. Jane Doe is referred to as "Plaintiff" or "Jane Doe" throughout the complaint.

2.  Defendant Taos Municipal Schools (hereinafter TMS) is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C), as amended. Under NMSA 1978, § 22-5-4(E), Defendant TMS has the capacity to sue or be sued. Defendant TMS is responsible for the administration of public schools within its geographic boundaries. At all times material hereto, Defendant TMS received federal funding and financial assistance. At all times material hereto, Defendant TMS employed Defendants Torrez, Trujillo, Abeyta-Valerio, and DeHerrera. Plaintiff's claims under the New Mexico Tort Claims Act against Defendant TMS arise under NMSA 1978, § 41-4-6. Under the New Mexico Tort Claims Act, Defendant TMS is vicariously liable for the acts and omissions of Defendants Torrez, Trujillo, Abeyta-Valerio, and DeHerrera. At all times relevant, Defendant TMS was responsible for adopting and implementing the policies, customs, and practices of its employees and agents, including Defendants Torrez, Trujillo, Abeyta-Valerio, and DeHerrera. Defendant TMS is a political subdivision of the State of New Mexico and a "person" under 42 U.S.C. § 1983.

3.  Defendant Lillian Torrez (hereinafter Torrez) was, at all times material hereto, employed by

Defendant TMS as superintendent of TMS. Upon information and belief, Defendant Torrez resides in Taos County, New Mexico. At all times material hereto, Defendant Torrez was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended. Defendant Torrez acted in the course and scope of her duties as a TMS employee and under color of law. She is sued in her individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

4.   Defendant Robert Trujillo (hereinafter Trujillo) was, at all times material hereto, employed by Defendant TMS as a principal at Taos High School. Upon information and belief, Defendant Trujillo resides in Taos County, New Mexico. At all times material hereto, Defendant Trujillo was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended. Defendant Trujillo acted in the course and scope of his duties as a TMS employee and under color of law. He is sued in his individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

5.   Defendant Lisa Abeyta-Valerio (hereinafter Abeyta-Valerio) was, at all times material hereto, employed by Defendant TMS as an assistant principal at Taos High School. Upon information and belief, Defendant Abeyta-Valerio resides in Taos County, New Mexico. At all times material hereto, Defendant Abeyta-Valerio was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended. Defendant Abeyta-Valerio acted in the course and scope of her duties as a TMS employee and under color of law. She is sued in her individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

6.   Defendant Emy DeHerrera (hereinafter DeHerrera) was, at all times material hereto, an educator employed by Defendant TMS who, as part of her responsibilities, acted as a supervisor over certain classroom teachers.  Upon information and belief, Defendant DeHerrera resides in Taos County, New Mexico. At all times material hereto, Defendant DeHerrera was a public employee as

those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended. Defendant DeHerrera acted in the course and scope of her duties as a TMS employee and under color of law. She is sued in her individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

7.  With respect to Plaintiff's New Mexico Tort Claims Act claims, the acts and omissions complained of herein all constitute a basis for liability against Defendants, within the scope of the waivers of immunity proscribed by the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-1, et seq.

## JURISDICTION AND VENUE

8.  Jurisdiction over the federal claims is proper under 28 U.S.C. §§ 1331 and 1343. Supplemental jurisdiction over the state claims is proper under 28 U.S.C. § 1367(a) because the state claims and the federal claims derive from the same common nucleus of operative facts.

9.  Venue is proper in New Mexico under 28 U.S.C. § 1391(b) because all events giving rise to the claims occurred within this district.

## FACTUAL ALLEGATIONS

### T.R. SEXUALLY ASSAULTS ANOTHER YOUNG FEMALE STUDENT, "JANE DOE 2," DURING THE 2017-2018 SCHOOLYEAR

10. T.R. was a student at Taos High School during the 2017-2018 school year.  T.R., who was a minor at the time, is now an adult.  Because these allegations relate to conduct occurring before T.R. reached the age of majority, he is referred to using his initials throughout the complaint.

11. Jane Doe 2, who is not a party to this lawsuit, was a fifteen-year-old student at Taos High School during the 2017-2018 school year.

12. In September 2017, Jane Doe 2 asked to speak to the School's Dean of Students.  Jane Doe 2 proceeded to ask the Dean for the definition of rape.

