# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JANE DOE**,

      Plaintiff,

vs.                                      Case No. 1:20-cv-01041-SCY-JHR

**TAOS MUNICIPAL SCHOOLS;**
**LILLIAN TORREZ, ROBERT TRUJILLO,**
**LISA ABEYTA-VALERIO**, and
**EMY DEHERRERA** in their individual capacities,

      Defendants.

## <u>PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT</u>

COMES NOW Plaintiff Jane Doe, through her undersigned counsel, and moves this Court for leave to file the proposed unredacted First Amended Complaint which Plaintiff is concurrently and provisionally moving to file under seal, and which is adopted and incorporated by reference herein under Fed. R. Civ. P. 10(c).[1] Plaintiff contacted counsel of record for each Defendant to obtain their position on the relief requested in this motion. While Defendants partially concur in the concurrent motion to provisionally file the proposed unredacted First Amended Complaint under seal, Defendants do oppose the relief requested in the present motion, *i.e.*, granting Plaintiff leave to file the proposed unredacted First Amended Complaint as the operative pleading in this case. With the understanding that the proposed unredacted First Amended Complaint is provisionally filed under seal at this time pending the Court's determination of which portions must be filed publicly in a redacted version, a summary of the amendments in the attached First Amended Complaint and Plaintiff's arguments for granting leave to file it as the operative pleading

---

[1] To demonstrate further good-faith compliance with the requirement in D.N.M. LR-Civ. 15.1 that the proposed amended pleading "accompany" this motion, Plaintiff provisionally attaches a fully redacted version of the proposed First Amended Complaint as Exhibit 1 to this motion, noting Defendants' objection to allowing Plaintiff to proceed with her motion to amend at this time.

in this case are set forth below. Plaintiff respectfully requests that the Court grant leave to amend and allow her to proceed with her proposed First Amended Complaint as the operative pleading.

I.  **The proposed First Amended Complaint adds significant new detail to Plaintiff's factual allegations based on newly discovered evidence resulting from written discovery conducted to date and adds a corresponding degree of additional detail to the legal theories asserted in Counts I, II, and III.**

As explained in the introductory section of the proposed First Amended Complaint, this case involves allegations that an older male student at Taos High School in Taos, New Mexico sexually harassed, sexually assaulted, and brutally raped Plaintiff Jane Doe, a young and vulnerable fourteen-year-old girl just starting her freshman year at the school in the fall of 2018. Plaintiff is proceeding under the pseudonym "Jane Doe" pursuant to a court order (Doc. 89) for the reasons stated in her motion (Doc. 87) filed April 20, 2022. Her assailant is referenced by the initials "T.R." in the proposed First Amended Complaint, because many of his school records referenced therein concern the period before he turned 18 years of age during his senior year. Similarly, a second survivor of T.R.'s sexual assaults is referenced under the pseudonym "Jane Doe 2" for the same reasons which apply to Plaintiff and T.R.

After discovery commenced in this case in June 2021, Plaintiff subpoenaed confidential records from the Taos Police Department and District Attorney's Office concerning allegations of T.R.'s rape, sexual assaults, and harassment of Plaintiff and Jane Doe 2. Additionally, Plaintiff recently received confidential school records regarding T.R. from Defendant Taos Municipal Schools (TMS) pursuant to a Stipulated Order (Doc. 26) regarding the process for disclosing them under the Federal Educational Records Privacy Act (FERPA) (Doc. 26) and a Stipulated Confidentiality Order, as amended (Doc. 35, 59, 61.) Based on newly discovered evidence, Plaintiff learned of additional material facts over a longer time period concerning T.R. as well as additional students, student family members, faculty, staff, and administrators at Taos High

School, including each of the individual Defendants. Accordingly, Plaintiff has expanded the factual allegations in the section of the proposed First Amended Complaint entitled "Factual Basis for Plaintiff's Claims" so that it now encompasses four subsections which respectively recite facts regarding each of four school years at Taos High School. There is also a fifth subsection describing Defendants' longstanding policies, customs, patterns, and practices evincing their deliberate indifference to known sexual assaults and harassment of female students at Taos High School.

No new parties are added to the proposed First Amended Complaint, and the sections of the proposed First Amended Complaint entitled "Parties" and "Jurisdiction and Venue" are not substantially changed from the original Complaint. The proposed First Amended Complaint also continues to group Plaintiff's legal claims in the same manner as the original Complaint: Plaintiff's federal civil rights claims against Defendants Torrez, Trujillo, Abeyta-Valerio, and DeHerrera are set forth in Count I; Plaintiff's federal civil-rights claims against Defendant TMS are set forth in Count II; and Plaintiff's state-law claims against all Defendants are set forth in Count III. Finally, the section of the proposed First Amended Complaint entitled "Prayer for Relief" does not substantially change the relief requested in the original Complaint, except that it is intended to omit claims for special damages which Plaintiff's discovery responses to date clarify that she is not seeking.

Within each count, the proposed First Amended Complaint adds new details regarding specific legal theories and sub-theories in a manner that corresponds to the new and expanded level of detail in the factual allegations referenced above, which are based on newly discovered evidence. Thus, for example, the federal civil rights claims in Counts I and II of the proposed First Amended Complaint each include subsections which respectively invoke specific legal theories under the substantive component of the Due Process Clause (Subsection A) and the Equal

3

Protection Clause (Subsection B) of the Fourteenth Amendment. Count III continues to invoke

the same waiver of liability under Section 41-4-6 of the New Mexico Tort Claims Act that was

asserted in the original Complaint, but adds new details concerning specific duties breached by

Defendant TMS and its public employees, including the four individual Defendants.

