IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANE DOE,

   Plaintiff,

vs.           No. Case No. 1:20-cv-01041-SCY-JHR

TAOS MUNICIPAL SCHOOLS,
LILLIAN TORREZ, ROBERT TRUJILLO,
LISA ABEYTA-VALERIO, and
EMY DEHERRERA in their individual capacities

   Defendants.

**DEFENDANTS TAOS MUNICIPAL SCHOOLS, LILLIAN TORREZ, ROBERT TRUJILLO, LISA ABEYTA-VALERIO, AND EMY DEHERRERA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [REDACTED]**

   Defendants Taos Municipal Schools ("TMS"), Lillian Torrez, Robert Trujillo, Lisa Abeyta-Valerio, and Emy DeHerrera ("Defendants") state that Plaintiff's Motion for Leave to File First Amended Complaint [Doc. 102 or "Motion"] should be denied.[1] As explained below, the new factual allegations contained in Plaintiff's PFAC do not make the causes of action stated in her initial Complaint any more plausible. Most of the new factual allegations serve no legitimate purpose and have no logical or relevant link to Plaintiff's claims. Several of the new factual allegations are inflammatory and prejudicial and, as Plaintiff should know from the evidence produced to date, have no evidentiary support. Plaintiff's efforts to expand the scope of her Substantive Due Process danger creation claim, to add an Equal Protection claim, and to increase the scope of individual capacity liability based on the newly alleged facts, legal theories and sub-theories, are futile. If Plaintiff is allowed to file the PFAC, these claims will be subject to dismissal under Rule 12(b)(6) and the individual Defendants will be entitled to qualified immunity. The

---

[1]References to Plaintiff's proposed First Amended Complaint ("PFAC") are to the proposed First Amended Complaint provisionally filed under seal, permitted by Order Provisionally Granting Amended Motion to Seal. [Docs. 103-1 and 105], as amended by Notice of Agreed Upon Extension [Doc. 112].

individual Defendants will also be entitled to a stay of litigation pending a decision on qualified immunity, thereby unnecessarily delaying litigation.[2]

## I.      INTRODUCTION AND BACKGROUND.

Plaintiff argues that she now seeks to amend her original Complaint to "add additional details regarding specific legal theories and sub theories" and, in essence, to allege additional facts based on evidence received during discovery to date. (Motion, p. 2-3) As the deadline to amend has passed, *see* [Docs 32, 33, and 97], she must first show that there is good cause to allow amendment of the Scheduling Order, and second, that amendment of her Complaint is in the interest of justice, as required by Rule 16(b)(4) and Rule 15(a)(1). *See, e.g., Gorsuch, Ltd., B.C. v. Wells Fargo Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014) citing *Pumpco, Inc. v. Schenker Int'l, Inc.,* 204 F.R.D. 667, 668 (D. Colo. 2001) (plaintiff must show both good cause for seeking amendment after the deadline set in the Rule 16(b) scheduling order and satisfy the Rule 15(a) standards). Plaintiff's PFAC does not meet either of these criteria.

Defendants agree that this case has experienced delays due to confidentiality and privacy issues, including the constraints imposed by the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. 1232g *et seq*. Federal law requires protection of student privacy interests in education records, and the parties did their best to comply.  As Defendants were obligated to object to the disclosure of FERPA-protected student related information, they proposed a process to comply with their obligations under FERPA and their obligations in this litigation.[3] *See* Timeline,

---

[2] The individual Defendants pled qualified immunity as an affirmative defense. However, as explained to the Court and Plaintiff's counsel during the telephonic status conference held before the Rule 16 conference, and confirmed by the Joint Status Report, Defendants do not intend to raise qualified immunity for claims in the initial Complaint on a Motion to Dismiss, and instead intend to raise it after discovery was complete. [Doc. 28, p. 14].

[3] Rhetoric suggesting that Defendants are somehow responsible for the FERPA-related delays and interfered with the progress of this case mischaracterizes the parties' cooperation.  *See, e.g.,* Motion [Doc. 102], p. 7 ("Plaintiff had to wait for Defendant TMS to send notice…" and "Upon receipt of an objection [by the student] to the disclosure …. Plaintiff had to wait…"), p. 8 ("Defendants blocked Plaintiff's counsel's efforts …" "Defendants declined to respond … claimed that FERPA prohibits them from doing so," and "did not even start disclosing those records until April 26,

attached as Exhibit A. Defendants do not rely on the unavoidable delays caused by the FERPA process to argue that Plaintiff lacks good cause to amend her complaint outside of the scheduling deadlines.[4] Instead, the proposed additional allegations are futile and do not serve a legitimate purpose.

The reason that the Motion should be denied, however, is not related to this question. Despite its length (65 pages in contrast to the 21-page original Complaint), the additional detail alleged in the PFAC adds little to the basic issues in this case.  Both the original Complaint and the PFAC use 42 USC Section 1983 to allege that the Defendants were liable for violations of Plaintiff's "substantive due process right to bodily integrity and to be free from student-on-student sexual assault." [Doc. 1, ¶ 140].  In her original Complaint, Plaintiff alleged that Defendant TMS had customs and policies that "permitted or condoned" T.R.'s sexual abuse of Plaintiff and Taos

