IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANE DOE,

    Plaintiff,

v.                                                            Case No. 1:20-cv-01041-SCY-JHR

TAOS MUNICIPAL SCHOOLS;
LILLIAN TORREZ, ROBERT TRUJILLO,
LISA ABEYTA-VALERIO, and
EMY DEHERRERA, in their individual capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Plaintiff Jane Doe alleges that when she was a fourteen-year-old freshman at Taos High School, a senior student, T.R., raped her. She further alleges that the school and its employees knew of and facilitated T.R.'s sexual violence based on their inaction in response to previous problematic conduct they knew he had engaged in with other students. She sued Defendants on October 8, 2020 for violations of 42 U.S.C. § 1983 as well as New Mexico tort law. Doc. 1. Based on information she acquired during discovery, she now seeks to amend her complaint for the first time to plead her Section 1983 substantive due process danger creation claim with more specificity, to add a Section 1983 equal protection claim, and to add detail to her state law claims. Doc. 102 at 1-2. Having reviewed the parties' submissions and the applicable law, the Court finds that Plaintiff's motion is well-taken and therefore GRANTS it with provisions for redaction as provided herein.[1]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 21, 22, 23.

## BACKGROUND[2]

In her original complaint, Plaintiff alleges that a male student at Taos High School, T.R., sexually assaulted a female student—Jane Doe 2, not a party to this lawsuit—on multiple occasions during the 2017-18 school year and on school premises. Doc. 1 ¶¶ 13, 17, 21, 28-30. Jane Doe 2 brought this information to the attention of the Dean of Students, and a criminal investigation into T.R.'s conduct ensued. *Id.* ¶¶ 13-14.

Plaintiff enrolled as a freshman the following semester, fall of 2018. *Id.* ¶ 46. She began a brief dating relationship with T.R., but the two "broke up" by early October. *Id.* ¶¶ 48-53. On October 9, 2018, following an after-school program, T.R. groped Plaintiff in the art room and then followed her and led her to a secluded library courtyard—the same place he had raped Jane Doe 2 the previous year—and raped her. *Id.* ¶¶ 56-73. The following day, Plaintiff confided in her friends about what had happened and, to avoid retaliation from T.R., requested that they not tell anyone. *Id.* ¶¶ 77. Eventually, a friend reported Plaintiff's disclosure to the school social worker, who alerted Plaintiff's parents and the school resource officer. *Id.* ¶ 84. A criminal investigation ensued into T.R.'s conduct. *Id.* During the investigation, Plaintiff informed the police that, the week prior to the rape, T.R. had also penetrated her digitally outside the school's vocational building after school hours. *Id.* ¶ 85.

Defendants did not impose any discipline on T.R. *Id.* ¶ 89. Despite knowing that T.R. had raped Jane Doe 2 in the secluded library courtyard the previous year, Defendants did not fix the gap in the security camera coverage to include this area. *Id.* ¶ 93. T.R. had also exhibited sexually inappropriate behavior toward one of his teachers, Ms. Olson, and female students in

---

[2] For the purposes of this motion, the Court takes as true Plaintiff's allegations in her operative complaint (Doc. 1).

her class; Ms. Olson reprimanded him and reported the behavior to Defendants DeHerrera and Abeyta-Valerio. *Id.* ¶¶ 106-12. No one followed up with Ms. Olson. *Id.* ¶ 113. Ms. Olson voiced these concerns to Defendant Abeyta-Valerio repeatedly, and Defendant Abeyta-Valerio did not address them and told her to focus on stricter classroom management. *Id.* ¶¶ 114-18. Other teachers made similar observations about problematic behavior by T.R. in their classrooms, and multiple faculty and staff members reported T.R.'s misconduct toward female students to the school's administration. *Id.* ¶¶ 124-25, 127. T.R. was supposed to have a chaperone on campus following his assault of Jane Doe 2, but after meeting with T.R.'s grandmother—a former TMS employee—Defendant Trujillo dismissed the chaperone and did not hire a replacement. *Id.* ¶ 126.

