IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANE DOE,

      Plaintiff,

vs.                                  Case No. 1:20-cv-01041-SCY-JHR

TAOS MUNICIPAL SCHOOLS, et. al,

      Defendants.

**DEFENDANTS TAOS MUNICIPAL SCHOOLS, LILLIAN TORREZ, ROBERT TRUJILLO, LISA ABEYTA-VALERIO, AND EMY DEHERRERA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, NEGLIGENCE, AND OTHER TORTIOUS CONDUCT AND MOTION TO DISMISS BASED ON QUALIFIED IMMUNITY**

## I.    INTRODUCTION

Plaintiff filed her original *Complaint for Civil Rights Violations, Negligence, and Other Tortious Conduct* (hereafter, *Original Complaint*) (Doc. 1) on October 8, 2020. Plaintiff alleged that another student, T.R., sexually assaulted her after school on October 9, 2018, at Taos High School (THS). Plaintiff is suing the Taos Municipal Schools (TMS) as well as four Individual Defendants in their Individual Capacity: Lillian Torrez, then-Superintendent of TMS; Robert Trujillo, then-Principal of THS; Lisa Abeyta-Valerio, Assistant Principal of THS; and Emy DeHerrera then-head special education teacher at TMS. Plaintiff's Original Complaint claimed violation of her federal rights pursuant to 42 U.S.C. Section 1983 under a substantive due process, danger-creation theory and an inadequate screening, hiring, and training theory. Plaintiff also brought a claim under the New Mexico Tort Claims Act (NMTCA) (premises liability) pursuant to NMSA 1978, Section 41-4-6.

In June of 2022, Plaintiff filed her *Motion for Leave to File First Amended Complaint* (Doc. 102), which the Court granted on October 13, 2022. In the Court's *Memorandum Opinion and Order Granting Plaintiff's Motion for Leave to File First Amended Complaint* (Doc. 186), the

Court found it prudent to permit the amendment, "after which Defendants may move to dismiss if they choose," thereby ensuring sufficient pages for each party to submit their arguments on the dismissal of Plaintiff's claims. (*Id.* at 9-10)

In her *First Amended Complaint for Civil Rights Violations, Negligence and Other Tortious Conduct* (hereafter, FAC) (Doc. 201 (unredacted, sealed FAC) and Doc. 202 (redacted, unsealed)), Plaintiff brings the same claims as brought in her *Original Complaint* and she adds equal protection claims against all Defendants. She also adds many factual allegations and theories of liability under each of the above claims.

Plaintiff's allegations can be grouped, for the most part, into the following theories of liability: 1) Defendants did not have surveillance cameras in specific places at Taos High School (THS) and thus failed to protect Plaintiff (Doc. 202 at ¶¶ 14, 73, 97, 98, 156); 2) Prior to T.R. becoming a student at THS, Defendants merged the Chrysalis School into THS's campus, thereby creating a danger to Plaintiff three years later (*Id.* at ¶¶ 11-14); 3) Defendants invited T.R. to attend THS (*Id.* at ¶¶ 22, 48, 90); 4) Defendants allowed T.R. to roam the halls unsupervised, allowing him to gain knowledge of the layout of THS to use against Plaintiff (*Id.* at ¶ 41, 43, 48, 56, 62, 69, 73, 75, 95); 5) Defendants had knowledge that T.R. posed a danger to Plaintiff (*Id.* at ¶¶ 23, 24, 48, 51; 82, 90); 6) Defendants failed to give notice to Plaintiff of the danger posed by T.R. (*Id.* at ¶ 99); 7) Defendants failed to ███████████████████████████████████ ███████████████ (*Id.* at ¶ 80); 8) Defendants' disciplinary referral forms failed to include a checkbox for sexual harassment or sexual assault (*Id.* at ¶¶ 17, 45); 9) Defendant Abeyta-Valerio was related to T.R.'s family, and thus failed to act on allegations of misconduct by T.R. (*Id.* at ¶¶ 20, 27, 46); 10) all Individual Defendants were part of a governing clique based on social and family relationships, which  supported "biases and gender stereotypes" and which created a danger

to Plaintiff (*Id.* at ¶¶ 151, 152, 155); 11) Defendants failed to hire ███████████ teachers with sufficient training to address T.R.'s misconduct (*Id.* at ¶¶ 47, 89); 12) Defendants mishandled or ignored a prior report of sexual misconduct by a teacher and a coach (*Id.* at ¶¶ 167, 168, 171, 172); and 13) by allowing T.R. to participate on the wrestling team, Defendants created a danger toward Plaintiff (*Id.* at ¶¶ 34, 84, 111, 112, 157, 161). These groups of allegations, individually and as a whole, are addressed below. Thereafter, Defendants address the liability of TMS and the qualified immunity of each Defendant sued in their individual capacity. Finally, Defendants address Plaintiff's claim under the NMTCA.

## II.    LEGAL STANDARDS

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6). A "Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)). In evaluating a motion to dismiss under Rule 12(b)(6), the Court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Allegations which are "nothing more than a 'formulaic recitation of the elements'" are conclusory, not well-pleaded, and not entitled to be assumed true. *Id.* at 681 (quoting  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007)); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."). Dismissal is appropriate "'when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the

plaintiff.'" *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997) (quoting *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir. 1996)), *cert. denied*, 522 U.S. 812 (1997). It is particularly important in Section 1983 cases "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-1250 (10th Cir. 2008) (citing *Twombly*, 127 S.Ct. at 1970–71 n. 10).

Plaintiff brings her federal claims pursuant to 42 U.S.C. Section 1983. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 1990)). "Personal liability 'under § 1983," as alleged by Plaintiff, "'must be based on personal involvement in the alleged constitutional violation.'" *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997)).

In evaluating a motion to dismiss on the grounds of qualified immunity, the court "consider[s] whether [the plaintiff's] factual allegations and related inferences show the violation of a clearly established constitutional right." *Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016); *see also Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("This court uses the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally.").

> "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments....' " *City & Cty. of San Francisco v. Sheehan*, —— U.S. ——, 135 S.Ct.

1765, 1774, 191 L.Ed.2d 856 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 744, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

*Gutierrez*, 841 F.3d at 899-900. "'[E]xisting precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 551 (2017) (*per curiam*) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 308 (2015) (*per curiam*)).

> "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* at 900 (quotations omitted). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

*T.D.*, 868 F.3d at 1220. "[T]o show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (quotations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)).