13. Jane Doe 2 ultimately disclosed to the Dean of Students, in the presence of the School's assigned Taos Police Department Resource Officer, that T.R. had sexually assaulted her on school premises multiple times in multiple locations during the previous days.

14. A criminal investigation was initiated, during which Jane Doe 2 provided more detail concerning the nature and locations of the various assaults in August and September of 2017.

15. Jane Doe 2 reported that T.R. was a casual acquaintance. T.R. began following Jane Doe 2 around the hallways between classes and entered her respective classes during class time to lure her into the hallways.

16. On one occasion in September 2017, T.R. followed Jane Doe 2 in between periods. He told Jane Doe 2 that she knew she liked him, and he began kissing and touching her. Jane Doe 2 told him to stop.

17. The two met under a tree near the staff parking lot. T.R. began kissing and touching her. Jane Doe 2 again told T.R. to stop.

18. Later the same day, during school time, T.R. asked Jane Doe 2 to go somewhere with him. After initially refusing, T.R. took Doe 2's hand and led her to a location near the school's wellness center.

19. T.R. began to pull Jane Doe 2 closer, kissing her. Jane Doe 2 told him to stop.

20. The two walked down a stairwell at the end of an isolated hallway near the wellness center.

21. T.R. then pushed Jane Doe 2 up against a wall at the bottom of the stairwell. Jane Doe 2 was wearing a dress that day. T.R. forced his hand up Doe 2's leg and underneath her panties, penetrating her digitally.

22. Jane Doe 2 initially froze, but then began trying to push T.R. away, telling him to stop. T.R. began pulling at her dress.

23. Jane Doe 2 was eventually able to break away and she escaped up the stairs.

5

24. On another occasion near in time, T.R. again followed Jane Doe 2 as she left a class.  After heading down the same stairwell near the gym, T.R. pushed her up against the wall.  T.R. began kissing Doe 2 and again tried to force his hands down her pants.  Doe 2 told him to stop, and he did after the bell rang.

25. Later that same day, T.R. grabbed Jane Doe 2 and pulled her into one of the school's gymnasiums.  T.R. told Doe 2 that he wanted to take her to "his tree."

26. Upon information and belief, T.R. was referring to a tree within a covered entryway outside of the school's library, where he ultimately raped both Jane Doe 1 and 2.

27.  T.R. asked Jane Doe 2 to have sex with him, and placed his hands down her pants.  Doe 2 refused and pulled away.

28. T.R. led Jane Doe 2 outside, to a courtyard in front of the library.  While Jane Doe 2 told T.R. that she did not want to do anything, he started kissing her.

29. T.R. pulled down Jane Doe 2's pants, indicating that because he was already "hard" she didn't have a choice but to have sex with him.

30. T.R. then penetrated Jane Doe 2 anally.  Jane Doe 2 told him to stop.  Once he stopped, unsure of what she should do, Jane Doe 2 pulled up her pants and went to class.

31. At another point that same day, T.R. told Jane Doe 2 that he would not allow her to return to class unless she performed oral sex on him. Jane Doe 2 attempted to perform oral sex on T.R. When she would try to stop, he forced her head back down.

32. During a forensic interview, Jane Doe 2 was asked whether she was afraid of T.R.  Jane Doe 2 responded that she was.

33. Jane Doe 2 disclosed that the first time T.R. kissed her he placed his hands around her neck. Jane Doe 2 said he did not choke her, but T.R. held her in place, to keep her from moving or trying to get away.

34. Jane Doe 2 also disclosed that her sexual encounters with T.R. were done in fear, and that she did not report the assaults out of a fear of retaliation.

35. On the day of one of the above assaults, Jane Doe 2 asked one of her teachers, Erica Olson, to not allow T.R. to come into the classroom and ask for her.

36. As Jane Doe 2 feared, T.R. in fact entered the classroom that day, and asked Ms. Olson for Jane Doe 2.  Ms. Olson told T.R. that Jane Doe 2 could not leave the class.

37. Ms. Olson had previously observed Jane Doe 2 and T.R. in the hallway together, and observed that T.R. "always had his hands on her."

38. Ms. Olson, on two separate occasions, observed T.R. put his hands on Jane Doe 2's body, and heard Jane Doe 2 tell T.R. "get your hands off me. Get your hands off me.  Don't."

39. As discussed below, Ms. Olson and other Taos High School teachers reported T.R.'s predatory behavior toward female students to school administrators prior to T.R.'s victimization of both Jane Doe 2 and Plaintiff.