II.     **There is good cause for granting leave to file Plaintiff's proposed
        First Amended Complaint at this juncture pursuant to Rule 16(b)(4).**

      A.     **The timing of the Court's *in camera* review of T.R.'s school records and
        Defendant TMS's ongoing disclosure of those records, as well as its domino
        effect on the discovery process, meant that the original deadline for amending
        pleadings could not be met despite Plaintiff's diligent efforts.**

Rule 16(b)(4) provides that case-management deadlines set forth in a scheduling order

entered pursuant to Rule 16(b) "may be modified only for good cause and with the judge's

consent." Fed. R. Civ. P. 16(b)(4); *accord* D.N.M. LR-Civ. 16.1. The deadline for amending

pleadings is one of the required elements of a Rule 16(b) scheduling order, along with deadlines

for completing discovery and filing pretrial motions. *See* Fed. R. Civ. P. 16(b)(3). Those

elements, however, are premised on compliance with the Court's usual prerequisites for issuing

a scheduling order under that rule. Before entering a Rule 16(b) scheduling order or even holding

a scheduling conference, the Court typically awaits the filing of an answer from each Defendant

(Doc. 19), a discovery conference or "meet and confer" session among counsel under Rule 26(f),

service of initial disclosures within 14 days of that conference as required under Rule 26(a)(1)(C),

and the filing of a Joint Status Report (JSR) under D.N.M. LR-Civ. 16.1. (Doc. 20.)

When, as here, Defendants have not answered all of the allegations in Plaintiff's original

Complaint or included all of the required information in their initial disclosures or in the Joint

Status Report at the time a Rule 16(b) scheduling order is entered--or by the deadline for

amending pleadings under that order--it is simply not fair to hold Plaintiff to that deadline. *See*

*Garcia v. Bd. of County Comm'rs of County of Bernalillo*, No. 09-cv-322 BB/WDS, 2010 WL

11618983, at *9-10 (D.N.M. Nov. 30, 2010). Similarly, when all other required elements of a Rule 16(b) order have been extended several times based on the pendency of an objection to disclosure and its domino effect on Defendants' discovery responses, it is not only unfair but illogical to retain and strictly adhere to the original deadline for amending pleadings. Under this scenario, Defendants cannot have it both ways by agreeing that there is good cause to extend all other deadlines required under the Court's Rule 16(b) scheduling order, and then later opposing an extension of the deadline for amending pleadings. "[W]hen the acts of the opposing party substantially create the delayed need to amend, that showing also establishes 'good cause' for the delay." *id.* at *10 (citing *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604-06 (10th Cir. 1997)).

In 2014, the Tenth Circuit joined the Second, Fifth, Sixth, Eighth, and Ninth Circuits in expressly ratifying "a good cause requirement for amendments to pleadings after scheduling order deadlines." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014). In practice, this standard requires the movant to show 'the scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Id.* at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). Application of the "good cause" standard in Rule 16(b)(4) does not depend on whether the delay was tainted by bad faith or improper purpose. *See Pumpco, Inc.*, 204 F.R.D. at 668. Instead, the Court looks primarily at whether there were objective reasons why Plaintiff could not proceed with the proposed amendment earlier.

As the district court opinion in *Pumpco* was quoted with approval by the Tenth Circuit when first ratifying the application of the "good cause" standard to a modification of the deadline for amending pleadings under Rule 16(b)(4), that case provides a prime example of circumstances in which the "good cause" standard is met: "The fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend

5

established in the scheduling order has expired constitutes good cause to extend that deadline." *Pumpco, Inc.*, 204 F.R.D. at 668-69; *accord Garcia, supra*, 2010 WL 11618983, at *9-10; *Madrid v. Phelps Dodge Corp.*, No. 04-cv-0138 MV/ACT, 2005 WL 8163990, at *1-2 (D.N.M. May 3, 2005); *Youbyoung Park v. Gaitan*, No. 11-cv-987 JCH/RHS, 2013 WL 12203379, at *2-3 (D.N.M. Mar. 27, 2013); *Abraham v. WPX Prod. Productions, LLC*, No. , 2016 WL 548251, at *19-20 (D.N.M. Jan. 25, 2016).

In this case, every deadline in the Court's original scheduling order (Doc. 31) filed June 17, 2021—including the original deadline for amending pleadings--has already passed. The other case-management deadlines in that original scheduling order, however, have been extended and reset several times based on express, stipulated findings of good cause. (Doc. 47, 58, 75, 97.) Under the most recent iteration of the scheduling order, the deadlines for discovery, discovery motions, pretrial motions, and the proposed pretrial order have not yet expired and will not expire for several more months. (Doc. 97.) Except for forensic psychology/psychiatry experts already disclosed pursuant to the parties' stipulations (Doc. 73, 82), expert deadlines also have yet to expire. (Doc. 97.) Moreover, no trial date has ever been set in this case.

It would not have made sense to include a new deadline for amending pleadings in the prior iterations of the scheduling order cited above, because both the "good cause" standard in Rule 16(b)(4) and the requirements of D.N.M. LR-Civ. 15.1 make it necessary to review the specific nature and extent of a proposed amendment to a party's pleadings before making an informed ruling on whether an extension of time for leave to amend should be granted under these circumstances. It would also not make sense to require Plaintiff to move for leave to make piecemeal amendments to her pleading every time an item of evidence or information is disclosed, as that would result in a "moving target" of such piecemeal motions being filed every month as discovery of new information trickles in, with a pending motion to amend superseded

by a subsequent motion to amend before the earlier motion is fully briefed or the Court has a chance to rule on it. Here Plaintiff was not in a position to "connect the dots" in order to formulate a specific and meaningful set of proposed amendments to her pleading until she received the school records regarding T.R. that have been produced as of this date.