---

2022."), p. 9 ("While pleadings and formal discovery concerning Defendants' liability were at a standstill due to the pending FERPA objections…, Defendants were able to conduct a full range of discovery…"), ("…efforts to use FERPA as a mechanism for not answering … and obstructing formal discovery…"). Defendants raised the FERPA issue with Plaintiff's counsel, and after receiving several extensions of time, on April 2, 2021 filed their Answer, at times raising FERPA objections. [Doc. 19]. The parties sought Court approval of a proposed procedure on May 14, 2021. [Doc. 24]. On May 18, 2021, the Court granted that motion. [Doc. 25]. The parties negotiated, and the Court approved, a Stipulated Protective and Confidentiality Order [Doc. 35] (as Amended by Docs. 59 & 61, the "Confidentiality Order."). On July 28, 2021, the district began to notify students of the possibility of disclosure and their opportunity to object. [Doc. 38]. One student objected, and was given the opportunity to confer *ex parte* with the Court. On September 23, 2021, that student's education records were submitted to the Court for *in camera* review, with supplementation on October 12 and November 15, 2021. On April 25, 2022, the Court issued its Order regarding production; an Amended Order was issued the next day [Docs. 88 & 90]. The day after issuance of the Court's Order, Defendants began to produce the education records. Meanwhile, records relating to a student who did not object were disclosed, both parties engaged in discovery, and both parties provided and supplemented their initial disclosures. Records from the Taos Police Department and the District Attorney's office are among the records that have been produced under the Confidentiality Order. Defendants believe that Plaintiff has diligently sought to find and interview potential witnesses and to make public record requests. Both parties have disclosed their forensic psychological experts. Plaintiff has disclosed her other experts, and the remaining defense expert disclosures will be made by the (extended) deadline. Plaintiff's suggestion that Defendants agreed to depositions of witnesses who have to be recalled for a second deposition, [Doc. 102, pp. 10-11], was impractical. Plaintiff's characterization of Defendants' motives is not accurate. Id. The suggestion that it is relevant to the Motion that defense counsel requested and received an extension of time to file an Answer on behalf of four different individuals and one entity in response to a Complaint containing 163 allegations–while all individual Defendants and their counsel were working remotely–is disingenuous. *See* [Doc. 102, pp. 19-20]. The professionalism and civility extended to and by counsel for all parties during the pandemic should not be erased–or discontinued–by hindsight.

[4] In fact, the FERPA-related delays and the complexity of the case as initially pled may lead one or both parties to seek additional amendments to the Scheduling Order in the future.

High School female students, and that Defendants failed to exercise reasonable care to maintain the premises of THS in a safe condition, including permitting a "continued, known dangerous condition to exist on its premises." [Doc. 1, ¶¶ 147, 151, 154]. The PFAC is much longer, but its length does not mean that Plaintiff has alleged plausible claims.[5] If the PFAC is filed, Defendants will have to respond with a Motion to Dismiss and for Qualified Immunity, they will be entitled to a stay of litigation pending a decision on qualified immunity, and, Defendants respectfully submit, the parties will ultimately end up some months later in the same position they are in now – litigating the original, not amended, Complaint.

Simply put, Plaintiff does not need to amend her Complaint. Her proposed amendments include inflammatory and scandalous language, prurient detail, novel theories about social relationships and athletics in Taos, claims that are barred by previous administrative proceedings, references to events after Jane Doe's sexual assault, and details that Plaintiff should know are incorrect as they are contradicted by documents that were obtained and produced by Plaintiff. Although it is not unusual for defendants object to allegations made by plaintiffs, the allegations in the PFAC go beyond the acceptable. None are in any way consistent with or required by the interests of justice or applicable pleading standards.

## II.   LEGAL STANDARDS.

Amendment of the Complaint requires Plaintiff to "demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014) citing *Pumpco, Inc. v. Schenker Int'l, Inc.,* 204 F.R.D. 667, 668 (D. Colo. 2001). Even if Plaintiff can

---

[5] The PFAC includes new allegations regarding alleged breaches of duty by wrestling coach and facilities director Robert Valencia. PFAC, ¶¶ 21, 33, 84, 97, 157, 236, 237, 238, 239, 240, 241, 242, 243. Plaintiff states in her Motion, however, that she is not adding any new defendants. [Doc. 102, p. 3].

show good cause to amend the Scheduling Order, she must also satisfy the requirements of Rule 15(a), which states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a).

The decision to grant leave to amend the Complaint is within the trial court's discretion, and will not be disturbed absent an abuse of that discretion. *Merchants and Planters Bank of Newport v. Sena,* 2007 WL 9706387, citing *Woolsey v. Marion Labs, Inc.* 934 F.2d 1452 (10th Cir. 1991). The court may consider whether there has been undue delay, undue prejudice to the opposing party, bad faith, or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. W., Incl,* 3 F.3d 1357, 1365-66 (10th Cir. 1993), citing *Castleglen, Inc., v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir. 1993); *see also Gallegos v. Bernalillo County Board of Commissioners,* 2017 WL 3575883 at *31 (D.N.M. 2017) (Browning, J.) citing *Jefferson County School District v. Moody's Investor's Service,* 175 F.3d 848, 859 (10th Cir. 1999). A district court is not required to allow amendment "if the complaint, as amended, would be subject to dismissal." *Anderson v. Merrill Lynch Pierce Fenner & Smith,* 521 F.3d 1278, 1288 (10th Cir. 2008), citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007). *Accord Lundahl v. Pennsylvania Mtg. Ass'n Ins. Co.,* 440 Fed. Appx. 629, 632 (10th Cir. 2011) (affirming denial of leave to amend where amendment futile). The Court may also deny amendment "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based, but fails to include them in the original complaint." *Gallegos v. Bernalillo County Board of Commissioners,* 2017 WL 3575883 at *31, citing *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir.1990).

## III.    PLAINTIFF SHOULD NOT BE ALLOWED TO AMEND HER COMPLAINT.

Plaintiff cannot demonstrate a solid basis to amend her Complaint. Although the scheduling

delays caused by FERPA were unavoidable, there still is not good cause to amend the Scheduling Order [as amended, Doc. 97] to allow the proposed amendments. Further, Plaintiff's proposed amendments are futile, as they do not include allegations of fact supporting specific elements of a plausible claim for constitutional violations or for premises liability. Many of the additional graphic allegations pertaining to the sexual assault are personal and thus uniquely available to Plaintiff (or Jane Doe 2) at the time the original Complaint was filed and could have been included at that time. *See e.g.* PFAC, ¶¶ 68, 74, 103, 104, 107, 110-115. Plaintiff should know that other allegations are false and still others fall short of pleading requirements because they are purely speculative and conclusory. Finally, the claims against the individual defendants would be barred by qualified immunity.