Plaintiff sued on October 8, 2020, and the parties commenced discovery in June 2021. Plaintiff now seeks to amend her complaint to add more detail (significantly more, as the initial complaint was 21 pages and the proposed first amended complaint is 65) to her existing counts, as well as to add an equal protection component to her Section 1983 claims. Doc. 102 (motion to amend); *see also* Doc. 104-1 (unredacted proposed amended complaint, currently filed under seal). Defendants oppose her proposed amendment as unnecessary, inflammatory, prejudicial, and futile. *See* Doc. 119 (redacted response); Doc. 120 (unredacted response); Doc. 135 (Plaintiff's reply).

## LEGAL STANDARD

A plaintiff may amend her complaint once as a matter of course, after which the plaintiff must seek consent from the opposing party or leave of the court. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.* The motivation underlying this rule is to "provide litigants the maximum opportunity for each claim to be decided on its merits rather

than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation omitted). However, a court may deny leave based on reasons such as undue delay, bad faith, undue prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). The district court's decision is discretionary. *See Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010) (court of appeals generally reviews "for abuse of discretion a district court's denial of leave to amend a complaint").

## ANALYSIS

Because Plaintiff filed her motion to amend after the deadline for amendments set in the scheduling order, Plaintiff may only amend her complaint if she demonstrates good cause for filing her motion after the deadline. Defendants argue that Plaintiff has failed to demonstrate good cause and that, even if she could demonstrate good cause, the Court should deny her motion based on futility. Defendants also argue that many of the new allegations in the amended complaint are inflammatory. The Court will address each argument in turn and then consider the parties' proposed redactions to the amended complaint.

**I.    Good Cause**

Magistrate Judge Jerry H. Ritter issued a scheduling order in this case on June 17, 2021. Doc. 32. This order set the deadline for Plaintiff to move to amend the pleadings by August 2, 2021. *Id.* at 2. Plaintiff did not file her motion to amend until June 10, 2022. Doc. 102. Federal Rule of Civil Procedure 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." Because Plaintiff filed her motion to amend well after the deadline contained in the scheduling order, to receive leave to amend, she must satisfy the good

4

cause requirement under Rule 16(b)(4) as well as the amendment requirements in Rule 15(a). *See* Doc. 32 at 2 n.4 (scheduling order, advising the same).

The standard for good cause in the Rule 16 context is whether "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (brackets in original, citation omitted). This determination is left to a district court's discretion. *Id.* Courts have found that good cause does not exist in circumstances of unexplained delay or access to "new" discovery information months before a motion to amend is brought. *See Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 990-91 (10th Cir. 2019); *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1020-21 (10th Cir. 2018).

Plaintiff argues that she has good cause to modify the scheduling order and amend the complaint past the deadline because the rest of the case management deadlines in the order have been extended based on stipulated findings of good cause. Doc. 102 at 6. She asserts that she lacked the information necessary to "'connect the dots' to formulate a specific and meaningful set of proposed amendments" until she gained access to T.R.'s school records, which she only acquired recently due to delays based on the Family Educational Rights and Privacy Act ("FERPA") necessitating an *in camera* review before portions of the records could be released for discovery. *Id.* at 7. Defendants respond that FERPA is not responsible for the delay, as the information she discovered through the FERPA records would not add new claims or defendants; "[h]ere, Plaintiff simply wants to add more detail and expound more theories." Doc. 120 at 6. Defendants also argue that some of the new material, particularly more details about the alleged assaults, was in Plaintiff's control and could have been asserted earlier. *Id.* Plaintiff replies that the fact that she is not bringing entirely new claims or adding new defendants limits the extent of

any prejudice the amendments might cause Defendants; therefore, consideration of the nature of the proposed amendments actually weighs in her favor. Doc. 135 at 1. She also argues that she was only fourteen when she filed her complaint and that through diligent effort and reflection she is now better able to articulate what happened to her. *Id.* at 3.