Qualified immunity is the immunity from suit, and discovery should not be permitted when the defense of qualified immunity is raised. *Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S.Ct. 808, 815 (2009). Thus, questions of immunity should be resolved "at the earliest possible stage in litigation." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (*per curiam*)).

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery." *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (KENNEDY, J., concurring in judgment). There are serious and legitimate reasons for this. If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed

5

decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Iqbal*, 556 U.S. at 685, 129 S. Ct. at 1953; *see also Herrera v. Santa Fe Pub. Schs.,* No. 11-0422 JB/KBM, 2012 WL 6846393, * 7 (D. N.M. Dec. 20, 2012) (granting stay of case when defense of qualified immunity was raised, despite fact there had already been considerable discovery).

In this case, the discovery burdens attendant to allowing the thirteen theories of liability in Plaintiff's FAC will be substantial.[1] For the reasons discussed below, these theories do not establish liability for either of Plaintiff's constitutional claims and they lack any basis in clearly established law. Thus, dismissing the conclusory and irrelevant theories rather than subjecting Defendants to discovery on them is necessary, per *Iqbal* and its progeny, to ensure Defendants spend no additional time on discovery that is irrelevant to this case, and to ensure they can focus on their governmental duties as school administrators.

## III. DISCUSSION

### A. *Plaintiff Fails to State a Claim Against Any Defendant for Violation of her Federal Civil Rights*

#### 1. Standard for Pleading Substantive Due Process, Danger-Creation Claims

The general rule is that "a state does not have a constitutional duty to protect its citizens from private violence." *Sutton v. State School for Deaf and Blind,* 173 F.3d 1226, 1237 (10th Cir. 1999) (citing *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196-97, 109

---

[1] The Individual Defendants (and other TMS personnel) have already expended significant resources on the discovery that has been conducted to date: Defendants have produced 926 pages of initial disclosures, 4105 pages of documents in response to requests for production of documents, and Defendants have answered 25 interrogatories. Plaintiff has deposed 15 individuals. The discovery conducted in this case does not entirely encompass the new theories in the FAC, and the expanded scope of discovery will require additional disclosures, discovery, and expanding the scope of expert reviews and reports.

S.Ct. 998, 1003-04 (1989)); *accord Robbins,* 519 F.3d at 1250. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197, 109 S.Ct. at 1004. The only exceptions are when the State has a special or custodial relationship with the victim, where the State had an affirmative duty to protect the individual, or when the State creates the danger that harms the victim. *Clark v. Las Cruces Pub. Sch. Dist.,* No. 10-CV-307 WJ/GBM, 2010 WL 11619298 (D.N.M. July 1, 2010). Plaintiff relies on the danger-creation theory. (Doc. 202, pp. 22-23)

A substantive due process violation employing the danger-creation theory requires satisfaction of the following six elements:

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Ruiz v. McDonnell,* 299 F.3d 1173, 1182-83 (10th Cir. 2002); s*ee also Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (applying test in context of criminally insane killer in general population of mental hospital). Satisfaction of this test necessarily involves a showing of affirmative conduct "placing the plaintiff in danger." *Ruiz,* 299 F.3d at 1183. Plaintiff must allege facts to show that the Defendants' conduct was directed at Plaintiff, "rather than at the public at large." *See Ruiz,* 299 F.3d at 1183 (citing standard); *accord Armijo v. Wagon Mound Pub. Sch.,* 159 F.3d 1253, 1263 (10th Cir. 1998) (individual defendant took action that created the danger or increased her vulnerability to the danger to the individual student).

Plaintiff cannot establish "danger creation" without, for example, allegations of affirmative conduct involving "an immediate threat of harm, which by its nature has a limited range and duration." *Ruiz,* 299 F.3d at 1183 (quoting *Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d

729, 733 n. 4 (8th Cir. 1993)). Plaintiff must allege facts to show decisions that are not merely negligent, but "deliberately wrongful" and "shock the conscience." *Uhlrig,* 64 F.3d at 573 (determining that the transfer of a criminally insane killer to the general population of mental hospital, where he then murdered his therapist, did not shock the conscience). Speculation (including baseless characterizations) and conclusory allegations are insufficient. *Iqbal*, 556 U.S. at 680-81, 129 S. Ct. at 1951 (rejecting plaintiff's allegations that the Attorney General and Director of the FBI "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin" as conclusory).

### 2.  Standard for Pleading Equal Protection Claims

An equal protection claim against the school district requires Plaintiff to show that an individual's actions are "representative of an official policy or custom … or are taken by an official with final policy making authority." *Murrell v. Sch. Dist. No. 1, Denver, Colorado*, 186 F.3d 1238, 1249-1252 (10th Cir. 1999).  The municipal policy must either be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers" or the discriminatory practice must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 1249 (internal punctuation and citations omitted).

Although an individual defendant may be liable under section 1983 "upon a showing of deliberate indifference to known sexual harassment," *Murrell,* 186 F.3d at 1250, Plaintiff must show a "deliberate" deprivation of constitutional rights, not mere negligence; that is, there must be allegations of facts that the Defendants actually knew of and acquiesced in T.R.'s behavior. *Murrell,* 186 F.3d at 1250; *Accord Clark,* 2010 WL 1169298 at *6.

An equal protection claim requires Plaintiff to allege that she was treated differently from similarly situated individuals. *Id.* Speculation that there was some sort of gender difference based on preferred sports (*see* Doc. 202 at ¶¶ 165, 166) is not enough.

Plaintiff's equal protection claim appears to confuse the standards under Title IX and equal protection, by allegations regarding, for example, training for students and supportive services (*See id.*, ¶¶ 17, 45, 63, 76, 89), rather than whether Plaintiff can establish an equal protection claim. An equal protection claim requires a showing that the plaintiff is a "member of a class of individuals that is being treated differently from similarly situated individuals that are not in that class," *Schaefer v. Las Cruces Pub. Schs.,* 716 F.Supp. 2d 1052, 1066 (D.N.M. 2010), not whether Plaintiff was "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity." 20 U.S.C. § 1681. Plaintiff's references to the lack of supportive services, for example, appear to be based on the 2020 amendments to the regulations implementing Title IX, which mandate that the complainant be offered supportive measures. *Id. See* 34 C.F.R.§ 106.30 (defining "supportive measures"); 34 C.F.R. § 106.44 (Recipient's response to sexual harassment). Such provisions are inapplicable to Plaintiffs' claims.