40. As discussed below, there were no video cameras in place to capture any of the incidents reported by Jane Doe 2.

41. As discussed below, T.R.'s multiple assaults against Jane Doe 2 in locations throughout the school unmonitored by security cameras made the need for the same painfully apparent, yet Defendants failed to install any additional cameras.

42. Defendants additionally failed to increase staff and faculty-monitoring in these areas.

**T.R. SEXUALLY ASSAULTS PLAINTIFF DURING THE 2018-2019 SCHOOLYEAR**

43. For unknown reasons, the Taos Police Department's criminal investigation into T.R.'s multiple sexual assaults of Jane Doe 2 continued into the following schoolyear.

44. Upon information and belief, Defendant TMS required T.R. to be accompanied by a chaperone when on the campus for a short period of time following Jane Doe 2's disclosures in

September of 2017. Also upon information and belief, Defendant Trujillo dismissed the chaperone after meeting with T.R.'s family, including his grandmother, who used to work for TMS. Thus, T.R. was again permitted to roam the school without any supervision or monitoring. The absence of monitoring continued into the 2018-2019 schoolyear.

45. In early October 2018, shortly before a Juvenile Delinquency petition was filed against T.R. for his multiple sexual assaults of Jane Doe 2, and only a few days before one of the incidents serving as the basis for this complaint, a couple of Taos Police Department officers and a detective met with Jane Doe 2 and her mother at the high school to photograph the exact locations of the assaults.

46. That same semester, fall of 2018, Plaintiff, a shy, smart, vulnerable fourteen-year-old had just begun her freshman year at Taos High School.

47. At some point early in the school year, Plaintiff was introduced to T.R., who was now a senior at Taos High School.

48. For a short time that fall, Plaintiff considered T.R. her boyfriend, and, presumably, T.R. considered Plaintiff his girlfriend.

49. Plaintiff and T.R. never saw each other outside of school. Plaintiff did not discuss her school "relationship" with her family.

50. During school, however, Plaintiff and T.R. walked together and spent time together as though they were in a relationship.

51. Not long after the two started "dating," T.R. began making sexual advances toward Plaintiff at Taos High School.

52. Plaintiff, who had just finished junior high, told T.R. that she was not ready for a sexual relationship.

53. By early October 2018, Plaintiff and T.R. were no longer boyfriend and girlfriend.

54. Following their "break-up," T.R. would follow Plaintiff around the hallways at school.

55. As he had done with Jane Doe 2, T.R. would frequently enter Plaintiff's classes and try to see her and separate her from her teachers and other classmates.

56. On October 9, 2018, Plaintiff attended an after-school meeting for her culinary class. The meeting was held on the second floor of the main building at Taos High School.

57. When Plaintiff left the meeting, she headed to her locker to get changed for softball practice.

58. As she was leaving, Plaintiff heard someone call her name.

59. It was T.R., who had been waiting for her on the school's second floor.

60. Upon information and belief, T.R. had no reason to be in the school after hours.

61. T.R. followed Plaintiff downstairs toward the school's art room. He began trying to kiss her.

62. The two entered the art room. T.R. tried to unbuckle Plaintiff's pants. Plaintiff told T.R. not to touch her, that they were not still "dating," and told him again that she was not ready for a sexual relationship.

63. T.R. forced his hand into Plaintiff's pants, groping her vaginal area and buttocks.

64. Plaintiff got away from T.R., but T.R. continued to follow her.

65. Plaintiff walked outside of the main building to head to softball practice. As the two neared the entrance to the school's library, with its secluded courtyard—the same courtyard where he had raped Jane Doe 2 the year prior—T.R. asked Plaintiff to perform fellatio on him.

66. T.R. led Plaintiff into the same corner of the courtyard where he raped Jane Doe 2 the year prior.

67. As this point, Plaintiff relented and attempted to perform fellatio on T.R.

68. Plaintiff immediately became nauseous and stopped.

69. This angered T.R. He grabbed her hand and began kissing her, trying to take off her pants.

70. Plaintiff told T.R. to stop, but he was much stronger. She could not break his hold to run away.

71. T.R. pulled Plaintiff's pants down and tried to penetrate her. When he was unable to do so, he turned her around and penetrated her from behind.