A review of the record confirms this conclusion. The many extensions of other case-management deadlines noted above were based on the timing of the *in camera* review and disclosure of T.R.'s school records over which Defendant TMS had exclusive possession, custody, and control. (Doc. 74, 75.) The parties discussed these extensions in a series of informal discovery conferences with the Court (Doc. 44, 55, 69), and the process for conducting such *in camera* review and disclosures originated from a Stipulated Order Granting Unopposed Motion for Protective Order and Motion Regarding FERPA Process (Doc. 26) filed May 18, 2021. That order was entered before the Court had opened discovery or issued a Rule 16(b) scheduling order in the case. (Doc. 20, 31.) Under the FERPA process set forth in that order, Plaintiff had to wait for Defendant TMS to send notice to students, including T.R., whose educational records were at issue in the case and give them an opportunity to object to the disclosure of such records. (Doc. 26.) Defendant TMS did not send those notices to the students until shortly after the Court entered a Stipulated Confidentiality Order (Doc. 35) setting forth conditions under which educational records would be designated and kept confidential. Upon receipt of an objection to the disclosure of T.R.'s educational records (Doc. 41), Plaintiff had to wait an additional period of time for the Court to arrive at and implement a procedure for resolving that objection, conducting an *in camera* review of T.R.'s educational records produced by Defendant TMS, and ordering the disclosure of the portions of those records determined to be relevant and discoverable. (Doc. 93.) Plaintiff then awaited production of educational records of T.R. which the Court ordered Defendant TMS to produce—a process that is still ongoing at this time. (Doc. 100, 101.)

The lengthy process which had to run its course before Defendant TMS even started producing T.R.'s school records to Plaintiff had a domino effect on Plaintiff's other discovery efforts. Citing the pendency of the FERPA objection to producing T.R.'s school records, Defendants blocked Plaintiff's counsel's efforts to proceed with discovery concerning several topics which are central to the litigation. These topics include: (1) discovery concerning the involvement of the school district and its administrators in aiding and abetting T.R.'s commission of his assaults on Plaintiff Jane Doe, (2) discovery evincing the full scope and pattern of his assaults on other students, and (3) discovery of other instances of sexual misconduct at the school. The extent to which Defendants intend to rely upon records and information withheld from Plaintiff or her counsel to develop or support Defendants' own claims and defenses in the litigation is also unknown to Plaintiff or her counsel at this time.

In this regard, Defendants' Answer (Doc. 18) filed April 2, 2021, declined to respond in accordance with Fed. R. Civ. P. 8(b) to the allegations in Paragraphs 10, 11, 12, 13, 44, 84, 88, 89, 90, 91, 101, 102, 105, 106, 107, 112, 113, 126, 127, and 128 of Plaintiff's Complaint, because Defendants claimed that FERPA prohibits them from doing so. Those allegations still have not been answered as of this date.

In their initial disclosures reflected in the Joint Status Report (Doc. 28) filed June 7, 2021, Defendants indicated that they had student records subject to the disclosure requirements of Rule 26(a)(1)(A)(ii), which they were withholding under FERPA pursuant to the procedure set forth in the Court's Stipulated Order (Doc. 26) dated May 18, 2021. Defendant TMS did not even start disclosing those records to Plaintiff until April 26, 2022. (Doc. 93.) Both Defendant TMS's document production and supplementation of Defendants' initial disclosures continued after that date. (Doc. 95, 100, 101.)

Plaintiff served Defendant TMS with two sets of discovery requests, the first dated July

30, 2021 (Doc. 39), and the second dated October 29, 2021 (Doc. 52). In both instances, Defendants raised FERPA objections to producing substantial portions of the requested records or answering questions based on information in those portions of the records. Again, Defendant TMS did not begin to supplement those responses based on the production of T.R.'s school records until May 11, 2022 (Doc. 95), and that supplementation is ongoing. (Doc. 100, 101.)

That the FERPA objections noted above were pending with respect to Defendants' pleadings, initial disclosures, and discovery responses had a domino effect on Plaintiff's ability to complete other tasks identified in the local rules and the Court's scheduling orders, including preparation of expert reports and taking depositions. Accordingly, the parties agreed to extend the time for Plaintiff to file Rule 37 motions regarding her discovery requests until after T.R.'s school records are produced and Defendant TMS supplements its discovery responses. (Doc. 64, 66, 98.) The Court also extended certain expert deadlines and other case-management deadlines during the pendency of its *in camera* review of T.R.'s school records and the information contained therein. (Doc. 47, 58, 75.)

While pleadings and formal discovery concerning Defendants' liability were at a standstill due to the pending FERPA objections stated in Defendants' answer, initial disclosures, and discovery responses, Defendants were able to conduct a full range of discovery concerning Plaintiff Jane Doe. Plaintiff diligently provided Defendants with access to, or copies of, all her known medical, mental health, employment, and education records since birth. (Doc. 29, 40, 65.) Plaintiff diligently obtained and disclosed records from the Taos Police Department and District Attorney investigations of T.R.'s assaults on Plaintiff Jane Doe. (Doc. 65.), Plaintiff and her mother diligently met in person with Plaintiff's forensic psychology expert, Dr. Donna Peters, Psy.D., who conducted tests and produced a full set of expert disclosures under Fed. R. Civ. P. 26(a)(2)(B). (Doc. 73.) Plaintiff also appeared for an Independent Psychological Examination by

Defendants' forensic psychology expert, Dr. Friedman, as well as an Independent Medical Examination by Defendants' forensic psychiatry expert, Dr. Kuo. (Doc. 82.)