A.      **Defendants' Objections to Amendment are Not Based on the FERPA Delays.**

Although Plaintiff argues at length that there is good cause to allow amendment out of time because of delays caused by the need to protect student privacy interests [Doc. 102, pp. 4-16], Defendants did not assert objections based on FERPA in an attempt to delay or interfere with the prosecution, but raised them in a good faith effort to comply with federal law regarding the privacy interest of students and families. Although Plaintiff suggests that good cause for untimely amendment exists to prevent defendants from "delay[ing] and obstruct[ing] the plaintiff's discovery efforts for as long as possible until the operative case-management deadlines have expired," Motion, p. 15, there is no evidence of any such tactics. The requirements of FERPA are not optional, and the record demonstrates that the parties worked together to negotiate an acceptable process for complying with FERPA and to negotiate a mutually acceptable Confidentiality Order. *See* Exhibit A.

This is not to say, however, that the content of the recently produced education records

establish good cause to amend the Scheduling Order to allow filing of the PFAC.  Although the education records provide more information about T.R.'s educational experience, including athletics and disciplinary encounters, their content does not justify the proposed amendments. Plaintiff's reliance on the principle that newly discovered facts that serve as a basis for new claims can constitute "good cause" to modify a scheduling order is misplaced because the information in the education records is not equivalent to the newly discovered facts in cases such as *Madrid v. Phelps Dodge Corp.*, No. 04-0138 MV/ACT, 2005 WL 8163990, *2 (D.N.M. 5/3/2005), *Youbyoung Park v. Gaitan,* No. 11-CV-987 JCH/RHS, 2013 WL 12203379 (D.N.M. 3/27/2013), *Pumpco v. Schenker Int'l, Inc.,* 204 F.R.D. 667, 668 (D. Colo. 2001), *Abraham v. WPX Production Productions, LLC,* No. 12-0917 JB/CG, 2016 WL 548251 (D.N.M. 1/26/2016), and *Garcia v. Board of County Commissioners,* No. 09-cv-322 BB/WDS, 2010 WL 11618983, *9-10 (D.N.M. Nov. 30, 2010).  In those cases, the plaintiffs sought amendment to add specific new claims or new defendants.[6] [Motion, p. 12]. Here, Plaintiff simply wants to add more detail and expound more theories.

Plaintiff suggests that she satisfied the basic pleading requirements and provided an adequate legal basis for her claims asserted in both the original Complaint and the PFAC.  [Doc. 102, pp. 12-16].  Although Plaintiff suggests that her original Complaint is adequate, she appears to suggest that allowing amendment to add factual details (allegedly gleaned from the education records) satisfies the good cause requirement and would be consistent with the courts' practice of allowing amendments to cure pleading deficiencies. She speculates that if the Defendants had moved to dismiss the original Complaint, she would have been allowed to amend, and she even

---

[6] Plaintiff also cites *Pumpco v. Schenker International, Inc.* to show that good cause for extending the time to amend a pleading under Rule 16(b)(4) may be based on a change in the law. Plaintiff does not identify any change in the law that would support amendment.

seems to suggest that because Defendants did not file such a motion, it would be unfair for them now to argue that Plaintiff's claims are futile. [Doc. 102, pp. 15-16 & 20-21]. This argument ignores the fact that Defendants preserved this defense in their Answer, and the Joint Status Report notes their intention to move for summary judgment, and to seek qualified immunity, after discovery closes.  *See* [Doc. 19 & 28].

**B.      Plaintiff's Proposed Amendments are Futile.**

The standard for determining whether a motion to amend should be denied on the basis of futility is whether the amended pleading would be subject to dismissal. *Jefferson County School District No. R-1 v. Moody's Investors Services, Inc.,* 175 F.3d 848, 859 (10th Cir. 1999); *Gallegos v. Bernalillo County,* 2017 WL 2575883, *31; citing *In re Thornburg Mortg., Inc. Sec. Litig.,* 265 F.R.D. 571, 579-80 (D.N.M. 2010). Plaintiff's federal constitutional and state premises liability claims rest on the general theories that the Defendants created or ignored a dangerous condition by allowing T.R. on the THS campus and that they were deliberately indifferent and negligent in recognizing and responding to the danger.  Plaintiff does not allege any facts that plausibly support her theories, and the PFAC would therefore be subject to dismissal under Rule 12(b)(6). That standard, of course, requires that a complaint contain "enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), citing *Bell Atlantic v. Twombly*, 550 U.S. 444, ---, 127 S. Ct. 1955, 1965 (2007) (internal punctuation omitted).

**1.      Plaintiff's alleged substantive due process violations are futile.**

The general rule is that "a state does not have a constitutional duty to protect its citizens from private violence." *Sutton v. State School for Deaf and Blind,* 173 F.3d 1226, 1237 (10th Cir. 1999), citing *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196-97

(1989); *accord Robbins v. Oklahoma,* 519 F.3d at 1250. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Dept. of Social Services*, 489 U.S. 189, 197 (1989).  The only exceptions are when the State has a special or custodial relationship with the victim, where the State had an affirmative duty to protect the individual or when the State creates the danger that harms the victim. *Clark v. Las Cruces Public School District, Clark v. Las Cruces Public School District,* No. 10-CV-307 WJ/GBM, 2010 WL 11619298 (7/1/2010).  Plaintiff's Motion makes clear that her alleged substantive due process violations rest on the danger creation theory.  [Doc. 102, pp. 22-23].