The Court agrees that Plaintiff establishes good cause for not moving to amend before the deadline in the scheduling order. As Plaintiff notes, Judge Ritter performed an *in camera* review of T.R.'s school records and permitted discovery of portions of those records on April 25, 2022. Doc. 88; *see also* Amended Order, Doc. 90 (April 26, 2022). The parties then held a settlement conference on April 28, 2022 and did not settle. Doc. 92. Defendant Taos Municipal Schools filed a certificate of service regarding the school records as of May 5, 2022. Doc. 93. The parties then moved to reset the scheduling order on May 11, 2022, and Judge Ritter granted this motion on May 12, 2022. Docs. 96, 97. Plaintiff served her unredacted proposed first amended complaint to Defendants on May 27, 2022 (Doc. 99) and filed her motion to amend on June 10, 2022 (Doc. 102). That is, just over a month elapsed between Plaintiff's receipt of the school records and her filing of her motion to amend. The record demonstrates Plaintiff did not have access to the school records before that point, and several pages of her amended complaint rely on the contents of those records in significant part. *See generally* Doc. 104-1 at 5-7 (describing operation of the high school program at issue), 9-20 (describing T.R.'s history of discipline for sexual harassment and other misbehavior known to the school).

Plaintiff concedes, however, that she did obtain additional information in discovery that she did not attempt to add to her complaint until she filed the present motion. Doc. 102 at 6-7. She explains, however, that it would be inefficient to continually move to amend her complaint whenever she learns new information as discovery "trickles in." The Court agrees that, as

6

discovery trickles in before the deadline to move to amend, it would be inefficient to file multiple motions to amend. Typically, however, if discovery necessitating an amendment has trickled in before the motion to amend deadline has expired, the plaintiff should file a motion to amend before expiration of that deadline, or at least move to extend that deadline.

Here, however, it appears that the parties exchanged most of their discovery after the motion to amend deadline had expired. Because the record does not indicate that Plaintiff received any discovery that made an immediate need to amend obvious, it was not unreasonable for Plaintiff to avoid successive motions to amend by allowing the discovery process to play out before moving to amend. Indeed, Plaintiff represents that it was the contents of T.R.'s school records that allowed Plaintiff to "connect the dots" and made the need to amend apparent. Doc. 102 at 7. Given the centrality of T.R.'s conduct to this litigation and the fact that most discovery appears to have been exchanged after the motion to amend deadline, the Court agrees with Plaintiff that it would have been difficult to amend her complaint with this information before the motion to amend deadline.

This rationale, however, does not apply to information Plaintiff had earlier; specifically, the details of her alleged assaults. Nonetheless, Plaintiff argues that even though she has been in possession of the details of the assaults since they occurred, as a minor represented by a guardian ad litem at the time of the initial complaint, she was not as able to articulate the nature of the assault as well as she could once she matured. Doc. 87. Plaintiff turned eighteen years old "recently" before the April 20, 2022 motion to substitute her for the guardian ad litem as plaintiff in this action. *Id.* at 2. The transfer of Plaintiff to adult status thus occurred near the same time Plaintiff received T.R.'s school records. It is not unreasonable to believe that Plaintiff's growth and increased insight in the roughly eighteen months since she filed her complaint allowed her to

more fully articulate her allegations. Similarly, it is not unreasonable to believe that, as an adult and in the absence of a guardian ad litem, she became more directly involved in her case and more able to assist her counsel. On the other side of the scale, because Plaintiff's proposed additions merely provide more detail about existing allegations rather than asserting entirely new ones, any unfair prejudice to Defendants from these additions is limited.

In sum, most of the information Plaintiff seeks to add to the complaint is information she learned after the motion to amend deadline expired. And, to the extent Plaintiff knew information such as the details of the alleged assault since the inception of her lawsuit, the addition of those details to the complaint does not cause Defendants great prejudice and can be explained by Plaintiff's maturing and becoming more active in her case upon reaching adult status and replacing the guardian ad litem. Good cause exists to permit this amendment under Rule 16(b)(4).

## II.     Futility

Defendants' arguments related to whether good cause exists, however, comprise only a small portion of their brief. The bulk of Defendants' brief is devoted to arguing that Plaintiff's proposed amendment would be futile and, therefore, the Court should not grant leave to amend. Doc. 120 at 8-22. Plaintiff takes no issue with litigating Defendants' argument that her proposed amended complaint fails to state a claim. She argues, however, that the better practice is to litigate that issue through full briefing rather than through arguments tacked on to briefing on a motion to amend. Doc. 102 at 21; Doc. 135 at 4 (citing *Cooper v. Colo. Dep't of Corr.*, No. 21-cv-02411, 2022 WL 2063229, at *6 (D. Colo. June 8, 2022)). In this case, the Court agrees with Plaintiff.