### 3.  Plaintiff fails to Plausibly Plead Either a Substantive Due Process or an Equal Protection Claim against Any Defendant

For both her substantive due process, danger-creation claim and her equal protection claim, Plaintiff must show that the Defendants knew of the danger/sexual harassment, and that they were deliberately indifferent to such conduct. Plaintiff has failed to plausibly plead these elements of her constitutional claims. Plaintiff's rhetoric alluding to wrongful conduct, such as "reckless," "wanton," "obdurate," and "conscience-shocking" (*see e.g.,* FAC, Doc. 202, ¶¶ 183, 187, 199, 205, 211) is conclusory. Plaintiff does not allege facts to show that, for example, any Defendant disregarded or was completely indifferent to a known and obvious risk that was so great

that it was "highly probable that serious harm would follow and that he or she proceeded in conscious and unreasonable disregard of the consequences," as required to show reckless conduct. *Sutton,* 173 F.3d at 1238 (internal citations and punctuation omitted). Plaintiff does not allege any facts to "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig,* 64 F.3d at 574.  Stripped of its conclusory and inflammatory language, the FAC does not allege the exceptional circumstances required to apply the danger-creation standard to the substantive due process claims. *See Ruiz,* 299 F.3d at 1184. And Plaintiff's proposed equal protection claim against the district is futile because she alleges no facts to show that TMS had an official policy or a custom of ignoring sexual harassment.

A review of Plaintiff's theories of liability shows how each fails to plausibly plead liability for her substantive due process or equal protection claims as against TMS and all Individual Defendants.

**Surveillance cameras.** Plaintiff relies on a lack of surveillance cameras in the location she was assaulted, as well as a lack of constant monitoring of the cameras, particularly after school, to establish that Defendants were deliberately indifferent to her. However, this theory fails for the reason set forth in *Saenz v. Lovington Mun. Sch. Dist.*, 105 F.Supp. 3d 1271, 1279, 1312 (D.N.M. 2015), where the plaintiff alleged the lack of adult supervision of a school's parking lot could have prevented the death of a student who was "horsing around" and died after being thrown from a vehicle. The Court determined that the "[f]ailure to supervise, however, is inaction, and not an affirmative action. Inaction is insufficient to establish a danger-creation claim." *Id.* (citing *Estate of B.I.C. v. Gillen*, 702 F.3d 1182, 1187 (10th Cir. 2012) (withdrawn and superseded on rehearing in part by 710 F.3d 1168) ("Our precedents consistently conclude that mere negligence or inaction is not enough.")); *see also Schaefer*, 716 F.Supp. 2d at 1075 (concluding that the conduct of not

10

having more consistent adult supervision of the common areas did not shock the conscience despite prior instances of students injuring each other).

**Merger of Chrysalis School.** Plaintiff alleges that the merger of the Chrysalis School into the THS campus a year before T.R. was a TMS student created a danger to Plaintiff more than three years after the merger. Plaintiff does not allege that there was a known sexual assault by a student attending the Chrysalis School of any student prior to the merger. There is no connection between this decision and Plaintiff's injury; there are no allegations demonstrating that, when the merger occurred, those who made the decision to merge the schools were deliberately indifferent to any known danger to Plaintiff or others. Moreover, regardless of the reason for the merger, be it for financial or administrative purposes, such a reason would be reasonable, and does not shock the conscience. *See Uhlrig*, 64 F.3d at 573 (concluding that the transfer of criminally insane killer into general population was not conscience-shocking). Nor does Plaintiff allege that any of the Individual Defendants had the authority to decide not to merge the Chrysalis School with the THS campus.

**The invitee theory.** Plaintiff alleges that each Defendant invited T.R. to be a student at THS, and invited him to be on the wrestling team, thereby creating a danger to Plaintiff. Regardless of any knowledge of T.R.'s conduct at his prior school, such knowledge could not release them from their statutory obligation to provide him with an education. *See* NMSA 1978, § 22-1-4(A) ("a free public school education shall be available to any school-age person who is a resident of this state and has not received a high school diploma or its equivalent," with limited exceptions allowed by statute). Nor would it allow them to prevent him from participating in wrestling. *See* 20 U.S.C. § 1412(5)(A) (requiring, "to the maximum extent appropriate," that children with disabilities "are educated with children who are not disabled," and disfavoring "separate schooling,

or other removal of children with disabilities from the regular educational environment"). Nor, as discussed below, did T.R.'s participation in wrestling create a danger to Plaintiff or establish the deliberate indifference to her.

**T.R. gained knowledge of the school by roaming the halls unsupervised.** T.R. was a student at THS for an entire year before Doe 2 was a student there, and two years before Plaintiff was a student. Whether he was supervised ████████ or not, and whether in passing periods or while he was cutting class, T.R. would have had the opportunity to learn the layout of the school and, if he was so inclined, notice the location of surveillance cameras. Thus, nothing Defendants could have done would have reduced this unknown risk to Plaintiff.

**Defendants had knowledge that T.R. posed a risk to Plaintiff.** When stripped of the many baseless theories of "knowledge" that T.R. was a risk (such as that he learned moves during wrestling to use on Plaintiff and that he learned the layout of the school while cutting class), this theory comes down to allegations that Defendants knew that ████████████████████ ████████████. Defendants also knew that ██████████████████████████ ███████████████████████████████████.[2] Under these circumstances, and considering the legal obligation to provide T.R. with an education in the least restrictive environment, 20 U.S.C. § 1412(5)(A), Defendants did not act with deliberate indifference to Plaintiff. Moreover, it was not foreseeable that T.R. would come onto campus after school and assault Plaintiff,[3] and thus they did not know of a substantial risk to Plaintiff.

_____

[2] ████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████

[3] Plaintiff does not allege that T.R. had any after school activities that would put him on the THS campus after school hours in October of 2018 – nor did he. Given that Plaintiff has conducted

Accordingly, this theory does not establish that Defendants' conduct was deliberately indifferent to Plaintiff or that their conduct shocks the conscience. *See Clark,* 2010 WL 11619298, *6 (knowledge that perpetrator, another student at the school, had committed violent act in the past did not create a known and obvious danger that was ignored); *Graham v. Ind't Sch. Dist. No. I-89,* 22 F.3d 991, 995 (10th Cir. 1994) (specific knowledge that a student had threatened plaintiffs' sons was on school grounds did not amount to a constitutional violation where plaintiffs could not point to any affirmative act that created or increased the danger to the victims); *Dorothy J.*, 7 F.3d at 733-34 (rejecting danger creation theory premised on school district's knowledge of student's history of violence and sexual assault).