72. Plaintiff pleaded with T.R. to stop. She told him he was hurting her.

73. T.R. ignored her pleas and responded that it was going to hurt.

74. Once T.R. was finished, he released Plaintiff.

75. Terrified, in physical pain and a state of shock, Plaintiff continued on to softball practice.

76. Plaintiff did not know what to do, or whether she should disclose what had happened. She was ashamed, and afraid of what her parents would think if she disclosed the assaults to them. Her parents did not even know that she had once "dated" T.R. during the school day.

77. The following day, October 10, 2018, Plaintiff confided in her close friends about what had happened. She asked her friends not to disclose anything to anyone, as she was afraid that T.R. would retaliate.

78. On October 16, 2018, Plaintiff took a pregnancy test, and later received testing for STDs. All tests came back negative.

79. Plaintiff spent the following three (3) months trying to avoid T.R.

80. Plaintiff remained afraid to disclose the assaults to school officials or her parents.

81. Plaintiff would try to avoid T.R. by taking routes to classes and school events where she was less likely to see him. Plaintiff also asked her friends to help her watch for T.R., and to hide from him.

82. In January of the following semester, one of Plaintiff's classmates asked Plaintiff if she "used to hang out" with T.R. The classmate told Plaintiff that T.R. had raped her sister (Jane Doe 2) during the previous schoolyear.

83. After hearing that T.R. had raped the classmate's sister, Plaintiff disclosed the assaults to the classmate.

84. After Plaintiff disclosed the assaults to the classmate, a friend reported T.R.'s assaults of Plaintiff to a school social worker.  The school social worker alerted Plaintiff's parents and a School Resource Officer.  A second criminal investigation into T.R.'s sexual abuse of a female student—this time Plaintiff—ensued.

85. During the criminal investigation, Plaintiff disclosed that the week prior to the October 9, 2018 assault, T.R. had also penetrated her digitally outside of the school's vocational building after school.

86. Also during the criminal investigation, when Plaintiff showed an investigating officer where the rape occurred outside of the library, the officer informed Plaintiff that the same thing had happened to other girls.

87. Plaintiff did not return as a student to Taos High School following the disclosure of the sexual abuse to TMS and the police in January 2019.

88. After TMS learned of T.R.'s sexual abuse of Plaintiff, T.R. was, once again, allowed to return to Taos High School, and was further allowed to wander the campus unsupervised throughout the school day and after school hours.

89. Upon information and belief, Defendants TMS, Torrez, Trujillo, and Abeyta-Valerio failed to impose any discipline of any kind on T.R.

90. T.R. remained on campus until his arrest on February 1, 2019.

91. On February 4, 2019, it was apparently ordered that T.R. be allowed to return to Taos High School but he was required to wear an ankle monitor.

92. As with T.R.'s assaults of Jane Doe 2 the year prior, at no point during T.R.'s multiple assaults of Plaintiff in October 2018 were any teachers, administrators, or other TMS staff

11

monitoring the many involved locations within and surrounding Taos High School.

93. At no point following T.R.'s assaults of Jane Doe 2 the year prior did Defendant TMS install security cameras to monitor the areas known to harbor such sexual assault.

94. In addition to the already pending charges against T.R. for his abuse of Jane Doe 2, T.R. was charged with assaulting Plaintiff.

95. The case involving Jane Doe 2 was later dismissed, due to procedural defects in the State's case.

96. T.R. ultimately pleaded guilty to a battery charge in connection with his assault of Plaintiff.

97. Since the above-described assaults, Plaintiff has experienced periods of high anxiety, depression, hypervigilance, and difficulty sleeping.

98. The above-described assaults have also impacted her ability to feel safe or comfortable around males, including her own male friends.

**DEFENDANTS' KNOWLEDGE OF T.R.'S PROPENSITY FOR SEXUALLY AGGRESSIVE BEHAVIOR TOWARD YOUNG FEMALE STUDENTS AT TAOS HIGH SCHOOL**

99. Upon information and belief, prior to Jane Doe 2's disclosure of the sexual abuse, and before T.R.'s sexual abuse of Plaintiff, multiple teachers at Taos High School observed T.R. harassing Jane Doe 2 and other female students in the same ways he would harass Plaintiff.

100. This included observing T.R. touching female students inappropriately, bothering them during class time, following them around the school, and walking by their classrooms.

101. Upon information and belief, multiple teachers had reprimanded T.R. for such inappropriate behavior, and T.R. had been "called in" to speak with school administrators concerning this behavior.