Moreover, Plaintiff's counsel diligently investigated open-source materials and met with individuals who came forward voluntarily with information about the case, despite Defendants' efforts to use FERPA as a mechanism for not answering key paragraphs of Plaintiff's Complaint and obstructing formal discovery regarding their liability in the case. Plaintiff's counsel diligently disclosed the results of such informal investigation to Defendants' counsel through supplementation of Plaintiff's discovery responses and initial disclosures while awaiting a ruling on, and production of, T.R.'s school records. (Doc. 81, 86.)

Defendants responded to those disclosures by serving a set of discovery requests falsely premised on speculation that Plaintiff was violating the Stipulated Confidentiality Order (Doc. 35) by talking to three former teachers at Taos High School in an effort to gain unauthorized access to T.R.'s school records before the Court had ruled on whether they were relevant and discoverable. (Doc. 84.) Plaintiff timely responded to those discovery requests to confirm that neither her nor her counsel had received unauthorized copies of T.R.'s school records and, to the contrary, Plaintiff's counsel were complying with the Stipulated Confidentiality Order (Doc. 35) by showing it to prospective witnesses with whom they spoke. (Doc. 94.) Plaintiff's inability to access T.R.'s school records and the absence of a ruling from the Court on those records adversely impacted the ability of Plaintiff's counsel to proceed with prospective witness interviews during this time, because Plaintiff's counsel had neither the records themselves nor a ruling from the Court on which of them were permissible to disclose under the terms stated in the Stipulated Confidentiality Order.

Nevertheless, Plaintiff's counsel diligently requested deposition dates so that at least a couple of fact witness depositions could be taken before the settlement conference, subject to a

stipulation that the deponents may be recalled for questioning about T.R.'s school records after they were disclosed. Defendants' counsel refused to provide dates of availability for depositions of any kind and thus far have not agreed to schedule a single deposition until June 27, 2022—a full month after Plaintiff disclosed the proposed First Amended Complaint to them.

Ultimately, Plaintiff did not receive any of T.R.'s school records until April 26, 2022, less than two days before the settlement conference was set to commence. (Doc. 92, 93.) The settlement conference had been moved to that date based on the timing of the *in camera* review and disclosure of T.R.'s school records. (Doc. 69, 70, 85.)

After the settlement conference, Plaintiff's counsel diligently reviewed the ongoing production of T.R.'s school records, formulated her proposed First Amended Complaint about one month after that document production began, and disclosed it in unredacted form to Defendants' counsel on May 27, 2022 (Doc. 99), before receiving Defendants' third and fourth supplemental responses containing a small number of additional school records. (Doc. 100, 101.) As a further gesture of good faith, Plaintiff's counsel agreed to extend the time for Defendants' counsel to state a position on the motion to amend, to discuss Plaintiff's motion to provisionally file an unredacted version of the proposed First Amended Complaint under seal, and to propose redactions.

Again, the need to obtain a ruling from the Court on which portions of the proposed First Amended Complaint can be filed or discussed publicly in pleadings or motions inhibits Plaintiff's ability to proceed with her motion to amend and other litigation tasks despite her diligent efforts to move forward. Even now, part of the reason Defendants oppose the filing of Plaintiff's motion to amend is that Defendants contend Plaintiff should be required to postpone filing such a motion until Defendants' proposed redactions to the proposed First Amended Complaint are resolved— even though Defendants have not even disclosed what those proposed redactions are at this point.

The procedural history of this case thus demonstrates that Plaintiff was diligent in seeking the discovery of new evidence and information which forms the basis for her proposed First Amended Complaint, which was not disclosed to her until long after the original deadline for amending pleadings had expired and all other case-management deadlines had been extended numerous times. It follows that Plaintiff has satisfied the "good cause" standard under Rule 16(b)(4) under the governing case law. *See Pumpco, Inc.*, 204 F.R.D. at 668-69 (finding that the "good cause" standard was met when the plaintiff "learned for the first time after the deadline to amend had expired the names of the Daewoo representatives who allegedly made affirmative false statements in connection with the plaintiff's purchase of the concrete pumping trucks here at issue"); *Garcia, supra*, 2010 WL 11618983, at *9-10 (finding good cause for leave to amend where the plaintiffs "did not learn of the relative roles of Dr. Shannon and Dr. McMurray until April 7, 2010, months after the pleading deadline had passed"); *Madrid, supra*, 2005 WL 8163990, at *1-2 (finding good cause for leave to amend when the plaintiff "discovered new facts after the amendment deadline" and the proposed amended pleading "includes new claims based on these facts"); *Youbyoung Park, supra*, 2013 WL 12203379, at *2-3 (finding good cause for leave to amend where the plaintiff was unable to access surveillance equipment containing video recordings until after the original deadline for amending pleadings and used those video recordings as the basis for asserting new claims in his proposed amended pleading); *Abraham, supra*, 2016 WL 548251, at *19-20 (finding good cause where the plaintiffs "may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed").

> **B.     Plaintiff is not required to precisely plead legal theories or present legal arguments in her Complaint, and the new language in Counts I, II, and III of the proposed First Amended Complaint is based on the same newly discovered evidence and information contained in Plaintiff's factual allegations.**

Good cause for extending the time to amend a pleading under Rule 16(b)(4) may also be based on a change in the law. *See, e.g., Pumpco*, 204 F.R.D. at 668. The verbiage in the portion of Plaintiff's proposed amended pleading which sets forth her legal claims does not factor heavily in the analysis of good cause, however, because federal pleading standards do not require her to "pin [her] claim for relief to a precise legal theory" or provide "an exposition of [her] legal argument" in her original pleading, much less an amended one. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Federal pleading standards also do not "countenance dismissal of complaint for imperfect statement of the legal theory supporting the claim asserted," and thus Plaintiff is not even required to expressly invoke 42 U.S.C. § 1983 in order to state a federal civil rights claim. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). "Factual plausibility pleading requires a higher standard, but for legal misstatements [federal courts] ... are more forgiving." *Stanton v. Elliott*, 25 F.4th 227, 238 (4th Cir. 2022) (citing *Johnson*, 574 U.S. at 11). Thus, Plaintiff "need not put a claim under a special heading, quote the statute, or use magic words to make out a claim. Courts should focus on the substance of the allegations to avoid making pleading a formalistic headache." *Id.; see also Bernsden v. North Dakota Univ. Sys.*, 7 F.4th 782, 789 n.6 (8th Cir. 2021); *Groden v. City of Dallas*, 826 F.3d 280, 284-285 (5th Cir. 2016).