These proposed amendments are futile, however, because they do not support any plausible inference that Defendants "created the danger" that caused the harm to Plaintiff. A substantive due process violation under the danger-creation theory requires satisfaction of the following six elements:

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Ruiz v. McDonnell,* 299 F.3d 1173, 1182-83 (10th Cir. 2002); s*ee also Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (applying test in context of criminally insane killer in general population of mental hospital). Satisfaction of this test necessarily involves a showing of affirmative conduct "placing the plaintiff in danger." *Ruiz,* 299 F.3d at 1183.

Attempts to satisfy this standard with speculative and conclusory allegations are futile. Plaintiff cannot establish "danger creation" without, for example, allegations of affirmative conduct involving "an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz,* 299 F.3d at 1183, quoting *Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d 729, 733 n.

4 (8th Cir. 1993). Plaintiff must allege facts to show decisions that are not negligent, but are "deliberately wrongful" and "shock the conscience." *Uhlrig v. Harder,* 64 F.3d 567, 573 (10th Cir. 1995) *cert. denied,* 516 U.S. 1118 (1996) (transfer of criminally insane killer to the general population of mental hospital, where he then murdered his therapist, did not shock the conscience). Plaintiff must allege facts to show that the Defendants' conduct was directed at Plaintiff, "rather than at the public at large." *See Ruiz,* 299 F.3d at 1183 (citing standard); *accord Armijo v. Wagon Mound Pub. Sch.,* 159 F.3d 1253, 1263 (10th Cir. 1998) (individual defendant took action that created the danger or increased her vulnerability to the danger). Rhetoric alluding to wrongful conduct, such as "reckless," "wanton," "obdurate," and "conscience-shocking," (*see e.g.* PFAC ¶¶ 183, 187, 199, 205, & 211), is conclusory. The PFAC does not allege facts to show that, for example, Defendants disregarded or were completely indifferent to a known and obvious risk that was so great that it was "highly probable that serious harm would follow and that he or she proceeded in conscious and unreasonable disregard of the consequences," as required to show reckless conduct. *Sutton v. Utah State School for Deaf and Blind,* 173 F.3d 1226, 1238 (10th Cir. 1999) (internal citations and punctuation omitted). Plaintiff does not allege any facts to "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder,* 64 F.3d at 574. Stripped of its conclusory and inflammatory language, the PFAC does not allege the exceptional circumstances required to apply the danger creation standard to the substantive due process claims. *See Ruiz,* 299 F.3d at 1184, citing *Eckert v. Town of Silverthorne,* No. 00–1030, 2001 WL 1152781, at *8, 25 Fed.Appx. 679 (10th Cir. July 9, 2001) (discussing standard).

One example of the futility of Plaintiff's proposed amendments is her theory that the Defendants created a dangerous condition by deciding to move the Chrysalis Alternative

Program.[7]   Chrysalis, which provides special education services to students with behavioral issues[8], was moved after the 2014-1015 school year from a separate building to the THS grounds. PFAC, ¶ 10.  Plaintiff alleges that after the move, Chrysalis students were allowed to roam through the THS building and campus. PFAC ¶¶ 10-13. Nothing in the PFAC supports an inference that this decision was directed at Plaintiff or any other THS student. In fact, Plaintiff did not enroll at THS until two years later.  *See* PFAC ¶¶ 10, 12, & 18 (stating dates). A decision to move a school (or a program) for special education students does not shock the conscience. *Compare Uhlrig v. Harder* (transfer of criminally insane killer was not conscience-shocking). Even if the Defendants knew that Chrysalis students had behavioral problems, the conclusion that these students were dangerous to Plaintiff in October 2018, when the assault occurred, is too remote and indefinite to support a danger creation theory.  *See Graham v. Ind't School Dist.,* 22 F.3d 991, 995 (10th Cir. 1994) (danger to students caused by presence on school grounds of student who had threatened violence did not create or increase danger to victims). Any dangers posed by the proximity of students with behavioral problems to the general population would be "a threat of an indefinite range and duration," which does not establish a constitutional violation. *See, e.g., Ruiz,* 299 F.3d at 1183 (failure to license day care at which child was killed did not pose an immediate risk of harm).

Plaintiff's allegations that inadequate staffing at Chrysalis, ¶¶ 15-16, or that a lack of proper procedures, forms, and reporting procedures related to sexual violence, ¶ 17, created dangerous conditions are equally futile. Any risks to Plaintiff from inadequate staffing or alleged deficiencies of teachers assigned to other students are highly indefinite and remote. None of these allegations put Plaintiff at any substantial risk of serious, immediate, and proximate harm, nor was the risk to

---

[7] Chrysalis is a school, not a program.  For convenience, Defendants will follow Plaintiff's naming convention.
[8] This is Plaintiff's characterization.

Plaintiff obvious and known. Any link between the staffing of Chrysalis, disciplinary forms, or reporting procedures and Plaintiff's alleged assault is too remote to support a constitutional violation.

However emotionally appealing Plaintiff finds her theory that T.R. was a dangerous student, and that by allowing him to enroll, the School Defendants created a dangerous situation that led to the violation of Plaintiff's constitutional rights, ¶ 23, it does not withstand legal scrutiny. Knowledge that a student has created bad acts in the past does not create a "known or obvious danger" to another student.[9] *See Clark v. Las Cruces Public School District,* No. 10-CV-307 WJ/GBM, 2010 WL 11619298, *6 (D.N.M. 7/1/2010) (knowledge that perpetrator, another student at the school, had created violent act in the past did not create a known and obvious danger that was ignored); *Graham v. Ind't School District No. I-89,* 22 F.3d 991 (10th Cir. 1994) (specific knowledge that a student had threatened plaintiffs' sons was on school grounds did not pose constitutional violation when there was no affirmative act to create or increase the danger to the victim); *Dorothy J. v. Little Rock School Dist.*, 7 F.3d 729 (8th Cir. 1993) (rejecting danger creation theory based on school district's knowledge of student's history of violence and sexual assault). T.R.'s enrollment at THS in 2016 did not create a specific threat to Plaintiff in 2018.