Under the Federal Rules of Civil Procedure, amendments should be freely granted. Fed. R. Civ. P. 15(a). A futility analysis follows the same standard as a motion to dismiss for failure to state a claim. *See Gohier v. Enright*, 186 F.3d at 1219. Here, Defendants never filed a motion to dismiss the original complaint. Thus, Defendants do not ask the Court to simply address whether an amendment was sufficient to save an already-analyzed claim. Instead, Defendants' arguments about futility are directed at Plaintiff's claims as a whole. Addressing the entirety of a complaint and whether it states a claim in the first instance is a more complex analysis than addressing the impact of amendments to an already-analyzed complaint.

This complex analysis is impaired by forcing a motion to dismiss into briefing chiefly designed to address a motion to amend. That is, Defendants raise the futility argument in their response to the motion to amend (Doc. 120 at 8-20), which only allows Plaintiff to respond in her reply brief. Such truncated discussion limits guidance the Court could otherwise obtain through more thorough briefing of the merits in a separate motion to dismiss. This is particularly true given Defendants' assertion of qualified immunity in their response brief. Doc. 120 at 22-23. Plaintiff bears the burden of establishing that qualified immunity does not apply. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Under a traditional Rule 12(b)6 briefing schedule, Plaintiff would be able to attempt to meet this burden in a response brief and Defendants would then be able to address Plaintiff's arguments in a reply brief. In contrast, the current briefing left Plaintiff only the few pages remaining in a twelve-page reply brief after addressing other issues unrelated to qualified immunity. And, because Plaintiff necessarily raised her arguments for the first time in reply, Defendants had no opportunity to respond to those arguments. "The Court would prefer to address the merit issues [Defendants] raise in their Response after the benefit of full briefing from both sides, rather than after the somewhat truncated arguments with respect to

9

futility." *Vigil v. Tweed*, Civ. No. 18-829, 2019 WL 4542777, at *4 (D.N.M. Sept. 19, 2019) (Yarbrough, J.). The Court thus finds it more prudent to permit amendment, after which Defendants may move to dismiss if they choose.

To be clear, however, the Court is not now holding that it is always a better procedure to allow an amended complaint and then consider whether the complaint states a claim in a subsequent motion to dismiss. Instead, the Court holds that in this specific case, given the complex futility analysis of each of Plaintiff's claims, allowing Plaintiff to file her amended complaint and then allowing the parties to fully brief any potential motion to dismiss will facilitate a better resolution of the issues.

### III. Length and Inflammatory Language

Defendants argue that the amended complaint is unnecessarily prolix. Doc. 120 at 20. At 65 pages, it is much longer than the 21-page original complaint, but this length does not confuse the issues. The amended complaint is organized with clear headings for different sections, and it moves through the facts chronologically in an understandable fashion. Complaints run afoul of Federal Rule of Civil Procedure 8's requirement of a "short and plain statement" of the case when, for example, they are unnecessarily long but still fail to state their claims intelligibly enough for the defendants to understand the claims brought against them. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). Moreover, "complaints do not need to be perfect, and a court should overlook flaws when it can and 'get on with the case.'" *Valencia v. Bd. of Regents , Univ. of New Mexico*, No. CV 1:17-00509 RB/SCY, 2018 WL 3935048, at *4 (D.N.M. Aug. 16, 2018) (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). Although the amended complaint in this case is long, it is clear about the claims and, therefore, it does not violate Rule 8.

Defendants also assert that the proposed amended complaint incorporates "inflammatory and impertinent" language regarding T.R, Doc. 120 at 20 (citing examples such as "predatory," "stalking," and "capture and subdue his female prey"), and contains insinuations, Doc. 120 at 21 (that "a former teacher's possible suicide might be linked to T.R.," that teachers have retired or resigned because of T.R., that Defendants had something to do with an unprofessional pretrial interview by T.R.'s Children's Court attorney, that cheerleading and wrestling are respectively "submissive" and "aggressive," and that some employees not party to the case are incompetent). Defendants argue that "Plaintiff's PFAC is [] futile because it violates . . . Rule 12(f), which . . . allow[s] the court to strike allegations that are immaterial, impertinent, or scandalous." Doc. 120 at 20.