**Failure to give notice to Plaintiff.** Plaintiff alleges that Defendants had a duty to notify her that T.R. was a danger. This theory fails because 1) ████████████████████████████ ██████, and it would be problematic for THS to notify all female students that there were ████████ ████████████████████; and 2) Defendants could not share the contents of T.R.'s education records – including allegations against him – with third parties due to the requirements of FERPA. *See* 20 U.S.C § 1232g(b)(1) (disallowing federal funds to schools that permit the release of education records outside of enumerated circumstances, none of which would allow the release of such information to Plaintiff in this case).

████████████████████. Although Plaintiff alleges that a TMS employee told Doe 2 that the school could not ████████████████, this alleged statement does not establish that Defendants were deliberately indifferent to a known danger to Plaintiff. For one, it ignores that ███████████████████████████████████████████████████████████

---

significant discovery on T.R. being on the wrestling team, during which years he was on the team, and when and where wrestling practices and meets occurred, Plaintiff cannot in good faith make such an allegation. *See* Fed. R. Civ. P. 11(b)(3).

████████████████████████████████████████████████████
███████████████████████████████, that would not have reduced any risk to

Plaintiff of T.R. coming onto campus after school and assaulting Plaintiff.

**Disciplinary referral forms.** Plaintiff theorizes that Defendants were deliberately indifferent to a substantial risk T.R. posed to her because their disciplinary referral forms had no checkbox or method of categorizing behavior as sexual harassment or sexual violence. The connection between the forms and alleged indifference is tenuous, particularly when, as Plaintiff alleges, Defendants ████████████████████████. Nor is it clear that, had Defendants changed the form, T.R. would not have come onto campus after school hours and assaulted Plaintiff.

**Abeyta-Valerio's relationship to T.R.'s family.** Given the legal limits of Abeyta-Valerio's authority, including that she could not unilaterally change T.R.'s placement, could not she expel him, and could not take action to prevent T.R. from being on campus after school or require him to have an escort after school, Plaintiff failed to show how any such alleged relationship put her at substantial risk. Further, Abeyta-Valerio did not have the authority to make budgetary decisions,[4] and thus could not redirect funding from cheerleading or other sports toward cameras and security. Accordingly, Plaintiff fails to identify how she was endangered by the alleged relationship between Abeyta-Valerio and T.R.'s family.

**The governing clique with biases and gender stereotypes.** Plaintiff makes conclusory allegations based on the nature of school sports, which have historically been gendered. The fact that cheerleaders are on the "sidelines" during the times when a sports team is on the field or court

---

[4] In New Mexico, the school board is responsible for establishing policies and approving budgets. NMSA 1978, § 22-5-4(A).

does not allow a reasonable inference that a cheerleading coach is biased against women. Further, the fact that some of the administrators grew up in Taos and played on various sports does not mean they have long-standing social relationships or are in a governing clique. Finally, again, there is no connection between this theory and T.R.'s alleged assault of Plaintiff after school, and no showing of how there was a known substantial risk to Plaintiff that the Defendants ignored.

**Defendants failed to hire sufficiently trained ██████████ teachers.** Plaintiff was assaulted after school, i.e., when teachers are not required to be on campus. Plaintiff was not in any of ██████████. There is no connection between this allegation and the alleged assault on Plaintiff, after school and outside of the ██████████ setting.

**Defendants mishandled or ignored complaints of sexual misconduct by a teacher and coach.** First, Plaintiff's allegations that Defendants "refused to properly investigate or discipline teachers and coaching staff" (*Id.* at ¶¶ 167-169) for inappropriate behavior are conclusory and not plausible. To the extent Plaintiff adds context to these allegations (*Id.* at ¶¶ 171-172), Plaintiff's own allegations reveal that the ██████████████████████████ ██████████████████████. (*Id.* at ¶ 171) Plaintiff's allegations "upon information and belief" that Defendants did not take any action or investigate this matter are not supported by the other allegations in her FAC and, thus, are not plausible. Second, again, there is no connection between the alleged inappropriate behavior of this (or any) teacher and a potential danger to Plaintiff from another student after school. This allegation fails to identify that any of the Defendants knew of a substantial risk to Plaintiff and were deliberately indifferent to that risk. Nor do Plaintiff's allegations support a theory that Defendants had a policy of mishandling complaints of sexual harassment or that such a policy violated Plaintiff's constitutional rights.

**Defendants allowed T.R. to participate on the wrestling team.**  The wrestling theory

fails for several reasons. First, there is no plausible connection between being a wrestler and being a sexual aggressor. Nor does the sport of wrestling teach a student how to sexually assault another person. Nor does Plaintiff allege that T.R. was on the wrestling team at the time she was assaulted or on the school campus after school at the time of the alleged assault for any wrestling-related purpose. In sum, there is no way that the fact that T.R. was on the wrestling team both created a substantial risk to Plaintiff and made such a risk known to Defendants.

Each of the above theories, alone and considered as a whole, fail as a means of pleading that any Defendant was aware of a substantial risk to Plaintiff or that any Defendant was deliberately indifferent to that risk. Defendants did not have a duty to install cameras at all locations in the school, nor to continuously monitor such camera feeds, particularly after school. Defendants, by allowing T.R. to attend school and by not warning students ███████████ ████████, followed state and federal law. They engaged in legitimate educational and administrative conduct, including coaching cheerleading, merging the Chrysalis School with the THS campus, and allowing T.R. to wrestle during a prior school year. None of this innocuous conduct put Plaintiff at a substantial risk. Nor is there any causal connection between Defendants' alleged failures to T.R.'s assault on Plaintiff after school. Accordingly, as none of Plaintiff's bases for liability here establish the elements of either her substantive due process, danger-creation claim or her equal protection claim, these claims must be dismissed.

**B. Plaintiff fails to Plausibly Plead that Defendant TMS had any Unconstitutional Policy, Custom or Practice or that such Policy Caused her Injury**

A plaintiff stating "a claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258, 129 S. Ct. 788, 797 (2009) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694, 98

S.Ct. 2018 (1978)). A plaintiff may not rely on the theory of *respondeat superior*; "a municipality

may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs*

*of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997). A plaintiff must:

> demonstrate that, through its *deliberate* conduct, the municipality was the "moving
> force" behind the injury alleged. That is, a plaintiff must show that the municipal
> action was taken with the requisite degree of culpability and must demonstrate a
> direct causal link between the municipal action and the deprivation of federal rights.