102. Upon information and belief, given their roles at Taos High School and their known involvement in disciplinary issues involving T.R., these school administrators included Defendants

Truijllo, Abeyta-Valerio, and DeHerrera.

103.    Upon information and belief, multiple teachers at Taos High School were aware of T.R.'s inappropriate sexual behavior toward female students, and would consider this a consistent pattern of behavior on the part of T.R.

104.    One of these teachers was Erica Olson, the teacher Jane Doe 2 asked to protect her from T.R. during the 2017 school year.

105.    Ms. Olson had significant experience with T.R., as he was a student of hers during the 2016-2017 and 2017-2018 schoolyears.

106.    In Ms. Olson's class, T.R. acted inappropriately on numerous occasions.

107.    For example, T.R. would always speak about sex in class, and demonstrate sexually aggressive behavior.

108.    Two students reported to Ms. Olson that T.R. showed them images of girls performing oral sex on him.

109.    On one occasion, when Ms. Olson was leaning on a desk helping another student, she realized that T.R. was standing directly behind her, thrusting his arms and hips as if he were pretending to have intercourse with her from behind.

110.    Ms. Olson reprimanded T.R. for talking about sex and using sexual innuendo.

111.    Ms. Olson also reprimanded T.R. for his physical actions toward female students.

112.    Ms. Olson reported all of these incidents to her direct supervisor, Defendant Emy DeHerrera, and Defendant Assistant Principal Lisa Abeyta-Valerio, as well as her concerns that T.R. would cause harm to the school's female students.

113.    Nobody from Taos High School or TMS, including Defendants DeHerrera, Abeyta-Valerio, or Trujillo, followed up with Ms. Olson regarding her observations and reports.

114.    When Ms. Olson learned that T.R. had sexually abused Jane Doe 2, she reminded

Defendant Abeyta of the multiple reports she and other teachers made to administrators, including herself and Ms. DeHerrera, prior to Jane Doe 2's disclosures, and argued with Defendant Abeyta that his misconduct warranted removal from the school long before he assaulted Jane Doe 2.

115.     Ms. Olson was shocked when T.R. was allowed to return to school following Jane Doe 2's disclosures of sexual abuse.

116.     Ms. Olson again voiced her concerns to Defendant Abeyta.

117.     Defendant Abeyta responded that Jane Doe 2's disclosures were nothing more than "allegations," and that there was no video to substantiate the allegations.

118.     Defendant Abeyta also told Ms. Olson to focus her efforts on more strict classroom management.

119.     This, of course, in no way addressed the threat T.R. posed to female students at Taos High School outside of Ms. Olson's classroom.

120.     During an interview with Taos Police Department, Ms. Olson remarked that T.R. had numerous "second chances" with disciplinary issues.

121.     Ms. Olson also remarked during this interview that if she had a daughter attending Taos High School, she would tell her not to go near T.R.

122.     Ms. Olson observed that these were not the first incidents "of this type," which, upon information and belief, means first accusations of T.R. assaulting another female student, and that while other students had been disciplined for similar or lesser offenses, T.R. had not.

123.     Ms. Olson also observed that T.R. was "a predator type kid that's always just looking for somebody."

124.     Upon information and belief, other teachers at Taos High School had also observed that that T.R. was always trying to hug and touch Jane Doe 2.

125.     Upon information and belief, another Taos High School instructor had to remove

T.R. from his classroom numerous times during active class time while Jane Doe 2 was a student of his. T.R. was not a student in this particular class.

126.    Upon information and belief, at some point following his sexual abuse of Jane Doe 2, T.R. was required to be accompanied by a chaperone around the campus. Apparently after meeting with T.R.'s grandmother, who used to work for TMS, Defendant Trujillo dismissed the chaperone and did not replace him/her at any point.

127.    Upon information and belief, in addition to teacher Erica Olson, other faculty and staff at Taos High School reported T.R.'s inappropriate behavior toward female students to the school's administration.

128.    Upon information and belief, Defendants' apparent protection of T.R. is at least in part due to his grandmother's connection to the school district, and her personal relationships with current TMS employees, including Defendant Trujillo.

129.    As Jane Doe 2 disclosed the sexual assaults and rape to school officials, and a criminal investigation of this misconduct occurring on school property commenced, Defendant Lillian Torrez, TMS' superintendent, was almost certainly aware of at least T.R.'s victimization of Doe 2, as well as the multiple other reports of T.R.'s sexually aggressive behavior toward female students within Taos High School, at the time T.R. victimized Plaintiff.