Here 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the waiver of immunity in Section 41-4-6(A) of the New Mexico Tort Claims Act (NMTCA) provide the legal basis for the claims asserted in both Plaintiff's original Complaint and her proposed First Amended Complaint. While Plaintiff's proposed First Amended Complaint goes beyond the bare minimum required to state a claim for relief under *Skinner* and *Johnson*, the additional language in Counts I, II, and III corresponds to and correlates with the additional factual allegations which precede each of those counts. Those additional factual allegations, in

turn, are based on the newly discovered evidence and analysis triggered by the disclosure of

T.R.'s school records as discussed above. Thus, for the same reasons Plaintiff meets the "good

cause" standard with respect to those new factual allegations, she also meets that standard with

respect to the new language stated in Counts I, II, and III of her proposed First Amended

Complaint. *See Madrid, supra*, 2005 WL 8163990, at \*1-2; *Youbyoung Park, supra*, 2013 WL

12203379, at \*2-3; *Abraham, supra*, 2016 WL 548251, at \*19-20.

To the extent Plaintiff is required to precisely plead particular legal theories and sub-

theories within each count of her Complaint, her ability to do so is constrained by both the slow

progress of discovery as described above, and by the application of federal pleading standards in

this particular context where Plaintiff is asserting federal civil rights claims against individual

Defendants who may assert a qualified immunity defense, as well as federal civil rights claims

against an institutional Defendant, for which several intricately fact-dependent sub-theories may

be available under the general framework established in *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658 (1978), and its progeny.

The reason Plaintiff did not set forth in extensive detail every possible legal theory or sub-

theory under the Fourteenth Amendment in her original pleading is that the federal plausibility

standard generally requires sufficient facts to support each claim at the time it is alleged. *See Gee

v. Pacheco*, 627 F.3d 1178, 1184-86 (10th Cir. 2010). Plaintiff did not have access to those facts,

or the ability to "connect the dots" with facts discovered earlier, until Defendant TMS disclosed

T.R.'s school records beginning at the end of April 2022, as described above. if Plaintiff had

included more specific legal theories in her original Complaint based on mere speculation or the

metaphysical possibility that facts to support their plausibility would later turn up in discovery,

she would have placed herself in the "Catch 22" situation of having claims based on those

unsupported legal theories dismissed from her Complaint under Rule 12(b)(6) or 12(c) before she

was able to obtain access to the evidence and information necessary to support them.

Achieving such "Catch 22" dismissals is the main goal of defendants who either move to dismiss a plaintiff's pleadings at the outset of the litigation or—as here—delay and obstruct the plaintiff's discovery efforts for as long as possible until the operative case-management deadlines have expired. The Court should not countenance this practice or allow Defendants to obtain a windfall of tactical advantages from the time it took the Court to carefully review and make an informed ruling on the school records at issue here. The Court would be sending very mixed and inconsistent messages to litigants if they were told, on the one hand, that plaintiffs must plead every conceivable legal theory in their original pleading or risk losing the opportunity to raise such theories through subsequent amendment, and on the other hand, that each legal theory in such an original pleading is subject to immediate dismissal if the plaintiff asserting it does not yet have the facts to support it at the time that pleading is filed.

For these reasons, one of the important corollaries of the plausibility pleading standard articulated in *Twombly* and *Iqbal* is that parties must be afforded ample opportunity to cure shortcomings in their pleadings through amendments, especially when the pleading at issue involves individual Defendants who may raise a defense of qualified immunity, as well as the intricacies of pleading and preserving claims against an institutional Defendant under *Monell* and its progeny. *See Gee*, 627 F.3d at 1195. Indeed, the very case that established the federal plausibility standard for civil rights claims also left room for the plaintiff to cure the pleading defects identified in that case through amendment after it had been pending on appeal for several years. *See Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).

Consider, for example, whether Plaintiff would be afforded the opportunity to amend her original Complaint if Defendants had filed a motion for judgment on the pleadings under Rule 12(c) at this juncture. The answer would be "yes" under the governing law cited above. Why

should the result be any different when Plaintiff--on her own initiative--seeks to amend her Complaint after diligently seeking the newly discovered evidence and information regarding T.R.'s school records as described above? Under any of the alternative formulations of the "good cause" standard discussed above, Plaintiff has met that standard to extend the deadline for amending pleadings so that she may file her proposed First Amended Complaint at this time

**III.   Granting leave to file Plaintiff's proposed First Amended Complaint at this juncture is consistent with the text, purpose, and policy behind Rule 15(a).**

    **A.   Defendants have not met their burden of proving that leave to amend is unjustified because of undue delay, undue prejudice, bad faith, or dilatory motive.**

Following the path set down by the *Pumpco* opinion quoted with approval by the Tenth Circuit in *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240-41, the next step in the analysis of whether to grant Plaintiff leave to file her proposed First Amended Complaint is to consider whether she "has satisfied the standard for amendment of pleadings required under Fed. R. Civ. P. 15(a)." *Pumpco*, 204 F.R.D. at 669. Rule 15(a) provides that leave to amend "shall be freely given when justice requires." Fed. R. Civ. P. 15(a). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.* 3 F.3d 1357, 1365 (10th Cir. 1993). Because Rule 15(a) establishes a "general presumption ... in favor of allowing a party to amend its pleadings," Defendants "bear the burden of showing that the proposed amendment is improper" in this instance. *Cooper v. Colo. Dep't of Corrections*, No. 21-cv-02411-PAB-NYW, 2022 WL 2063229, at *3 (D. Colo. June 8, 2022). "The party opposing the amendment bears the burden of proving that some reason exists to deny leave to amend." *Rozone Productions, LLC v. Raczkowski*, No. 09-cv-5015-JLV, 2012 WL 13172982, at *3 (D.S.D. June 4, 2012).