Plaintiff's theory that the presence of T.R. created a dangerous condition is also futile because, with very limited exceptions, New Mexico offers a free public school education to any school-age person resident who has not received a high school diploma or its equivalent. NMSA (1978) § 22-1-4(A); *see also* NMAC 6.10.8.8(A) ("school-age person shall attend [school]"). State and federal law recognizes the right of all children with disabilities aged 3 through 21, including

---

[9] ████████████████████████████████████ PFAC ¶ 19.

Redactions to this Response are made pursuant to the Confidentiality Order. Subject to Court approval, an unredacted copy of this Response with all exhibits will be filed under seal.

children with disabilities who have been suspended or expelled from school, to a free appropriate education ("FAPE") in compliance with 34 CFR Sections 300.101 and 300.120. *See also* NMAC 6.31.2.8(A), 20 U.S.C. § 1400, *et seq.* (Individuals with Disabilities Act or "IDEA", mandates that all children with disabilities have available to them a free appropriate public education…"). The IDEA imposes specific requirements, including procedures related to discipline.[10] *See, e.g.,* 20 U.S.C. §1415(k); 34 C.F.R. 300.530.  Given the complexity of this area, it is not surprising that the courts defer to the specialized knowledge of professional educators in making placement and other decisions under the IDEA. *Endrew F. v. Douglas County School Dist. RE-1,* 580 U.S. __, 137 S. Ct. 988, 998-99 (2017). Any attempt to show that Defendants created a dangerous condition by allowing a student to enroll is patently futile. Even assuming that Defendants did not do enough to help T.R., and by implication, prevent the assault on Plaintiff, the PFAC does not allege specific facts that show that the School Defendants participated in or consciously acquiesced in T.R.'s actions or were otherwise deliberately indifferent. *See Schaefer v. Las Cruces Public School Dist.,* 2:09-cv-01119 JB-KBM, April 30, 2010 Mem. Op. [Doc. 31] (unpublished opinion)

Plaintiff also appears to allege that the staffing at Chrysalis and THS violated Plaintiff's constitutional rights.  [Doc. 102, ¶¶ 36, 37, 88, 89, 160, 242]. This allegation too is futile. In order to succeed, either on a danger creation or an equal protection theory, Plaintiff must show that the adequacy of THS and Chrysalis teachers is linked to the violation of her constitutional rights.  At best, adequacy of teaching is linked to education, and education is not a fundamental Constitutional right. *See San Antonio Inpt Sch. Dist. Vl Rodriguez,* 411 U.S. 1, *35 (1973) (education not a right

---

[10] The procedures for disciplining a child with a disability who violates a code of student conduct are set out at 20 U.S.C. § 1415(k).  Very briefly, there is a process of determining whether a violation of by a child with a disability of a violation of a code of conduct was caused by or had a direct and substantial relationship to the child's disability or if it was the direct result of a failure to implement the IEP. The result of that inquiry determines the next step and scope of available discipline.

explicitly protected under Constitution); *accord Martin v. Milner,* No. 07-cv-02589-REB-KLM, 2008 WL 4748519 (D. Colo. 2008) (education not core area protected by Eighth Amendment). *A.C. v. Waithe v. McKee,* 23 F.4th 37, 44-45 (1st Cir. 2022).  *See also Jeffrey v. Bd of Trustees of the Bells ISD,* 261 F.Supp.2d 719, --, aff'd 96 Fed. App. 248 (5th Cir. 2004) (no constitutional violation where school refused to accommodate student's desires regarding time of Spanish class). Plaintiff's claim that her interest in the staffing and credentialing of those who teach other students is even more remote. Plaintiff does not have any interest in whether other students have adequate teachers. The alleged lack for other students of adequate teachers cannot possibly create a danger for Plaintiff.

    Plaintiff's allegations against the individual Defendants are equally futile.  She alleges very generally that they established policies, *see, e.g,* PFAC [Doc. 102] ¶¶ 151-172, 201-216,[11] ignoring the fact that the school board is responsible to establish policies and approve budgets. NMSA (1978) Section 22-5-4(A). Superintendents and teachers simply do not have this authority.

    To the extent the PFAC includes specifics regarding the individual Defendants, such allegations are also based on a failure to do things that they have no statutory authority to do. For example, the individual defendants have no authority to move (or refuse to move) Chrysalis, allocate financial resources to, for example, pay for an upgraded video surveillance system, or set budgets allowing for staffing levels. *Compare* PFAC ¶¶ 12, 14, 15, 16-157, 160, 168 *with* NMSA 22-5-4(A) (review and approve school district budget), 22-5-2(D) (acquire, lease and dispose of property) & 22-5-2(H) (provide for the repair of and maintain all property belonging to the district).

    Many of the other allegations regarding the School Defendants and their treatment of T.R. are equally futile. Not only do they fall short of the standards required to allege a plausible

---

[11] PFAC ¶¶ 201-216 are contained in Count II, the caption for which indicates that Count II would be brought against TMS. However, specific allegations indicate that liability is alleged against all Defendants.

constitutional claim, but allegations about a network of family and social relationships, the alleged "governing clique" (¶ 162), and perspectives about high school sports (¶¶ 117 & 166) are speculative and conclusory. Family and social relationships that cross the boundaries of school and community are not uncommon, especially in towns the size of Taos. Nothing is reckless about coaching cheerleading (or, "spirit") or participating in wrestling, and neither sport is limited to students of one gender.[12] Both wrestling and spirit are recognized as winter sports by the New Mexico Activities Association. https://www.nmact.org/sports/ (accessed 6/29/2022). T.R.'s participation in wrestling over a year before the alleged assault is too remote and indefinite to create any danger to Plaintiff. Encouraging a student to participate in athletics cannot establish a dangerous condition.