Assuming, without deciding, that Plaintiff's proposed first amended complaint contains matter that is immaterial, impertinent, or scandalous, Defendants do not explain how the inclusion of this matter makes Plaintiff's claims futile. Even if the inclusion of the allegations about which Defendants complain does nothing to advance Plaintiff's claims, having no bearing on a claim is different than rendering a claim futile. It is not apparent how the inclusion of the allegations about which Defendants complain serves to render Plaintiff's claims futile; therefore, the Court rejects Defendants' argument that these allegations make Plaintiff's claims futile.

And, although Defendants argue that the inclusion of these allegations violates Rule 12(f), the Court does not equate Defendants' argument that the alleged Rule 12(f) violation renders Plaintiff's claims futile as equivalent to Defendants filing a motion to strike under Rule 12(f). Although the Court may act on its own to strike matter it finds to be redundant, immaterial, impertinent, or scandalous, at this time, the Court chooses to focus on the motions before it.

Once the amended complaint is filed, Defendants are free to file a Rule 12(f) motion to strike, if they choose.

### IV. Redactions

Because the Court grants Plaintiff's motion to amend, it will next address the parties' proposed redactions to the amended complaint. *See* Doc. 114-1 (Plaintiff's proposed reductions); Doc. 125-1 (Defendants' proposed redactions). The confidentiality order and its subsequent amendments designate as confidential, in relevant part, FERPA educational records, protected health information, proceedings from New Mexico Order of Protection cases, records of domestic relations and parentage, and juvenile delinquency records. Docs. 35, 59. This confidentiality order further permits, but does not require, redaction or sealing of confidential information. Doc. 35 at 6 ("The mere designation of information as confidential pursuant to this Order is insufficient to satisfy the court's requirements for filing under seal in light of the public's qualified right of access to court dockets.").

When analyzing a motion to seal, a court begins with a "strong presumption in favor of public access." *U.S. v. Bacon*, 950 F.3d 1286, 1293 (10th Cir. 2020). The party seeking to seal "bears the burden of showing some significant interest that outweighs the presumption." *U.S. v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (citation omitted). The court's decision is "necessarily fact-bound," to be made "in light of the relevant facts and circumstances of the particular case." *U.S. v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). Although courts have discretion in this matter, *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 599 (1978), the party seeking to seal bears a "heavy burden," *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1136 (10th Cir. 2011).

The parties agree that references to T.R.'s juvenile delinquency proceedings should be redacted from the amended complaint. Doc. 125-2 at 3-4. However, Defendants seek to redact a great deal more information, including large multiple-paragraph swaths of the amended complaint. *See, e.g.*, Doc. 125-1 at 9-26. Removing such significant portions of the complaint from view obscures Plaintiff's theory of the case from the public. Thus, allowing Defendants' proposed redactions would hamper public access to this case.

Defendants note that the information they seek to redact is information concerning minors gathered through confidential education records, health records, and from the Taos Police Department or DA's Office. Doc. 125-2 at 1-4. However, the individuals under discussion—the three former Taos High School students—are all proceeding by pseudonyms or by initials. Jane Doe, Jane Doe 2, and T.R.'s true names are not attached to the allegations involving them, and this provides some protection to their identities and private information, such as educational or juvenile delinquency records, attached to those identities.[3] Further, T.R. has now reached adult status and so concerns attendant to making public allegations about a minor are lessened. Therefore, the Court finds that only the parties' agreed-upon references to T.R.'s juvenile delinquency proceedings in paragraphs 123-25, 132-33, 136-37, 140-43, and 146 shall be redacted. The other proposed redactions must yield to the strong presumption in favor of public access to court proceedings.

---

[3] The Court, however, acknowledges that people within the Taos community will likely know the identity of those involved in this case, given other identifiers such as school and grade. Indeed, Taos News ran two stories regarding the rape charges against T.R., indicating that some of this information is already public. Doc. 114-3.

## CONCLUSION

For these reasons, the Court GRANTS Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 102). Within 10 days of the entry of this Order, Plaintiff shall file the First Amended Complaint on the docket. She shall file an unredacted version of the complaint under seal, as well as a redacted version, open to the public, which redacted references to T.R.'s juvenile delinquency proceedings in paragraphs 123-25, 132-33, 136-37, 140-43, and 146.

_____
UNITED STATES MAGISTRATE JUDGE