*Id.*, 520 U.S. at 404, 117 S. Ct. at 1388.

> A school district's liability for sexual harassment under the Equal Protection clause
> is analyzed under a municipal liability framework. *See, e.g., Murrell,* 186 F.3d at
> 1249–50. A claim of municipal liability for sexual harassment requires that the state
> employee's discriminatory conduct be representative of an official policy or custom
> of the institution, *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S.
> 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), or are taken by an official with
> final policymaking authority, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 484–
> 85, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion). In the absence of an
> official policy, a municipality may still be liable for the widespread and persistent
> practice of sexual harassment which constitutes a custom. *Starrett,* 876 F.2d at 820.

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124–25 (10th Cir. 2008).

To show liability based on a widespread and persistent practice of sexual harassment, "a plaintiff

must prove (1) a continuing, widespread, and persistent pattern of misconduct by the [defendant];

(2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after

notice of the conduct; and (3) a resulting injury to the plaintiff." *Id.* at 1125.

Plaintiff has not plausibly pleaded that TMS either had a policy, practice, or custom of

allowing sexual harassment nor that such a policy or practice was the moving force, or cause, of

her injury. First, she does not plausibly allege that TMS had an express, official policy of refusing

to investigate claims of sexual harassment. (*See id.* at ¶ 153) Second, her allegations with regard

to a continuing, widespread, and persistent pattern of sexual harassment are insufficient to state a

claim. Plaintiff alleges misconduct by T.R., and, as relevant to Plaintiff's sexual harassment claim,

she alleges that ████████████████████████████████████████████████

████████████████████████████████████████████████. However, with

regard to the first element of establishing a widespread practice of sexual harassment as set forth

in *Rost*, Plaintiff's allegations involve the behavior of one student, T.R., rather than widespread

harassment. With regard to the second element, Plaintiff has not pleaded that TMS tacitly

authorized T.R's conduct. Based on the ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ Thus, Plaintiff has not plausibly alleged that TMS was deliberately

indifferent to T.R.'s conduct or that TMS tacitly authorized his conduct. *See Clark*, 2010 WL

11619298 at *7 (dismissing Equal Protection claim against school district where the facts alleged

by the plaintiff "suggest that the school district took immediate action to inform [the student's]

parents, identify the perpetrator and take steps to safeguard [the student] from further assaults").

As to the third element stated in *Rost*, allegations that T.R. assaulted Plaintiff after school and

outside of any class do not establish that TMS's policy or practice caused her injury. This is true

even if the Court expands the view of the alleged sexual harassment and misconduct to include

---

[5] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████.

alleged misconduct by teachers and coaches, as there is no connection between such reports and the danger or injury to Plaintiff.

Plaintiff has not pleaded that Defendants had an official practice that created a danger to her, or that a policy or practice was the moving force behind her injury. *See Brown*, 520 U.S. at 403, 117 S. Ct. at 1388. And she has not pleaded five of the six elements of her danger-creation claim, i.e, that, through a policy or practice TMS: 1) created or increased the danger to her; 2) put her at a substantial risk of serious, immediate, and proximate harm; 3) such risk was obvious and known to TMS; 4) TMS acted recklessly in conscious disregard of such risk; or 5) that TMS's conduct shocks the conscience. *See Ruiz,* 299 F.3d at 1182-83; *see also Clark*, 2010 WL 11619298 at*6 (dismissing student's substantive due process danger creation claim where plaintiff failed to allege facts showing that the defendants knew the perpetrator of the assault was a danger to the student despite prior violent behavior, that the danger was known or obvious, or that the defendants' conduct shocked the conscience).

### C.  The Individual Defendants are Entitled to Qualified Immunity

Given the failures addressed above, it is clear that Plaintiff has failed to state a claim against any of the Individual Defendants. Those failures alone are sufficient to establish the qualified immunity of each Individual Defendant. Nonetheless, Defendants address the allegations against each Individual Defendant in turn to show how Plaintiff fails to plausibly plead that any Individual Defendant violated Plaintiff's rights.

### 1.  <u>Emy DeHerrera is Entitled to Qualified Immunity</u>

Plaintiff alleges that Emy DeHerrera was an educator who "acted as a department head and supervisor over certain classroom teachers at Taos High School." (*Id.* at ¶ 6) Plaintiff alleges that

DeHerrera (along with all of the other Individual Defendants)[6] decided to merge the students in

the Chrysalis Alternative Program into the THS main building.[7] (*Id.* at ¶ 12) Plaintiff alleges that

DeHerrera was at meetings at which T.R.'s ███████████████████████████████████

████████████████████████ (*Id.* at ¶¶ 25, 60) ████████████████████████████████



████████████████████.[9]

These allegations fall far short of what is necessary to plead either a substantive due process

danger-creation claim or an Equal Protection claim. First, the allegations do not show that

---

[6] Plaintiff frequently makes allegations against an Individual Defendant (or the Defendants as a group) without recognizing that one or more of the Individual Defendants do not have the authority to do what is alleged, such as to set district or school policy or to establish and approve of the school's budget. (*See, e.g., id.* at ¶¶ 151-172, 201-216),[6] NMSA (1978) § 22-5-4(A), (C). Superintendents and teachers simply do not have this authority.

[7] Because the Chrysalis School theory is addressed above, it is not further addressed regarding the Individual Defendants.

[8]
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

[9] To the extent Plaintiff makes other allegations against DeHerrera, she is "grouped" in a conclusory manner with the remaining Defendants or the allegations are regarding events after Plaintiff's alleged assault.