130.    Upon information and belief, TMS administrators, including Defendants Trujillo, Abeyta-Valerio and DeHerrera, were aware of T.R.'s prior attempts to force girls into sexual situations with him at Taos High School.

## <u>COUNT I</u>
**(Plaintiff's Claims Against Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera under 42 U.S.C. § 1983, Individual Capacities)**

131.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

15

132.    Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera each had a duty not to create or exacerbate any danger to Plaintiff or to otherwise make her more vulnerable to harm.

133.    Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera each had a duty to refrain from deliberate or reckless conduct that could create the opportunity for a third party to cause harm to Plaintiff.

134.    Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera each had a constitutional duty to refrain from conduct which made Plaintiff more vulnerable to acts of violence and to avoid taking action which increased Plaintiff's vulnerability to such violence.  The risk T.R posed to Plaintiff and other female students at the high school was obvious and known.  Defendants were aware of T.R.'s sexually aggressive behavior towards female students, and rape of Jane Doe 2, and responded in ways that created and exacerbated danger, and increased Plaintiff's vulnerability to the same.

135.    Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera engaged in reckless conduct fraught with substantial risk, in conscious disregard of that risk, and that created an immediate and serious risk of harm to Plaintiff, who was a member of a limited, identifiable, and exclusive group.  Defendant's conduct shocks the conscience.

136.    The actions Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera undertook were not related to any legitimate governmental objective or purpose.

137.    Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera were not involved in any situation demanding split-second judgment.  Rather, they had adequate time for thoughtful deliberation.

138.    As a consequence of the actions Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera took, Plaintiff was placed in a position of danger which was not of her own making.  The sexual assault and harassment perpetrated against Plaintiff were the natural and inevitable

consequence of Defendant's failure to effectively discipline and/or monitor T.R., and Defendant's failure to surveil areas within Taos High School known to harbor sexual assaults—areas Defendants knew T.R. had already used to abuse another young female student.

139.    By engaging in the conduct and unreasonably dangerous practices described above, Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera placed Plaintiff in a foreseeably dangerous position which, in the context of the situation, was shocking to the conscience.

140.    As a direct and proximate result of the deliberate indifference of Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera, Plaintiff has been deprived under the color of law of the rights, privileges and immunities guaranteed under the United States Constitution, including deprivation of the Fourteenth Amendment substantive due process right to bodily integrity and to be free from student-on-student sexual assault.

141.    The conduct of Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera was intentional, unreasonable, reckless, wanton and deliberately indifferent to Plaintiff's constitutional rights.

142.    The constitutional rights violated by Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera were clearly established prior to the schoolyear in question, and any reasonable school administrator would have been aware that the conduct described herein would violate Plaintiff's constitutional rights.

143.    Specifically, as of 2018, it was established that citizens had the right to be free from state action that affirmatively creates or exacerbates a danger to them, to be free from deprivations of their substantive due process rights, and to be free from intrusions into their bodily integrity.

144.    The above-described conduct of Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera was the direct and proximate cause of the deprivation of Plaintiffs' clearly established Fourteenth Amendment rights, as well as the damages and injuries resulting therefrom.

## COUNT II
### (Plaintiffs' Claims Against Defendant TMS under 42 U.S.C. §1983)

145.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

146.    Defendant TMS failed to adequately screen, hire and train Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera.  Their failure to do so precipitated the harassment and sexual assaults of Plaintiff as described above.  Defendant TMS was deliberately indifferent to Plaintiff's constitutional rights as exemplified by its failure to effectively discipline and/or monitor T.R., and Defendant's failure to surveil areas within Taos High School known to harbor sexual assaults—areas Defendant knew T.R. had already used to abuse another young female student.

147.    The actions and inactions of Defendant TMS were the result of customs and policies that permitted or condoned Defendant TMS's reckless and conscience-shocking behavior toward student-on-student sexual abuse and deliberate indifference to Plaintiff's safety and welfare, which caused Plaintiff to be subjected to the sexual assaults and harassment described above. The actions of T.R. were also the result of customs and policies that permitted or condoned his sexual abuse of Taos High School female students.

148.    As a consequence of said customs and policies, and the inadequate screening, hiring, and training of its employees, Plaintiff has been deprived under color of law of the rights, privileges, and immunities secured by the Constitution and the laws of the United States, including the right under the Fourteenth Amendment to be free from intrusions into her bodily integrity.