Here Plaintiff's counsel acted in good faith without any dilatory motive by providing Defendants with a copy of the proposed First Amended Complaint on May 27, 2022 (Doc. 99), and gave them two weeks to state their position on it before the present motion to amend was even filed. Notwithstanding this early disclosure, Defendants have thus far been silent as to the grounds, if any, on which they oppose Plaintiff's motion to amend. Accordingly, Plaintiff can only chart out some possible responses to arguments that defendants in other cases have made regarding the Rule 15(a) factors listed above. Plaintiff will have to await the opportunity to file a reply brief to review and rebut whatever arguments the Defendants actually present in their response.

When considering whether a party opposing leave to amend has met its burden of showing undue delay, courts focus on the *reasons* for the delay, not simply a quantitative measurement of the number of days between Plaintiff's original Complaint and her proposed amended pleading. *See Garcia, supra*, 2006 WL 11618983, at *11. As explained in detail above, the reasons for the timing of Plaintiff's proposed amendment follow from the timing of the disclosure of T.R.'s school records which Plaintiff have sought since their initial round of discovery requests, and which Defendants identified as relevant in their initial disclosures but did not actually disclose until after the Court had ruled on its *in camera* review of those records. Accordingly, the timing of Plaintiff's motion for leave to amend correlates with the timing of the disclosure of T.R.'s school records and does not amount to undue delay under Rule 15(a).

Case law interpreting Rule 15(a) recognizes a similar distinction between prejudice and *unfair* prejudice. *See Garcia, supra*, 2010 WL 11618983, at *12. That an amended pleading may be more difficult to defend against or require more resources is not a reason to deny leave to file it. *See id.  Unfair* prejudice is usually premised on inadequate time to respond to a proposed amended pleading before a scheduled trial date, *see, e.g., DLJ Mortgage Capital, Inc.*, 975 F.3d 358, 369-71 (3d Cir. 2020) (denying leave to amend a defendant's answer the day before trial), or

a proposed amendment that appears for the first time long after discovery has closed, when issues have already been litigated, *see id.*

But here no trial date has been scheduled, and there is ample time left for discovery and pretrial motions under the current scheduling order. (Doc. 97.) Courts have declined to find that undue prejudice precludes an amended pleading under these circumstances. *See, e.g., Garcia, supra*, 2010 WL 11618983, at *12. Courts have also declined to find such undue prejudice when a motion to amend is filed after other significant case-management deadlines have passed, but there is still time to cure any prejudice through modification of those deadlines because no trial date has been set. *See Youbyoung Park, supra*, 2013 WL 12203379, at *4 (rejecting a claim of undue prejudice where no trial date had been set, and noting that parties routinely seek extensions of discovery and case management deadlines to cure any possibility of unfair prejudice). Again, Defendants cannot have it both ways by agreeing to extensions of all other case-management deadlines when it is to their advantage, then claiming unfair prejudice when Plaintiff moves for leave to amend based on the timing of events which is controlled by those other extended deadlines.

Moreover, courts rarely find unfair prejudice where the proposed amendment merely adds a new claim without adding any new parties. "Inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party." *Popp Telecom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000); *accord Boyd v. Hi Country Chevrolet*, No. 10-cv-00602 RB/KBM, 2011 WL 13284637, at *4 (D.N.M. Oct. 26, 2011). Here Defendants already had the school records at issue the entire time those records were withheld from Plaintiff. The posture of the case also allowed Defendants to conduct extensive discovery of Plaintiff during the same time that Plaintiff could not proceed with further discovery, much less amendment of her pleadings, without T.R.'s school records and a ruling on which of them she could use in such

further discovery. Thus, if any party was unfairly prejudiced by the manner in which this case has proceeded thus far, it is Plaintiff, not Defendant. Granting leave for Plaintiff to file her proposed First Amended Complaint is a step toward curing that prejudice, and Defendants cannot show that it causes unfair prejudice to them.

When, as here, Plaintiff provides adequate reasons for the timing of the proposed amendment which correlate with the way discovery has unfolded in the case, those reasons will also defeat an inference that such an amendment is tainted by bad faith or dilatory motive. *See Abraham, supra*, 2016 WL 548251, at *20. Here Plaintiff agreed to and complied with all the orders that Defendants requested and the Court granted to process and review T.R.'s school records so they could be disclosed in this litigation. (Doc. 26, 35.) Plaintiff also complied with all other case-management deadlines to date and has not moved to postpone anything based on the filing of her motion to amend. Defendants cannot meet their burden of showing bad faith or dilatory motive under these circumstances. *See id.*

> **B.**     **Defendants have not met their burden of proving that denial of leave to amend is justified by futility or failure to cure deficiencies in amendments previously allowed.**