Plaintiff suggests preemptively that she has pleaded enough facts "to support a plausible inference in her favor regarding each element of a clearly established due process claim," [Doc. 102, p. 23]. In reaching this conclusion, Plaintiff reads *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999) and her other authorities too broadly. *Sutton*, for example, held that the plaintiff had stated a claim based on allegations that a supervisor had recklessly or consciously failed to adopt a protective policy and inadequately informed and trained employees so as to enhance the danger of sexual assault to the plaintiff. However, the Tenth Circuit Court of Appeals has since clarified that its opinion in *Sutton* "made plain not once, not twice, but three times, that in reaching its decision regarding the principal's alleged failure to supervise, it was construing the complaint pursuant to the now defunct and "best forgotten" *Conley*

---

[12] Young women participate in wrestling throughout the state. For example, as Plaintiff should know from a document she produced in this case, Jane Doe v. Taos Schools 000218, a female student is listed on the 2017-1018 THS Varsity Boys wrestling roster produced by Plaintiff and her photo appeared at www.gallupindependent.com, *https://gallupindependent.photoshelter.com/image/I0000dslHcZOw80M*. There has been no discovery regarding males participating in cheer at THS, but the Court could take judicial notice that boys and men participate in cheer. https://www.lcsun-news.com/story/opinion/2016/04/08/kudos-state-campion-cheerleaders/82791682/.

standard." *Gray v. University of Colorado Hosp. Authority,* 672 F.3d 909, n. 7 (10th Cir. 2012)*,* citing *Conley v. Gibson,* 355 U.S. 41 (1957), overruled by *Bell Atl. Corp. v. Twombly,* 550 U.S. 544. *Sutton* is also distinguishable, given that the defendants had specific knowledge that the victim (a disabled student) had been raped under virtually identical circumstances in the boys' restroom, yet he was left unsupervised in the same location. The court in *Sutton* also "recognized the requirement that supervisory liability be premised on an underlying constitutional violation," *id.,* which Plaintiff has failed to show. *T.E. v. Grindle,* 599 F.3d 583 (7th Cir. 2010), which involved an elementary school principal's active concealment of reports of a teacher's sexual abuse and creation of an atmosphere that allowed abuse to flourish is not analogous to this case, in which even the allegations of the PFAC show the repeated efforts to address T.R.'s behavior. *Barbara R. v. Couch,* No. 03-cv-1225 MCA/WDS, 2006 WL 8443923, *21 (D.N.M. 2006) is also distinguishable – intentionally returning a vulnerable child without necessary safeguards into a known dangerous situation is not comparable to trying to deal with a student's behavior issues in public school.  Plaintiff's speculative and conclusory allegations are futile.

    **2.**  **Plaintiff's equal protection theory is futile.**

An equal protection claim against the school district requires Plaintiff to show that an individual's actions are "representative of an official policy or custom … or are taken by an official with final policy making authority." *Murrell v. Sch. Dist. No. 1, Denver, Colorado*, 186 F.3d 1238, 1249-1252 (10th Cir. 1999).  The municipal policy must either be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers" or the discriminatory practice must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 1249 (internal punctuation and citations omitted); *see Clark,* *7. Plaintiff's proposed equal protection claim against the District is futile because she alleges no facts

to show that TMS had an official policy or a custom of ignoring sexual harassment. Plaintiff's multiple allegations regarding a so-called policy are speculative, conclusory, and ignore the question of who has authority to establish a policy. *See*, *e.g.*, NMSA (1978) §§ 22-5-4 (Local School Board; powers and duties); 22-5-14 (Local Superintendent; powers and duties); 22-10A-18 School Principals; (Duties). *See* PFAC ¶¶ 61, 152, 153, 154, 156, 160, 161, 163, 164, 165, 167, 168, 170, 205, 206, 207, 208, 209, 212, 213, 215, 229, 231. Allegations that TMS had a policy of deliberate indifference to sexual harassment are futile.

Allegations of individual liability based on alleged discriminatory practices or customs are equally futile as they are unsupported by any allegations of fact. Although an individual defendant may be liable under section 1983 "upon a showing of deliberate indifference to known sexual harassment," *Murrell,* 186 F.3d at 1250, Plaintiff must show a "deliberate" deprivation of constitutional rights, not mere negligence; that is, there must be allegations of facts that the Defendants actually knew of and acquiesced in T.R.'s behavior. *Murrell,* 186 F.3d at 1250; *Accord Clark v. Las Cruces Public School Dist.,* No. 10-CV-307 WJ/GBM, 2010 WL 1169298, *6 (D. N.M. 7/1/2010). Absent such allegations, Plaintiff's proposed amendments are futile.

An equal protection claim requires Plaintiff to allege that she was treated differently from similarly situated individuals, *id.,* yet there are no allegations that Plaintiff was treated differently from similarly situated individuals. Speculation that there was some sort of gender difference based on preferred sports (*see* PFAC ¶¶ 165 &166) is not enough. These allegations too are futile.