DeHerrera was deliberately indifferent to known sexual harassment. "Although conduct by a state actor is required in order to support a claim under section 1983 and the primary conduct in this case is that of a student, we have found the possibility of state action where 'a supervisor or employer participates in or consciously acquiesces in sexual harassment by an outside third party or by co-workers.'" *Murrell*, 186 F.3d at 1250 (quoting *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994)). *Murrell* addressed circumstances where, in addition to other reprehensible conduct, government officials allowed a student to have a key to the janitor's closet, then found him in the closet sexually assaulting a significantly physically and developmentally disabled girl, the officials hid this information from the child's parent and did not report it to law enforcement, they continued to allow the offending student access to the janitor's closet, and the offending student then again assaulted the disabled student at least two more times. *Id.* at 1243-44. By contrast, here the only relevant allegations by Plaintiff against DeHerrera are that DeHerrera was present at ██████████ ████████████ over a year before T.R.'s assault of Plaintiff at which T.R.'s non-specified ██████████████████████████████████████████████████████████████████ ██████████████ Plaintiff ██████████████████████. Moreover, no case clearly establishes that this conduct is sufficient to plead a constitutional violation. Nor did this information put DeHerrera on notice that T.R. would sexually assault another student over a year later and ██████████████████████████████. Plaintiff's burden is to plead facts establishing deliberate indifference; mere negligence is insufficient to establish culpability under Section 1983.

Nor does Plaintiff allege that DeHerrera had the authority in her position to take action that would protect Plaintiff. She could not unilaterally deny T.R. of his right to an education[10] and, moreover, she could not make any rules regarding T.R. being present on THS campus after school, which is when T.R. assaulted Plaintiff. Nor could she make policy or budgeting decisions which must be made by the school board. NMSA 1978, § 22-5-4(A).

Likewise, these allegations are insufficient to establish five of the elements of her danger-creation theory, specifically that DeHerrera created a danger to Plaintiff, that DeHerrera put Plaintiff at "substantial risk of serious, immediate, and proximate harm," that the risk was obvious and known to DeHerrera, that DeHerrera acted recklessly with regard to that risk, and that DeHerrera's conduct shocks the conscience. *Ruiz,* 299 F.3d at 1182-83. Plaintiff does not allege that at the meetings in 2017[11] at which DeHerrera was present, information was shared that would put DeHerrera (or any of the Defendants present) on notice that T.R.'s presence at THS was a substantial risk of serious, immediate, and proximate harm to Plaintiff. Mere negligence is insufficient, and Plaintiff has not established that DeHerrera was in a position to take action against T.R. to prevent him from being on THS campus after school hours. Accordingly, DeHerrera is entitled to qualified immunity and all federal claims against her should be dismissed with prejudice.

### 2.  Lillian Torrez is entitled to Qualified Immunity

---

[10] "New Mexico's constitution gives each child the right to a free public education." *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1270 (10th Cir. 2007) (citing N.M. Const. art. XII, § 1; NMSA 1978 § 22-1-4.3).

[11] Paragraphs 24 and 25 address ███████████████████████████████████. Paragraph 60 addresses meetings at which █████████████ teacher Duke was present; Duke resigned in the 2017-18 school year (*Id.* at ¶ 88).

Lillian Torrez was the Superintendent of TMS at times material to the FAC. Plaintiff alleges that Abeyta-Valerio sent an email to Torrez and the other Individual Defendants in May of 2019, after T.R. allegedly assaulted Plaintiff, notifying them that ███████████ ██████████, that Torrez replied that "The Board is aware!" and that Trujillo replied with a thank you.[12] (*Id.* at ¶ 144) Plaintiff alleges that Torrez "inserted a deliberate and intentional disconnect or procedural void" between Defendant TMS's sexual harassment policies and the day-to-day practice of addressing sexual harassment. (*Id.* at ¶ 153) Without alleging that Torrez was aware of any alleged bias of Abeyta-Valerio, Plaintiff alleges that Torrez "consistently made official policy decisions to delegate responsibility for processing those reports to the biased and conflicted Defendant Abeyta-Valerio." (*Id.* at ¶ 154). Plaintiff alleges that Torrez was not present at discussions about T.R., and her absence was not because she had duties as a Superintendent, but a "deliberate omission evincing her decision to neither assume nor assign such responsibility to a single officer or district employee positioned to prevent or remedy those constitutional violations." (*Id.* at ¶ 163) Plaintiff alleges that Torrez "received and mishandled reports of sexual misconduct and harassment by teachers and coaching staff at Taos High School" (*Id.* at ¶ 167-68), however this allegation lacks any connection to a potential danger to Plaintiff from another student after school hours.

Plaintiff does not allege that Torrez was ever made aware of T.R.'s conduct prior to the time he assaulted her, nor that anyone complained to her that Abeyta-Valerio was somehow biased or insufficiently addressing T.R.'s conduct, nor that she had any knowledge that T.R. presented a

---

[12] Given that this allegation occurred well after T.R. allegedly assaulted Plaintiff, it is not relevant to whether Defendants knew of the risk to Plaintiff. Thus, Defendants do not repeat the allegation within the sections of this motion addressing the qualified immunity of the other Individual Defendants.

threat to Plaintiff, much less that she was deliberately indifferent to such a threat. Plaintiff fails to plead that Torrez was personally aware of or involved in any specific decisions made regarding T.R. that led to T.R. assaulting her. As in *Iqbal* and *Robbins*, Plaintiff does not plead facts which establish that Torrez had personal involvement in any alleged wrongful conduct or failure to prevent T.R. from assaulting Plaintiff. *See Iqbal*, 556 U.S. at 680-81 (concluding that claims that the director of the FBI and the attorney general knew of, condoned, and agreed to subject the plaintiff to harsh conditions of confinement were not sufficient to state a claim for individual liability pursuant to Section 1983); *Robbins*, 519 F.3d at 1250 (dismissing claims based on a danger-creation theory whether the complaint failed to provide notice of what each defendant did, and instead pleaded that the defendants collectively took alleged actions); *see also Brown*, 662 F.3d at 1165 ("The Complaint refers to actions of Defendants, but that is not sufficient to show how [the] Secretary [of Corrections] might be individually liable for deprivations of [the Plaintiff's] constitutional rights." (Internal quotation marks and citations omitted)). Thus, Torrez is entitled to qualified immunity and all federal claims against her should be dismissed with prejudice.