## COUNT III
### (Plaintiff's Claim Against Defendants TMS, Torrez, Trujillo, Abeyta-Valerio, and DeHerrera under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-6)

149.    Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

150.    Defendants, acting within the scope of their employment, had the duty in any

activity actually undertaken by them to provide for the safety of others, including Plaintiff, and to exercise the care ordinarily exercised by a reasonable, prudent, and qualified person in their position in light of the nature of the circumstances.

151.    Particularly, Defendants assumed a duty to Plaintiff, among others, to exercise reasonable care in maintaining the premises of Taos High School in a safe condition, including a duty to exercise reasonable care to discover and prevent dangerous conditions caused by students on its premises.

152.    Such dangerous conditions included patterns of violence perpetrated by students like T.R., who had a known propensity for sexual violence against female students, like Plaintiff Doe and Jane Doe 2.

153.    Defendant TMS – acting through its administrators, supervisors, employees, and contractors − including Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera –  had a duty to investigate and act upon any suspicions or reports of improper sexual behavior by TMS students against any other student attending Defendant TMS's schools, in order to protect its students and prevent future instances of violence.

154.    Defendants TMS, Torrez, Trujillo, Abeyta-Valerio and DeHerrera failed to exercise reasonable care in the maintenance of the premises because they allowed a continued, known dangerous condition to exist on its premises.  Specifically, Defendants repeatedly ignored, or otherwise failed to address, the known (and reported) inappropriate behavior of T.R. toward female students, including the Plaintiff.

155.    This was not a single act of student-on-student violence.   Prior to T.R.'s sexual abuse of Plaintiff, Defendants knew of T.R.'s propensity to sexually harass and abuse female students at the high school, as they knew that he had done the same thing the year prior, in this same location, to another female student, among other known inappropriate sexual behavior on

the part of T.R., making apparent the danger of and potential for student-on-student sexual abuse not only by T.R., but other students, obvious, given the failure to effectively discipline and/or monitor T.R., and Defendants' failure to surveil areas within Taos High School known to harbor sexual assaults—areas Defendants knew T.R. had already used to abuse another young female student.

156.     Defendants breached their duties to Plaintiff by failing to exercise reasonable care to discover and prevent the sexual from occurring, failing to effectively discipline and/or monitor T.R., failing to implement (or adhere to existing) safety and disciplinary policies necessary to protect students, and failing to surveil areas within Taos High School known to harbor sexual assaults—areas Defendants knew T.R. had already used to abuse another young female student.

157.     Defendant TMS is jointly and severally liable for all injuries and damages caused Plaintiff by the actions of its administrators and employees, including Defendants Torrez, Trujillo, Abeyta-Valerio and DeHerrera, under the doctrines of vicarious liability and *respondeat superior*.

158.     The above-described acts and omissions were a direct and proximate cause of Plaintiff's injuries and the damages described below.

**PRAYER FOR RELIEF**

159.     Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

160.     As a direct and proximate result of the wrongful and unlawful acts and omissions of all Defendants, as described above, Plaintiff was injured and has suffered and continues to suffer damages, including, but not limited to:   physical injury, severe emotional distress, anguish, suffering, humiliation, psychological injuries, indignities, loss of enjoyment of life, deprivation of constitutional rights, invasion of bodily integrity, and other incidental, consequential, and special damages.

161.     As a result of the above-described damages and injuries, Plaintiff is entitled to

recover an award of full compensatory damages against all Defendants in amounts to be determined at the trial of this cause.

162.     Plaintiff requests damages in an amount sufficient to compensate her for all injuries and harm she suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post- judgment interest as provided by law, reasonable attorneys' fees as provided by law, and such other and further relief as proves just.

163.     Plaintiff requests a trial by jury on all issues so triable.

Respectfully Submitted,

ROTHSTEIN DONATELLI, LLP

*/s/ Caroline Manierre*
CAROLYN M. "CAMMIE" NICHOLS
MAGGIE H. LANE
500 4th Street NW, Suite 400
Albuquerque, NM 87102
(505) 243-1443
cmnichols@rothsteinlaw.com
mhlane@rothsteinlaw.com

and

***Attorney in good standing of the Bar of the State of South Carolina and the District of South Carolina.***

MARK A. PEPER
The Peper Law Firm, PA
548 Savannah Highway
Charleston, SC 29407
843-225-2520
mark@peperlawfirm.com

***Attorneys for Plaintiff***