In the context of Rule 15(a), the term "futility" is a shorthand term for "a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Comms., Inc.*, 681 F.3d 114, 119 (2d Cir. 2021). Defendants cannot meet their burden of proving that denial of leave to amend is justified on either of these grounds. When Plaintiff filed and served the original Complaint during the height of the COVID-19 pandemic (Doc. 1, 8, 9, 10, 11, 12), Defendants did not move to dismiss it under Rule 12(b)(6), nor did they seek a more definite statement under  Rule 12(e). Instead, Defendants requested and received two extensions of time (Doc. 17, 18), after which they filed their answer (Doc. 19) and proceeded through the Rule 16

scheduling process as described above. (Doc. 28, 31). Thus, on this record, Defendants have no grounds upon which to claim that denial of leave to file the proposed First Amended Complaint is justified by a failure to cure deficiencies through amendments previously allowed. No such pleading deficiencies were previously identified in the record, nor were any other amendments previously allowed. Coming on the heels of the disclosure of T.R.'s school records, Plaintiff's proposed First Amended Complaint is the first instance in which leave to amend has been sought.

Given the lack of any timely challenge to Plaintiff's original Complaint, it would be both disingenuous and wrong for Defendants to now claim for the first time that denial of leave to file the proposed First Amended Complaint would be justified because that more detailed iteration of Plaintiff's pleading fails to state a claim upon which relief can be granted under the standard articulated in Rule 12(b)(6). Insofar as the futility standard used to justify denial of leave to amend under Rule 15(a) is the same as that used to decide a motion to dismiss under Rule 12(b)(6), many courts have determined that it is more fair and efficient to decline to address such futility arguments when raised in response to motions to amend. Courts instead allow those arguments to be "appropriately raised and developed in motions filed under Rule 12(b)(6)" after leave to amend is granted. *See, e.g., Cooper*, *supra*, 2022 WL 2063229, at *6 (collecting cases); *Madrid, supra*, 2005 WL 8163990, at *3; *cf. Garcia*, at *13 (declining to decide whether to grant summary judgment in the context of ruling on a motion to amend).

Insofar as the Court would apply the same standard to a futility argument that it does when reviewing a Rule 12(b)(6) motion, a decision to deny leave to amend on grounds of futility is a dispositive ruling subject to *de novo* review on appeal. *See Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 972-76 (10th Cir. 2021) (vacating a district court's denial of leave to amend under this standard because its analysis was incomplete). Part of the reason why arguments subject to *de novo* review under Rule 12(b)(6) are not adequately developed in the context of a motion to amend

under Rule 15(a) is that a party moving for leave to amend often cannot anticipate in the motion itself whether a futility argument will be raised in the non-movant's response, much less which claim or issue will be the subject of such an argument. The result is that the futility argument often appears as a portion of a response brief addressing other issues, such as the "good cause" standard under Rule 16(b)(4) and other factors under Rule 15(a).

When such futility arguments appear for the first time buried in a response brief addressing other issues, the movant will have to squeeze her abbreviated reply to those arguments among the other issues covered in a 12-page reply brief. *See Cooper*, *supra*, 2022 WL 2063229, at *7 (noting how briefing on a motion to amend often forces futility arguments to be addressed in a "necessarily abbreviated fashion"). The lack of fully developed arguments in this context increases the risk of error, and in the case of an erroneous denial of leave to amend based on futility, the cost of that error may be reversal on appeal with remand for additional proceedings, including the prospect of a second trial limited to the claim for which leave to amend was denied. *See, e.g., Adams*, 30 F.4th at 976; *cf. Martinez v. Carson*, 697 F.3d 1252, 1256 (10th Cir. 2012) (remanding for a second trial on a limited issue after reversing partial summary judgment in the defendants' favor on that issue, while leaving the plaintiff's victory at the first trial intact).

Because of this heightened risk of error when making a hasty ruling based on abbreviated futility arguments that are not fully developed, the practice of enlightened federal judges in this circuit is to defer the resolution of such arguments to a later stage of the litigation, unless the claim is so patently futile and frivolous that grounds for dismissing it appear on the face of the proposed amendment itself. *See Cooper*, *supra*, 2022 WL 2063229, at *6-7 (collecting cases). Plaintiff respectfully requests that the Court take such an approach here, particularly in light of pending issues concerning potential redactions to Plaintiff's proposed First Amended Complaint, which preclude Plaintiff from arguing factual details in that pleading at this time. The level of detail in

both the proposed First Amended Complaint and the elements of each of Plaintiff's legal claims also means this case is not amenable to resolution of futility arguments within the abbreviated briefing permitted for a motion to amend.

To the extent necessary to avoid waiving or forfeiting her arguments on this issue, however, Plaintiff will briefly address the potential issue of futility at a general level. By doing so, Plaintiff neither encourages nor consents to converting this motion to amend into a pre-filed response to an as-yet unfiled motion to dismiss under Rules 12(b)(6), 12(c), or 56.

First, there is no potential futility argument to be made based on the timing of the proposed First Amended Complaint. It is already clear from the record that Plaintiff just recently turned eighteen years of age (Doc. 87), so the statute of limitations on her claims would be tolled until at least her nineteenth birthday, *see, e.g.,* NMSA 1978, § 37-1-10, even if they were asserted for the first time in her proposed First Amended Complaint. Moreover, all her claims would relate back to the date of the original Complaint because they arise from the same set of transactions and are not asserted by or against any new parties. *See Garcia*, *supra*, 2010 WL 11618983, at *2-3.

There is also no potential futility argument to be made based on the absence of a cause of action. Each of the claims in Plaintiff's proposed First Amended Complaint are based on a clearly established body of law and supported by detailed factual allegations which give rise to a reasonable inference that Plaintiff's claims are not futile, much less patently so.