Plaintiff's equal protection claim appears to confuse the standards under Title IX and equal protection, by allegations regarding, for example, training for students and supportive services [Doc. 102, ¶¶ 17, 45, 63, 76, & 89], rather than whether Plaintiff can establish an equal protection claim. This theory fails on several counts. First, an equal protection claim requires a

showing that the plaintiff is a "member of a class of individuals that is being treated differently from similarly situated individuals that are not in that class," *Schaefer v. Las Cruces Pub. Schls.,* 716 F.Supp.2d 1052, 1066 (D. N.M. 2010), not whether Plaintiff was "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity …" 20 U.S.C. 1681. Second, Plaintiff's references to the lack of supportive services, for example, appear to be based on the 2020 regulation, which mandates that the recipient of the complaint offer supportive services. *Id.* Finally, any claims Plaintiff might theoretically make related to Title IX are also futile because they have already been addressed in a facilitated resolution with the Office for Civil Rights. *See* OCR Complaint, attached as Exhibit B & Facilitated Resolution Between the Parties, attached as Exhibit C. Having settled the Title IX claims (and most likely her claims related to video surveillance), Plaintiff's efforts to relitigate these issues as if they were an equal protection violation are futile. Any other allegations that might be related to showing deliberate indifference to sexual harassment are equally speculative, conclusory, and remote, and thus futile.

   3.   **The proposed amendments are futile because they include allegations that Plaintiff should know are false.**

   Plaintiff includes several allegations that are irrelevant and, more importantly, that she knows, or should know, are false. Although the standard for a 12(b)(6) motion requires the defendant to assume that the facts as pled are true, allegations that are known to be false based on the record are troubling.  For example, Plaintiff incorrectly alleges ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ [PFAC, ¶¶ 140-141].  Not only is this allegation speculative and irrelevant, it is incorrect. *See* ████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

Plaintiff implies that the School Defendants were deliberately indifferent to reports that a male teacher was having an inappropriate physical relationship with a female student, suggesting that that this incident is consistent with deliberate indifference to T.R.'s sexual misconduct and that the School Defendants "took no action" regarding the teacher or the student. [PFAC, ¶¶ 171-172].  Plaintiff knows this allegation is not correct because she produced the May 24, 2018 incident report from the Taos Police Department that shows that Defendant Lisa Abeyta-Valerio reported these allegations within one and one-half hours of their having been reported to her. Exhibit E, (Jane Doe v. Taos Schools 000236-000239). Such claims are futile.

### 4.  Plaintiff cannot plausibly allege any violation of New Mexico state law.

Plaintiff's state law claims against the Defendants are based on an alleged breach of a prudent person's duty of care in their operation of the THS premises. [PFAC, ¶ 237]. The basis of this allegation could be summarized as encompassing theories that some areas of the premises were left unmonitored, that Plaintiff and other female students were not able to escape or protect themselves, that Plaintiff and other female students were not provided with resources or access to resources to protect themselves, and that the Defendants allowed T.R. to be on the premises unmonitored. *See generally* PFAC ¶¶ 235-244f.  This negligence claim is futile.

Not only is it black letter law that the government does not have the duty to do everything that might be done, NMSA § 41-4-2(A), but there is no evidence of a pattern of violence at THS – two rapes over two years do not establish a "pattern" of violence.  Nor can Plaintiff establish that one student is a dangerous condition or a "hot zone" of danger to fit within the Section 41-4-6 waiver of liability. *Kreutzer v. Aldo Leopold High School*, 409 P.3d 930, 944, 2018-NMCA-005,

¶ 61 (N.M. App. 2017). No regulations require Defendants to have security cameras in all areas of the high school campus, and Defendants are not aware of any basis (other than speculation) to conclude that cameras have a deterrent effect. Plaintiff's allegations are futile, and amendment of the complaint should not be allowed.

5.  **Plaintiff violates the rules of pleading rules by her inclusion of immaterial, impertinent, and scandalous allegations.**

Plaintiff's PFAC is also futile because it violates Rule 8 and Rule 12(f), which require a short, plain statement of the Plaintiff's claims and allow the court to strike allegations that are immaterial, impertinent, or scandalous. A complaint is to give the defendant "fair notice" of the plaintiff's claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *Foster v. Pfizer, Inc.,* No. 00-1287-JTM, 2000 WL 33170897, *1 (D. Kan. 12/12/2000), citing *Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,* 507 U.S. 163 (1993). "'Unnecessary prolixity' places an unjustified burden on the court and defendant to determine the relevant issues from a mass of verbiage." *Id.* Although Rule 12(f) motions are generally disfavored, a motion to strike would be appropriate where the PFAC includes material that lacks any essential or important relationship to the claim, contains unnecessary particulars, and is likely to confuse and inflame public opinion and is prejudicial to the defendant. *See Foster,* 2000 WL 33170897, *2. Prejudice occurs when the allegations confuse the issues or are so lengthy and complex as to confuse the issues. *Id.*, citing *Hoffman Dombrowski v. Arlington Int'l Racecourse, Inc.,* 11 F.Supp.2d 1006, 1009 (N.D.Ill.1998).

Plaintiff's PFAC meets these criteria and a court would be likely to strike many of its allegations. The proposed amendments roughly triple the length of the original complaint. Her numerous new allegations use inflammatory and impertinent language to portray a high school student, who is not a party to this case, as a "sexual predator," (PFAC, p. 2 and ¶¶ 85, 221, & 242),

thus potentially confusing the issues. Plaintiff uses words such as "predatory" (p. 2 and ¶¶ 51, 60, 81, 85, 95, 99, & 228), "lure" (¶ 67), "stalk and carry out sexual assaults" (¶ 34), "stalked, sexually harassed, and sexually assaulted" (¶ 62), "unwanted advances, threats, and stalking behavior" (¶94), "stalk, harass, and assault female students as he wished" (¶ 95), "stalking and grooming" (¶ 102), "stalk and trap his female victims" (¶ 156, 172), "rampant cronyism" (¶ 151), "low status females" (¶ 156), "used the school premises as a venue for stalking his young female prey" (¶ 157), "the skills and techniques to capture and subdue his female prey (¶ 157), and "roamed the school premises stalking and assaulting his younger female victims" (¶ 168) to amplify her claims. Such language is inherently inflammatory and intentionally provocative. These conclusory "sound bites" add nothing to the PFAC.[13] Allegations describing Plaintiff's sexual assault in prurient detail (¶¶ 104, 107, and 109-113) are evidently included simply for their emotional shock value. *See Foster* (striking redundant allegations that "add nothing to the complaint except an emotional 'sound-bite' for the media").