### 3.  Robert V. Trujillo is Entitled to Qualified Immunity

Robert V. Trujillo was the Principal of THS during the times material to the Complaint. (*Id.* at ¶ 4) Plaintiff alleges that he failed to install additional security cameras or to assign additional security personnel to conduct surveillance of students after the Chrysalis School was moved to the THS campus. (*Id.* at ¶ 14) She alleges that he failed to staff the Chrysalis School with properly trained and supervised ██████████ teachers and she identifies two individuals that Trujillo hired as teachers whom she alleges did not have sufficient licensing and training. (*Id.* at ¶¶ 15-16) She alleges that he was at meetings at which T.R.'s non-specified ████████

24

████████████████████████████. (*Id.* at ¶¶ 25, 49, 60, 91) Plaintiff alleges that four complaints about T.R.'s ██████ were made to Trujillo. (*Id.* at ¶¶ 37, 40, 41) She alleges that teachers complained to Trujillo about T.R. ███████████████████████. (*Id.* at ¶ 43) Without explaining how, she implies that Trujillo had a family or social relationship with T.R. and his grandparents. (*Id.* at ¶ 46) She alleges that a teacher ████████████████████ ████████████████████████████████████████ ██████████████████████, but she does not allege that she was in any of the classes to which T.R. was returned. (*Id.* at ¶ 59) She alleges that Trujillo was at █████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███ █████

Plaintiff also makes conclusory allegations against Trujillo, including that he "continually minimized T.R.'s behavior at the expense of other students' safety." (*Id.* at ¶ 44) She alleges that Defendant Trujillo failed to properly document, investigate or handle "these" ████████████ ██████████████████████████ (*Id.* at ¶ 46) She alleges that Trujillo was aware that T.R. was sexually aggressive and did nothing. (*Id.* at ¶ 78) Yet, the only allegations of sexual aggression related to the ████████████ the prior year, after which █████████████ for the remainder of the school year. (*Id.* at ¶ 78) As she alleges against Torrez, she alleges that Trujillo created a void between written sexual harassment policies and their day-to-day implementation, that he delegated the responsibility for addressing reports to Defendant Abeyta Valerio, and that he mishandled reports of sexual misconduct and harassment by teachers and coaching staff. (*Id.* at ¶¶ 154, 167)

25

While Plaintiff makes much of complaints about T.R.'s ███ (two school years before T.R. assaulted her), these complaints do not show that Trujillo had knowledge that T.R. posed a danger to her. Special education law requires that decisions regarding the placement of special education students ██████ be made by a team and not unilaterally,[13] thus Plaintiff cannot allege that any single Defendant, including Trujillo, had the authority to remove T.R. from campus.[14] In any event, during the 2017-18 school year, T.R. was on campus less than two months before he was ███████ .[15] (*See id.* at ¶¶ 83, 93) Where Defendants acted on complaints about T.R.'s conduct, Plaintiff cannot plausibly allege that Trujillo or others did nothing to address concerns that T.R. was █████████████ . And, most significantly, during the school year in which Plaintiff first attended THS, 2018-19, the failure to put T.R. ████████ █████████████████ would not have protected her after the school day, when T.R. allegedly assaulted her.

Plaintiff fails to meet her burden of establishing that Trujillo was deliberately indifferent to her or that he had personal involvement in creating a danger to her. Accordingly, Trujillo is entitled to qualified immunity and all federal claims against him should be dismissed with prejudice.

### 4.  <u>Lisa Abeyta-Valerio is Entitled to Qualified Immunity</u>

Lisa Abeyta-Valerio was the Assistant Principal at THS during the period material to Plaintiff's Complaint. (*Id.* at ¶ 5) As with certain other Defendants, Plaintiff alleges that Abeyta

---

[13] *See* 20 U.S.C. § 1414(b)(4)(A) (requiring the IEP team to determine a child's educational needs); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 137 S. Ct. 988, 994 (2017) (stating that the IEP team creates the IEP).

[14] Defendants already address the theories of insufficient cameras and the move of the Chrysalis School – regardless of who was responsible for such actions, they do not support Plaintiff's claims of liability.

[15] IAES cannot be continued indefinitely, however. *See* 20 U.S.C. § 1415(k)(1)(G).

Valerio attended meetings at which ████████████████████████ (*Id.* at ¶¶ 25, 49,

60, 91), and that she minimized T.R.'s behavior. (*Id.* at ¶ 44) As previously mentioned, DeHerrera

asked Abeyta-Valerio to talk to T.R. about his ████ (*Id.* at ¶ 38), and Plaintiff alleges Abeyta-

Valerio failed to address the ████ behavior or respond to questions about what was being done.

(*Id.* at ¶ 40) ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████ She allegedly mishandled reports of sexual harassment by other personnel of THS. (*Id.* at ¶¶

167, 171)

In addition, Plaintiff alleges that Abeyta-Valerio devoted her time to coaching the

cheerleading team (*Id.* at ¶ 21), and that her son also wrestled, like T.R. (*Id.* at ¶¶ 22, 84). She also

alleges that Abeyta-Valerio was related to T.R.'s family[16] (*Id.* at ¶ 20) and that she thus had a

conflict of interest with disciplining T.R. (*Id.* at ¶ 46) She alleges that T.R. told other students he

would not get in trouble because his family knew Abeyta-Valerio. (*Id.* at ¶¶ 27, 60) A teacher

complained to Abeyta-Valerio about T.R.'s ████████████████ (*Id.* at ¶¶ 31, 43). And the

teacher complained more than once about T.R.'s ████████████████████████

████████████████████████████████ (*Id.* at ¶¶ 27, 28, 31). She also identifies

two other complaints about T.R. made to Abeyta-Valerio about T.R. and that the teachers who

made the complaints felt that no action was being taken on them. (*Id.* at ¶¶ 31-33) From August

---

[16] Potential relationships are not always avoidable in school districts the size of TMS. The Court
may take judicial notice that the population of Taos County as of the 2020 census was 34,489.
United States Census Bureau, available at: https://www.census.gov/searchresults.html?q=
Taos%2C+NM&page=1&stateGeo=none&searchtype=web&cssp=SERP&_charset_=UTF-8

16, 2017, to September 26, 2017, she alleges Abeyta-Valerio received ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██ ██████████████████████████████████████████████████

███████████████████████████████████████████████████

██ ██████████████████████████████████████████████████

███████████████████████████████████. (*Id.* at ¶¶ 77, 155)

In the fall of 2018, during the nearly three months between when T.R. assaulted Plaintiff

and when she reported the assault, Abeyta-Valerio received ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████. (*Id.* at ¶¶

125-28) Plaintiff takes issue with Abeyta-Valerio classifying T.R.'s conduct ████████████

████████████████████████████████████████████████ (*Id.* at ¶ 142) She

alleges Abeyta-Valerio directed resources away from female victims "toward enabling the male

perpetrator's conduct to ensure that he could ████████████████████████ and

participate in wrestling. (*Id.* at ¶ 154) She alleges that Abeyta-Valerio had biases and gendered

stereotypes (apparently because she coached cheerleading, which Plaintiff characterizes as

submissive and sidelined, and because her son wrestled), and she dismissed female students'

allegations as unsupported, using "the intentional absence of such video surveillance" to do so.