The "danger creation" theory under the substantive component of the Due Process Clause is clearly established in this circuit. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). The Tenth Circuit has long recognized that a civil-rights plaintiff may prevail on this theory by proving six elements:

> (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of

> serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the
> defendants acted recklessly in conscious disregard of that risk, and (6) the conduct,
> when viewed in total, shocks the conscience.

*Id.* at 1251 (citation and internal quotation marks omitted). While Rule 8(a) does not require her

to articulate specific legal theories or elements of a *prima facie* case in her Complaint, *see Skinner*,

562 U.S. at 530 (2011); *Johnson*, 574 U.S. at 11, Plaintiff has pleaded enough facts to support a

plausible inference in her favor regarding each element of a clearly established form of substantive

due process claim. And while some elements of such a claim are often difficult to prove to the

satisfaction of a skeptical court, there are reported cases in this circuit and elsewhere in which each

of those elements have been satisfied at the pleadings stage and beyond. *See, e.g., Sutton v. Utah*

*State Sch. for the Deaf and Blind*, 173 F.3d 1226, (10th Cir. 1999) (reversing dismissal of a

substantive due process "danger creation" claim against a school principal for failure to adequately

train school employees or adopt or implement a policy to prevent student-on-student sexual

assaults); *T.E. v. Grindle*, 599 F.3d 583, 589-90 (7th Cir. 2010) (similar); *Barbara R. v. Couch*, No.

03cv1225 MCA/WDS, 2006 WL 8443923, at *21 (D.N.M. Sept. 30, 2006) (denying summary

judgment on a similar claim raising in a foster-care context and collecting additional cases). The

facts of this case are particularly egregious, and thus one cannot reasonably conclude that

Plaintiff's substantive due process claims would be so futile as to preclude her from even pleading

them in her proposed First Amended Complaint.

It is also clearly established that school districts and school officials can be liable under the

Equal Protection Clause for their deliberate indifference to student-on-student sexual harassment.

*See, e.g., Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1249-52 (10th Cir. 1999). The clear weight of

authority from other circuits supports this view. *See, e.g., T.E.*, 599 F.3d at 588; *Hill v. Cundiff*,

797 F.3d 948, 978-79 (11th Cir. 2015); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130,

1135-38 (9th Cir. 2003). Again, some of the elements necessary to prove this form of equal-

protection claim can be difficult to prove to the satisfaction of a skeptical court, and that is why it does not make sense to specifically plead them unless and until Plaintiff has gained access to the necessary supporting facts which she has now alleged in her proposed First Amended Complaint. In light of the particularly egregious and detailed factual allegations in that pleading, one cannot reasonably conclude that it would be futile, or patently so, to allow Plaintiff to proceed on the Fourteenth Amendment equal-protection theories and sub-theories she now alleges.

Finally, the state-law claims asserted in Count III of Plaintiff's proposed First Amended Complaint fit under a recognized waiver of immunity from liability in Section 41-4-6(A) of the NMTCA that New Mexico courts have applied in the context of public schools for many years. *See, e.g., Upton v. Clovis Mun. Sch. Dist.*, 2006-NMCA-040, ¶¶ 10-15, 141 P.3d 1259; *Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶¶ 10-18, 310 P.3d 611; *C.H. ex rel. R.H. v. Los Lunas Schs. Bd. of Educ.*, 852 F. Supp. 2d 1344, 1358-64 (D.N.M. 2012). The only recently reported case to deny the waiver of immunity in Section 41-4-6(A) in a school setting is clearly inapposite, as it involved a single altercation in a parking lot by a student with no record of prior disciplinary problems. *See Kreutzer v. Aldo Leopold High School*, 2018-NMCA-005, ¶¶ 2-4, 409 P.3d 930.

In the context of vacating a district court's denial of leave to amend, the Tenth Circuit recently recognized that New Mexico law allows for premises liability claims involving sexual harassment. *See Adams*, 30 F.4[th] at 972-76. None of the other cases cited above analyzed claims under Section 41-4-6(A) of the NMTCA or the Fourteenth Amendment in the context of denying leave to amend a pleading. The absence of precedents made in that context further shows that courts instead choose to develop substantive law in those areas primarily through motions for summary judgment, not by means of denying leave to amend based on an abbreviated analysis of futility. This Court should follow the same path by concluding that Defendants do not meet their

burden of proving that the claims asserted in the proposed First Amended Complaint would be futile or, in the alternative, the Court should declining to adjudicate the grounds for Defendants' potential futility arguments until a later stage of the litigation, when the record is more fully developed.

## CONCLUSION

For the foregoing reasons, Plaintiff meets the criteria stated in Rule 16(b)(4) and 15(a) for granting leave to file her proposed First Amended Complaint at this point in the litigation, and Defendants do not meet their burden of showing grounds for denying leave to amend under the Rule 15(a) factors discussed above.

WHEREFORE, Plaintiff respectfully moves the Court for leave to file the proposed First Amended Complaint submitted concurrently as an attachment to Plaintiff's motion to seal the unredacted version of that document, and to accept Plaintiff's proposed First Amended Complaint as a timely and operative pleading in this matter.

Respectfully submitted:

**ROTHSTEIN DONATELLI LLP**

*/s/ Arne R. Leonard*
CAROLYN M. "CAMMIE" NICHOLS
CAREY BHALLA
ARNE R. LEONARD
500 4th Street NW, Suite 400
Albuquerque, NM  87102
(505) 243-1443
cmnichols@rothsteinlaw.com
cbhalla@rothsteinlaw.com
aleonard@rothsteinlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of June, 2022, I filed the foregoing pleading and the exhibit attached hereto electronically through the Court's CM/ECF system, which caused counsel of record for Defendants to be served by electronic means.

*/s/ Arne R. Leonard*
**ROTHSTEIN DONATELLI LLP**