Other conclusory, inflammatory, and irrelevant allegations include Plaintiff's insinuation that a former teacher's possible suicide might be linked to T.R. (¶ 89); that educators' resignation or retirement might be linked to T.R. ( ¶¶ 47, 77, & 88); that Defendants are responsible for an allegedly "intrusive and unprofessional interview" of Jane Doe by T.R.'s Children's Court attorney (¶ 136); that being a cheerleader is a "submissive, sidelined" role in contrast to allegedly "male" roles in "aggressive, physical-contact sports such as the football and wrestling team …" (¶ 165); or that some non-defendant employees are not competent. *See, e.g.*, PFAC ¶ 159. If Plaintiff is allowed to amend her Complaint to add all of these allegations, Defendants must file a Motion to

---

[13] Plaintiff may rely on such language to satisfy the "shock the conscience" element of substantive due process. Whether language is shocking is distinct from whether an action "shocks the conscience" of the court. *Uhlrig,* 64 F.3d at 573 (citations omitted). In any event, Defendants submit that courts look beyond conclusory allegations to determine whether there is a plausible claim.

Dismiss and for Qualified Immunity, and, to consider whether to file a motion to strike or litigate issues of teacher hiring practices, credentialing, instruction practices at Chrysalis, and proper interview techniques in juvenile delinquency matters. If litigated, all of these issued will require additional discovery. Allegations that T.R. ███████████████████████████ ████████████████, (¶ 143) are equally irrelevant because ████████████████████████ ██████, but if they are allowed, this raises the issue of his education. ████████████████████ ██████████████████████████ (¶¶ 143, 144, & 145) introduces First Amendment issues and an exploration of the limits of school authority over social media.  And finally, the allegations about the Chrysalis move will raise unrelated issues involving school board authority, budgets, and special education of students with behavioral issues.  None of this is relevant to the core issues. It may well confuse the public about the key issues, and it is likely to burden the defense with responding to extensive and irrelevant discovery requests.

## C.   Even if the Motion to Amend is granted, the individual Defendants would be entitled to qualified immunity.

"Qualified immunity protects federal and state officials from liability for discretionary functions, and from the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit. *Schaefer v. Las Cruces Public School Dist.,* 716 F. Supp. 1052, 1068 (D. N.M. 2010) (internal citations and punctuation omitted). In order to refute an assertion of qualified immunity, the Plaintiff must demonstrate "(i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity." *Id.* at 1070. If the law is to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 1071. And the Court must assess the objective legal reasonableness of the action at the time of the alleged

violation and ask whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right" in order to determine whether the defendants' actions violated a plaintiff's constitutional statutory rights. *Id.*

The individual Defendants are all entitled to qualified immunity. Although the laws against sexual harassment are clearly established, Plaintiff does not establish a single action by any individual defendant that could violate Plaintiff's rights. Plaintiff's proposed amendments include a variety of allegations about the individual defendants but none of those allegations support a plausible inference that they violated any of Plaintiff's clearly established constitutional rights. The new allegations do not contain facts that support individual liability. Although it is particularly important in Section 1983 cases "that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state," *Robbins*, 519 F.3d at 1249-1250, citing *Twombly*, 127 S.Ct. at 1970–71 n. 10, Plaintiff's allegations about the individual defendants are conclusory and general. As she cannot allege any affirmative acts attributable to any defendant, Plaintiff appears to rest her claims on the theory that the individual defendants knew of T.R.'s behavior from meetings, reports, or disciplinary referrals, but failed to act. *See, e.g.,* PFAC ¶¶ 28, 31, 32, 38, 40, 43, 46, 49, 52-56, 60, 125, 126, 127). As discussed herein, the allegations of the PFAC generally involve allegations that the individual defendants failed to take actions that were outside their authority or failed to take any action at all.  are that all of the individual defendants served on T.R.'s IEP team ███████████████████████

███████████████████████████████████████████████████

████████ (¶¶ 83 & 167). Very few of the allegations involve specific actions, and none of them involve constitutional or statutory rights.

Thus, the proposed new allegations against the individual defendants in the PFAC are futile as they would be dismissed on the basis of qualified immunity.

If Defendants seek qualified immunity, they will be entitled to a stay of litigation. *See, e.g. Herrera v. Santa Fe Public Schools,* No. 11-0422 JB/KBM, 2012 WL 6846393 (D. N.M. Dec. 20, 2012) (granting stay, despite fact there had already been considerable discovery).

**D.     CONCLUSION.**

Plaintiff's Motion for Leave to File First Amended Complaint [Doc. 102] should be denied. Even if the delays caused by the FERPA process established good cause to amend the original complaint, the proposed First Amended Complaint is futile and violates the applicable pleading rules.   Further, to the extent that Plaintiff's additional allegations state more precisely the actions each individual defendant is alleged to have taken, it is clear that they are entitled to qualified immunity and the dismissal of the claims against them.

Respectfully Submitted:

*German · Burnette & Associates, LLC*

 */s/ Elizabeth L. German*
Elizabeth L. German
Mary Keleher Castle
Cindy Cordova
*Attorney for Defendants*
11728 Linn Ave. NE
Albuquerque, NM 87123
(505) 292-9676
beth@germanassociates.com
mary@germanassociates.com
cindy@germanassociates.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 1st day of July, 2022, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

 */s/ Elizabeth L. German*
Elizabeth L. German