(*Id.* at ¶¶ 156, 157, 165)

Though vitriolic and steeped in characterization, these allegations do not support Plaintiff's

federal civil rights claims. As with Trujillo, Abeyta-Valerio had limited authority to take unilateral

action against T.R. ██████████████████████████. Board policies did not allow

him to be expelled (*See* Taos Municipal School District, Policy Manual and Administrative Regulations, Policy J-4850 z3Browhttps://z2.ctspublish.com/nmsba/browse/taos/taos/z20000519 ser by CTS (ctspublish.com)), and Abeyta-Valerio did not have the authority to make policies. Nor could she unilaterally change ████████████████████████ ██

████████████████████████████████████████████████████████

████████████████████████████. And, as addressed above, it is too far of a stretch to determine that Abeyta-Valerio had discriminatory animus toward Plaintiff because Abeyta-Valerio coached cheerleading and allowed her son to wrestle. Abeyta-Valerio lacked the authority to make budgetary decisions, and thus to either direct resources towards cameras or cheerleading. Nor is the allegation that her family was related to T.R.'s family sufficient to show preferential treatment was given to T.R., particularly where action was taken to address his conduct: ████

███████████████████████████. *See Clark*, 2010 WL 11619298 at \*7. Finally, Plaintiff has not stated any allegations showing that Abeyta-Valerio's actions created a known, substantial risk of danger to Plaintiff being assaulted by T.R. after school. She identifies no actions Abeyta-Valerio could take to either be aware of the risk or reduce the risk to Plaintiff. Accordingly, Abeyta-Valerio is entitled to qualified immunity and the claims against her should be dismissed.

### 5. Plaintiff Has Not and Cannot Point to Particularized Case Law Making it Clearly Established that the Individual Defendants violated her Constitutional Rights

Pursuant to Section 1983, to succeed on her constitutional claims against any Individual Defendant, Plaintiff must cite to case law making it clearly established that the Individual

---

[17] The IDEA imposes specific requirements, including procedures related to discipline. *See, e.g.,* 20 U.S.C. §1415(k); 34 C.F.R. 300.530. Given the complexity of this area, it is not surprising that the courts defer to the specialized knowledge of professional educators in making placement and other decisions under the IDEA. *Endrew F.,* 137 S. Ct. at 1001.

Defendant violated her constitutional rights. *White*, 580 U.S. 73, 137 S. Ct. at 552 ("'[C]learly established law' should not be defined 'at a high level of generality.' As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case.") (citing first *al–Kidd*, 563 U.S. at 742, 131 S.Ct. 2074, and then *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034 (1987)). Plaintiff has not, and cannot, point to particularized case law establishing that the Individual Defendants violated her clearly established constitutional rights.

### D.  *Plaintiff Cannot Plausibly Allege any Violation of New Mexico State Law*

Plaintiff's state law claims against the Defendants are based on an alleged breach of a prudent person's duty of care in their operation of the THS premises. (*Id.* at ¶ 237). Plaintiff alleges that Defendants failed to keep a proper lookout; did not monitor Plaintiff; did not provide her with instructions or training on how to retreat; did not provide females with reasonable means of safe ingress and egress; did not warn Plaintiff regarding a foreseeable risk of on-campus sexual harassment or sexual assault; allowed T.R. to "roam the school premises unmonitored"; and imposed physical and operational barriers that prevented female students from summoning TMS personnel during "emergent situations."  (*Id.* at ¶ 242)

Most of the theories identified in Plaintiff's premises liability claim are conclusory and not plausibly alleged. She nowhere alleges facts relating to a duty on Defendants to train her how to retreat, nor facts related to ingress or egress failures at THS, nor facts related to whether and how she could (or could not) summon TMS personnel during the alleged assault. Other theories, such as the constant monitoring and allowing T.R. to "roam the school premises," have been addressed above and are insufficient to establish knowledge of a danger to Plaintiff.

Generally, to be liable for premises liability for a third party's assault of a plaintiff, the defendant must have knowledge that there was a dangerous condition. *Encinias v. Whitener L. Firm, P.A.*, 2013-NMSC-045, ¶ 18, 310 P.3d 611, 619. Defendants did not know that T.R.

presented a threat to Plaintiff after school hours. There is no evidence of a pattern of violence at THS, as the ███████████████████████████████ does not establish a pattern of potential violence, particularly under the significantly different circumstance of the assault of Plaintiff after school. Nor can Plaintiff establish that one student is a dangerous condition or a "hot zone" of danger to fit within the Section 41-4-6 waiver of liability. *Kreutzer v. Aldo Leopold High School*, 944, 2018-NMCA-005, ¶ 61, 409 P.3d 930, 944.

It is black letter law that the government does not have the duty to do everything that might be done. NMSA 1978 § 41-4-2(A). No regulations require Defendants to have security cameras in all areas of the high school campus. Nor does the failure to have a camera at the location of the assault on Plaintiff establish that Defendants were negligent, given that it would be an unreasonable burden on Defendants to continuously monitor such cameras at all times, even after school.

Plaintiff has not plausibly pleaded a claim for premises liability under the New Mexico Tort Claims Act, and thus her claim under New Mexico law should be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, all claims against all Defendants should be dismissed for the failure to state a claim. Further, the claims against each Individual Defendant should be dismissed on basis of qualified immunity. Wherefore, Defendants respectfully request this Court to dismiss all claims brought by Plaintiff with prejudice, and for such further legal and equitable relief as may be appropriate.

Respectfully Submitted:

*German · Burnette & Associates, LLC*

 */s/ Lindsay Van Meter*
Elizabeth L. German
Mary Keleher Castle
Cindy Cordova
Lindsay Van Meter
*Attorney for Defendants*
11728 Linn Ave. NE
Albuquerque, NM 87123
(505) 292-9676
Beth@germanassociates.com
mary@germanassociates.com
cindy@germanassociates.com
lindsay@germanassociates.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of November, 2022, I filed the foregoing electronically through the CM/ECF system, which caused all counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

 */s/ Lindsay Van Meter*
Lindsay Van Meter