## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JANE DOE,

      Plaintiff,

v.

JANE DOE 2,

      Intervenor-Plaintiff,

v.                                 No. 1:20-cv-01041-SCY-JHR

TAOS MUNICIPAL SCHOOLS; LILLIAN
TORREZ, ROBERT TRUJILLO, LISA
ABEYTA-VALERIO, and EMY
DeHERRERA, *in their individual capacities,*

      Defendants.

## MEMORANDUM OPINION AND ORDER RESOLVING JANE DOE 2'S MOTION TO INTERVENE, [DOC. 182], AND DEFENDANTS' MOTION FOR INJUNCTIVE RELIEF AND SANCTIONS, [DOCS. 207, 210]

**THIS MATTER** is before the Court on Intervenor-Plaintiff Jane Doe 2's Motion to

Intervene for Purposes of Clarifying and Amending Stipulated Confidentiality Order, [Doc. 182]

("Motion to Intervene"), and Defendants' Motion for Injunctive Relief and Sanctions for

Plaintiff and Plaintiffs' Counsels' Violation of Stipulated Protective and Confidentiality Order

and FERPA, [Docs. 207, 210] ("Motion for Sanctions").[1]  Because the subject matter of and

issues raised in the motions heavily overlap, the Court resolves both motions here.  Having

considered the briefing and relevant law, the Court finds that (a) Doe 2 and her lawyers violated

the Stipulated Protective and Confidentiality Order [Docs. 35, 59, 61]; (b) Doe 2 and her lawyers

---

[1] Defendants filed their Motion for Sanctions in duplicate to protect information they designated confidential. The publicly available copy is partly redacted, [Doc. 207], and the copy filed under seal, [Doc. 210], is not.  For simplicity, the Court exclusively cites the publicly available copy since arguments in both are identical.

did not trigger the Family Educational Rights and Privacy Act's five-year penalty; (c) attorneys' fees and costs will be awarded to Defendants, but no other sanctions are appropriate; and (4) amendment to the Stipulated Protective and Confidentiality Order will not be granted at this time.

## I.   __INTRODUCTION__

This Memorandum Opinion and Order is about plain text and proportionality.  In August 2022, Doe 1's lawyers filed a new lawsuit on behalf of Doe 2 in which they repeatedly referenced information produced and designated confidential in the present case.  The lawyers on each side then argued about the propriety of using the information this way, culminating in each side filing the motions resolved here.  In total, the motions ask four questions:  (a) whether Plaintiffs and their lawyers violated a stipulated protective order; (b) whether they triggered a five-year no-records penalty under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. pt. 99 ("FERPA"); (c) what kinds of sanctions should be assessed for those violations; and (d) whether the protective order in question should be amended to permit Plaintiffs's counsel to use information designated confidential in this case to prosecute Doe 2's separate case.

Plain text answers the first two questions and the application of even-handed proportionality resolves the others.  The plain text of the stipulated protective order makes clear that Doe 2 and her lawyers violated it, while the plain text of FERPA reveals they did not trigger the statute's five-year penalty.  As for sanctions, payment of attorneys' fees and costs associated with the violation is proportional; dismissal, on the other hand, is not.  And given the depths of the parties' disagreements about the protective order, unilateral amendment would be unwise, so it will not be granted.  The attorneys are invited to carefully read the discussion below, then to

confer on what course of action is most appropriate to ensure discovery in this case and in Doe 2's separate case proceeds efficiently.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

Jane Doe 1 filed the present case, *Doe v. Taos Municipal Schools et al.*, 1:20-cv-01041-SCY-JHR ("*Doe 1 v. T.M.S.*"), in October 2020.  *See* [Doc. 1].  Doe 1 alleged in her original complaint that a fellow student, T.R., sexually harassed and assaulted her on campus while she was attending Taos High School and that the Taos school system and its administrators (Defendants) were liable for the harm.  *Id.* at 15–20.  Her theory of liability relied in part on the allegation that T.R. harassed and assaulted another student, Jane Doe 2, in an almost identical way one year earlier.  *Id.* at 4–7.  Although the original complaint detailed events which happened to Doe 2 or in which she took part, it did not name Doe 2 as a party nor suggest that Doe 2 was represented by Doe 1's counsel.  *See generally id.*

Because Doe 1, Doe 2, and T.R. were all minors when the relevant events occurred, and because most of those events happened in and around a school subject to FERPA, the parties agreed that confidentiality measures were necessary.  *See* [Docs. 25, 34].  Defendants first moved for a protective order to protect education records covered by FERPA and to establish a process for production of such records in discovery.  [Doc. 25].  Defendants proposed the following process:  First, Doe 1's counsel would identify the students whose records they sought.  *Id.* at 5.  Taos Municipal Schools would then notify those individuals about the request and the lawsuit, using a form notice either approved by Doe 1's lawyers or approved by the Court if counsel could not agree.  *Id.* at 4–5.  The notified individuals then had the opportunity to object to disclosure of their education records and, if objections were made, the Court would review them *in camera* and determine whether the protected records should be disclosed.  *Id.* at 6–7.

3

Doe 1's lawyers concurred in Defendants' motion and approved the proposed order sent to my chambers. *Id.* at 2; [Doc. 26, p. 4]. A stipulated order protecting education records and establishing the proposed process (the "FERPA Order") was thus entered in May 2021. *See* [Doc. 26].

Next, the parties jointly moved for a stipulated protective order to be entered in July 2021. *See* [Doc. 34]. The parties' proposed Stipulated Protective and Confidentiality Order was entered the next day and remains in effect now. [Doc. 35].[2] In addition to categorizing information which would be protected, the Confidentiality Order establishes a process for designating such information and challenging those designations. Parties must use a specific prefix or marking on the documents or information produced and specify under what category of protected information it falls. *Id.* at 3. Good faith designations place the information so designated within the definition of "Confidential Information" and entitle it to specified protections. *Id.* at 2, 4–5. Parties can then challenge each other's designations by filing a motion "that identifies the challenged material and sets forth in detail the basis for the challenge." *Id.* at 6–7. The designating party then bears the burden to prove the necessity of the designation; if they fail to meet that burden, the information is no longer protected. *See id.* at 7. However, until the Court rules on a challenge, parties are required to "continue to treat the materials as Confidential Information[.]" *Id.* A similar process is included for designating information as confidential in documents filed with the Court. Parties can move for documents to be filed under seal, after which the party designating information as confidential must explain why the seal is necessary within fourteen days of the motion for seal being filed. *Id.* at 5–6. Mere designation

---

[2] The Confidentiality Order also encompasses documents 59 and 61, which amended the Order to include additional categories of confidential information. *See* [Docs. 59, 61].

in this process is not enough to justify a seal, and the burden remains with the designating party to timely justify the seal. *Id.* at 5–6.

The present dispute over confidentiality began in August 2022 when Doe 2 filed her own lawsuit, *Doe 2 v. Taos Municipal Schools et al.*, 1:22-cv-00590-KWR-JHR ("*Doe 2 v. T.M.S.*"). Represented by the same lawyers as Doe 1, Doe 2 stated claims against the same Defendants based on her alleged sexual harassment and assault by T.R. while attending Taos High School. *See Doe 2 v. T.M.S.*, [Doc. 1, pp. 38–52]. The introduction to Doe 2's original complaint refers to the present case as a "related case," purports to incorporate by reference Doe 1's provisionally sealed and unredacted First Amended Complaint, and references T.R.'s "school records cited herein[.]" *Id.* at 2. The body of the original complaint then refers to information "currently the subject of Defendants' proposed redactions" at least one-hundred-thirty-seven times and often refers to documents or information which has been designated confidential by Defendants. *See generally id.* Plaintiffs' and Defendants' counsel thereafter corresponded about the *Doe 2 v. T.M.S.* complaint, with defense counsel asserting that the complaint appeared to violate the Confidentiality Order and Plaintiffs' counsel strongly disagreeing.

Unable to privately resolve their dispute, the parties filed two related motions in this case in October 2022. First, Doe 2 moved to intervene for the limited purpose of clarifying the Confidentiality Order and to amend it as necessary so she could access information protected by the Order for use in *Doe 2 v. T.M.S.* [Doc. 182]. Defendants responded in partial opposition, agreeing that Doe 2 should be allowed to intervene but disagreeing with her interpretation of the Confidentiality Order and arguing against its amendment. [Doc. 198]. Defendants then moved for injunctive relief and sanctions against Plaintiffs and their lawyers, alleging that Doe 2 violated the Confidentiality Order and FERPA by using protected information from *Doe 1 v.*

*T.M.S.* to draft her complaint.  [Doc. 207].  Briefing was completed on Doe 2's Motion to

Intervene in early November, and on Defendants Motion for Sanctions later that month.

[Docs. 220, 242].  Judge Yarbrough partly granted the Motion to Intervene by permitting Doe 2's

intervention, but left the remaining matters related to the Confidentiality Order and FERPA to

the undersigned as referral magistrate.

## III.   **DISCUSSION**

After Judge Yarbrough granted the intervention portion of Doe 2's Motion to Intervene,

the pending motions pose four questions.  First, the Motion to Intervene and the Motion for

Sanctions each ask, in their own way, whether the Confidentiality Order permits Doe 2 and her

lawyers to use information designated confidential in the present case to prosecute *Doe 2 v.*

*T.M.S.*, or if Doe 2 violated the Order by doing so.[3]  Second, the Motion for Sanctions asks

whether Doe 2 and her lawyers violated FERPA by improperly accessing and sharing education

records.  Third, the Motion for Sanctions asks what sanctions, if any, are appropriate to address

Doe 2's and her counsel's violation of the Confidentiality Order and FERPA.  Finally, the

Motion to Intervene asks whether the Confidentiality Order should be amended to expressly

permit the use of confidential information produced in the present case to litigate *Doe 2 v. T.M.S.*

Each issue is addressed in turn.

---

[3] Doe 2 asks for "clarification" in the Motion to Intervene.  [Doc. 182, p. 27].  Usually, asking courts to just clarify legal issues amounts to requesting an "advisory opinion," which federal courts lack the power to issue.  *See Carney v. Adams*, 141 S. Ct. 493, 498 (2020); U.S. Const. art. III, § 2 (granting federal courts power only to resolve "cases" and "controversies").  Here, however, clarification on the meaning of the Confidentiality Order is a logical prerequisite to Doe 2's request to amend the Order and to Defendants' request for sanctions based on its violation. As such, clarification is just one step in the process of resolving the present controversy and providing it does not violate the prohibition on advisory opinions.

a.   _The Boundaries of the Confidentiality Order and Whether Doe 2 Violated It_

i.   Parties' Arguments

Doe 2 asserts that the Confidentiality Order permits her and her lawyers to use information which Defendants designated confidential to prosecute _Doe 2 v. T.M.S._  [Doc. 182, p. 11].  Doe 2 says that the terms of the Confidentiality Order, as well as the First Amendment and the common law, establish a presumption which requires the Order to be "strictly construed in favor of public disclosure and open proceedings wherever possible."  _Id._ at 4–6; _see also_ [Doc. 35, p. 2].  With this presumption in mind, she points to two provisions in the Order which could be read in her favor.  First, she seems to assert that _Doe 2 v. T.M.S._ is so interwoven with the present case that it is a "related legal proceeding" for which information designated confidential can be used.  _See_ [Doc. 182, p. 6]; [Doc. 219, p. 2].  Second, Doe 2 argues that the Confidentiality Order's "fact witness" provision should be applied in her favor because she is a named fact witness in the present case and thus has some access to confidential information anyway.  [Doc. 182, pp. 8–9].  If the Court reads the Confidentiality Order any narrower than she proposes, Doe 2 claims that the Order will become a prior restraint on her and Doe 1's right to speak freely about their experiences and about this case, unconstitutional under the First Amendment.  _Id._ at 7; [Doc. 225, pp. 17–19].  In essence, Doe 2 argues that the Confidentiality Order contemplates a porous relationship between virtually all discovery in this case and discovery in _Doe 2 v. T.M.S._, but Defendants are either misreading the Order or purposefully weaponizing it against Doe 2.

Defendants argue Doe 2's interpretation of the Confidentiality Order is inconsistent with its plain text.  They first point out that designated confidential information "must be used or disclosed solely for purposes of prosecuting or defending this lawsuit" and that Doe 2's lawsuit

7

is a separate case.  [Doc. 207, p. 6] (quoting [Doc. 35, p. 4]) (emphasis added by Defendants).

Defendants acknowledge the "related legal proceedings" clause in the Order but say that such

proceedings must be "brought by one or more parties to this litigation" and Doe 2 was not a party

to this case when she filed the offending complaint.  [Doc. 207, p. 13].  Defendants also concede

that the Confidentiality Order gives fact witnesses, including Doe 2, some access to confidential

information.  [Doc. 195, p. 14].  That access, however, is limited only to reviewing relevant

information as necessary for their role as a fact witness in *Doe 1 v. T.M.S.* – to refresh memory,

help in relating or explaining facts, and otherwise testify in the present case.  *Id.* (citing [Doc. 35,

p. 5]).  Therefore, say Defendants, Doe 2's use of designated confidential information to bring a

separate lawsuit was outside the scope of the Order's fact witness exception.  Regarding her First

Amendment arguments, Defendants assert that Plaintiffs' supportive cases are distinguishable

and that her free-speech concerns are outweighed by privacy interests.  [Doc. 195, p. 16].

This reading of the Confidentiality Order sets up Defendants to make a simple argument

showing Doe 2 and her lawyers violated the Order:  the Order prohibits use of designated

confidential information outside this case; Doe 2's complaint in her separate case repeatedly

references documents which Defendants designated confidential; therefore, Doe 2 and her

lawyers must have used designated confidential information outside this case, which violated the

Order.  *See* [Doc. 207, pp. 12–13].

Doe 2, however, makes two counterarguments.  First, she asserts that the information she

referenced was not confidential and was therefore unprotected by the Confidentiality Order.

[Doc. 182, pp. 6–8].  She gives various reasons for this – that she independently learned the

information elsewhere, that Defendants did not timely designate some of it in a provisionally

sealed court filing, or because the Court later found that some of Defendants' designations were

improper. *Id.* at 6–8.  Second, Doe 2 argues that, although she referenced information designated confidential in her complaint, she did no harm because she did not reveal the designated information in her public filing, so the Court should not find she violated the Order. *See* [Doc. 219, pp. 6–9] (identifying paragraphs of Doe 2's complaint and stating that they "do[] not reveal the content" of the documents referenced).  Defendants reply that neither argument works. Whether Plaintiffs object to the designations, say Defendants, is beside the point because the Order prohibits use of "[d]esignated Confidential Information," not merely information which has been determined by the Court to be properly designated.  [Doc. 207, p. 13].  And Defendants do not claim Doe 2 violated the Confidentiality Order by *revealing* information – they merely claim Doe 2's *use* of the information violated the Order. *See id.* at 11.  The simple argument for violation of the Order therefore stands.

    ii.  <u>Relevant Law</u>

Issuance and enforcement of a protective order restricting the spread of information produced in discovery is well within a district court's power.  District courts generally have broad discretion to issue orders governing pretrial litigation. *See Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1164 (10th Cir. 2010).  This includes discretion to issue protective orders which can, "for good cause," limit access to and speech about certain information "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c).  "The starting point for interpretation of a protective order lies in its plain language." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010).

The Court's power to limit the dissemination of information produced in discovery is only somewhat limited by the First Amendment and the usual presumptions in favor of open

proceedings. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32–34 (1984) (discussing the

relationship between civil discovery and First Amendment speech and press rights). This is

because discovery is a matter of legislative grace; litigants are entitled it only because the rules

of civil procedure, established through the Rules Enabling Act, require parties to disclose

information to each other they would not otherwise reveal. *Id.* at 32; *see* 28 U.S.C. § 2072(a)

(establishing the Supreme Court's power to promulgate the Federal Rules of Civil Procedure).

Courts may thus enter protective orders, on good cause, to restrict the dissemination of

information acquired through discovery without offending the First Amendment so long as

orders do not restrict the dissemination of information gained from sources other than discovery.

*Seattle Times Co.*, 467 U.S. at 37.

   Plaintiffs argue the First Amendment places more exacting standards on the Court, but

their arguments are misplaced. It is true that, generally, the First Amendment makes prior

restraints on speech presumptively unconstitutional. *See Se. Promotions, Ltd. v. Conrad*, 420

U.S. 546, 558 (1975). But "an order prohibiting dissemination of discovered information before

trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny."

*Seattle Times Co.*, 467 U.S. at 33. Parties bound by orders permissible under *Seattle Times Co.*

remain free to "disseminate . . . identical information covered by the protective order as long as

the information is gained through means independent of the court's processes." *Id.* at 34. This is

the case with the Confidentiality Order, so First Amendment concerns are not implicated if the

Court applies the Order correctly. *See* [Doc. 35, p. 3] ("Information or documents that are

available to the public may not be designated as Confidential Information").

   Nor does the common law seriously limit the Court's power over pretrial discovery. It is

true that there is a common-law right to access judicial records which establishes a presumption

in favor of open proceedings.  *Elevate Fed. Credit Union v. Elevations Credit Union*, 67 F.4th

1058, 1083 (10th Cir. 2023); *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013).

The presumption is defeated only if the party wishing to seal judicial records meets the heavy

burden of showing a real, substantial, and significant interest which outweighs the public interest

in access to records.  *Elevate Fed. Credit Union*, 67 F.4th at 1083.  But the common law

presumption applies to disputes over whether to seal documents presented at trial or considered

by the Court to make determinations.  *See id.* at 1084–85 (deciding what parts of the appellate

appendix, filed with the Tenth Circuit Court of Appeals, should be sealed); *Pickard*, 733 F.3d at

1302–05 (deciding whether records filed with a district court should remained sealed after trial).

Here, the issue is whether this presumption requires that Doe 2 be allowed to access information

produced in discovery, not whether documents filed in Court should remain sealed.  Although

the Court accepts the presumption as valid, Doe 2's reading of the case law does not compel the

Court to diverge from the rules of *Seattle Times Co.*

iii.  <u>Analysis</u>

A.  *Clarifying the Order*

The question at the heart of the pending motions is whether the Confidentiality Order

permits information designated confidential to be used for purposes other than litigating the

present case if the designation has not been properly challenged.  The answer is that the Order

does not permit such use.

The Confidentiality Order states:  "Designated Confidential Information must be used or

disclosed solely for purposes of prosecuting or defending *this lawsuit*, including any appeals or

any other related legal proceedings brought by one or more of the *parties to this litigation.*"

[Doc. 35, p. 4] (emphasis added).  The phrase "this lawsuit" refers to the present case, styled

*Jane Doe v. Taos Municipal Schools et al.*, case no. 1:20-cv-01041-SCY-JHR, filed in the United States District Court for the District of New Mexico on October 8, 2020. The plain meaning of this rule is that information designated confidential can be used only to (a) litigate the present case; (b) litigate appeals from decisions made in the present case; and (c) litigate "related legal proceedings" if those proceedings are brought by a party to the present case. What constitutes "related legal proceedings" may be ambiguous in some situations, but the phrase "parties to this litigation" at least limits the scope of "related legal proceedings" to those proceedings brought by someone who, when the proceedings are initiated, is already a party to this case.

Doe 2's arguments for a narrower reading misunderstand the Order's language. She is correct that the Confidentiality Order and the common law require "a presumption in favor of open and public judicial proceedings," under which the "Order will be strictly construed in favor of public disclosure and open proceedings wherever possible." [Doc. 35, p. 2]; *see Elevate Fed. Credit Union*, 67 F.4th at 1083. But a broad presumption in favor of open proceedings cannot overcome the Order's more specific language which protects information based on good-faith designations and which requires parties to abide by those protections pending the Court's ruling. *See* [Doc. 35, pp. 2, 6–7] (respectively, defining "Confidential Information" to encompass information so designated in good faith; explaining the procedure for objecting to designations; and requiring parties to "continue to treat the materials as Confidential Information" pending the Court's ruling). The Confidentiality Order thus requires parties to treat information designated confidential as though the designation is proper until the Court rules otherwise. The open-proceedings presumption comes into play once a designation is challenged, at which point the designating party is held to their burden to justify confidentiality. Applying the presumption upon a proper challenge, rather than requiring the parties to make arguments for every

designation as they are made, allows the parties to protect information as necessary without constant court supervision while still holding the parties to a standard of openness as required by the common law.

The First Amendment does not compel a different reading.  As explained above, protective orders limiting the dissemination of information obtained through discovery do not implicate free-speech interests so long as parties remain free to disseminate identical information obtained outside discovery.  *See Seattle Times Co.*, 467 U.S. at 34.  The Confidentiality Order permits this by limiting its scope to "documents and materials produced in the course of discovery of this case" and prohibiting the designation of "[i]information or documents that are available to the public[.]"  [Doc. 35, pp. 2–3].  Doe 2 and her lawyers are thus free to rely on non-confidential sources, including first-hand experiences, news articles, information produced pursuant to New Mexico's Inspection of Public Records Act, N.M.S.A. 1978 § 14-2-1 *et seq.* ("IPRA"), and private discussions or subjective inferences which form the basis of allegations stated on "information and belief."  The Confidentiality Order does not, and has never, prohibited this.  Doe 2's First Amendment arguments thus fall flat.

In sum:  Information which Doe 1 or her lawyers have obtained solely by discovery in the present case, and which has been designated confidential in good faith, cannot be used for any purpose other than litigating the present case, including appeals from decisions in this case and related legal proceedings brought by a party to this case.  During the pretrial phase, this protection will be lifted only after a party properly challenges that designation and the Court determines that the designating party has not met their burden to show that the information should be kept confidential.  When deciding challenges, the Court will presume that matters

should be open to the public and the party designating information as confidential will bear a heavy burden to rebut that presumption.

### B.  *Doe 2's and Counsel's Violation*

The discussion above makes clear that Doe 2 and her lawyers violated the Confidentiality Order.  The Confidentiality Order prohibits use of information designated confidential for purposes other than prosecuting or defending this case, including appeals and related legal proceedings brought by parties.  [Doc. 35, p. 4].  Doe 2's complaint in her separate case contains numerous references to specific documents produced and designated confidential by Defendants in the present case.  *See generally Doe 2 v. T.M.S.*, [Doc. 1].[4]  Doe 2 and her lawyers could not have drafted a complaint which cites specific documents which were produced and designated confidential unless they used those documents "for purposes other than prosecuting . . . this lawsuit" while drafting the complaint.  [Doc. 35, p. 4].  Doe 2's case is not "this case," nor is it an appeal from a decision in this case, nor was it a "related legal proceeding" when it was filed.  Doe 2 and her counsel thus violated the Confidentiality Order.

The "related legal proceedings" and "fact witness" exceptions do not change this.  Even if Doe 2 might now argue that she is a party because she is an intervenor, she was not a party when she filed her separate case.  *See* [Doc. 182] (Motion to Intervene, filed October 2022); *Doe 2 v. T.M.S.*, [Doc. 1] (filed August 2022).  And though Doe 2 is a fact witness in this case, the fact-witness provision of the Order only permits her to access designated confidential information as necessary for her to recall, relate, or explain facts and testify in this case.  [Doc. 35, p. 5].  Litigating a separate case does not fall within that scope.

---

[4] Violating paragraphs include: ¶¶ 26–31, 39, 42, and 52–57, each of which directly references specific documents Defendants designated confidential.  *See Doe 2 v. T.M.S.*, [Doc. 1].  An exhaustive list would not aid in the analysis, so these examples are provided merely to illustrate the issue.

Nor does Doe 2's argument that the information should not have been designated confidential undo her violation of the Order.  The Confidentiality Order outlines a process by which parties can object to each other's designations.  [Doc. 35, pp. 6–7].  That process requires that an objection be filed with the Court and that, pending resolution of that objection, the designated information still be treated as confidential.  *Id.* at 6–7.  The objection process would be largely superfluous if parties could, instead of objecting, ignore each other's designations, treat the information as non-confidential, then litigate the propriety of the designation after the information has already been misused or disseminated.  The requirement that parties treat designated information as confidential until the Court rules on it exists for the very purpose of preventing this kind of situation.

And, finally, the fact that Doe 2 did not reveal confidential information in her complaint makes the violation less egregious, but it does not mean she did not violate the Order.  Again, the Confidentiality Order limits both the disclosure and *use* of information designated confidential.  *Id.* at 4.  Even if every disclosure necessary to draft the complaint in *Doe 2 v. T.M.S.* was permitted, the use of that information to prosecute a new case was not.  There is thus no way to understand Doe 2's and her lawyers conduct as anything but a violation of the Confidentiality Order.

> b.   *Whether Plaintiff or Plaintiffs' Counsel Violated FERPA*

> i.   Parties' Arguments

As well as arguing that Plaintiffs and their lawyers violated the Confidentiality Order, Defendants argue they violated FERPA by sharing education records protected by the statute.  Their position is simple.  FERPA, they say, generally prohibits disclosure of "education records," as defined in the statute, to people other than students and their parents.  [Doc. 207,

pp. 7–8].  Education records can be disclosed to others pursuant to a judicial order, but the affected students or their parents must be notified first so they can seek protection.  *Id.* at 7–8.  Despite this, Doe 2's lawyers disclosed education records produced in this case to Doe 2 without proper notification.  *Id.* at 13–14.  This disclosure, Defendants say, violated FERPA, put Taos Municipal Schools' federal funding at risk, and injured the privacy rights of at least one former student whose records were disclosed.  *Id.* at 14–15.

Plaintiffs disagree for three reasons.  First, they argue that the information and documents in question were not protected by FERPA.  [Doc. 225, pp. 14–16].  The argument is based on Plaintiffs' reading of *Owasso Indep. Sch. Dist. v. Falvo*, 534 U.S. 426 (2002), which addressed the scope of FERPA's protections, and from a broader assertion that the relevant information was either independently known to Plaintiffs or publicly available in news articles and under the IPRA, rendering it unprotected.  *See* [Doc. 225, pp. 12–16].  Second, even if the information was protected, Plaintiffs assert that FERPA does not allow Defendants to seek relief from this Court for a prohibited disclosure.  *See id.* at 13–14.  Plaintiffs analogize this case to *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), in which the Supreme Court held that students whose education records were released in violation of FERPA do not have a cause of action under 28 U.S.C. § 1983.  [Doc. 225, pp. 13–14].  Third, Plaintiffs claim that Defendants' interpretation of FERPA creates constitutional issues.  Specifically, they argue that Defendants' reading of the statute would impermissibly limit Plaintiffs' rights to speak and to access information, guaranteed by the First Amendment, and that their reading is so broad that FERPA would interfere with New Mexico's ability to perform its "traditional state functions" of law enforcement and protecting public safety. *Id.* at 16–18.[5]

---

[5] Plaintiffs also complain about the Court's process for screening documents for FERPA-protected information and hearing objections from affected students and parents, outlined in the Court's FERPA Order.  [Doc. 26].  They claim

ii.  <u>Relevant Law</u>

Plaintiffs rely heavily on case law, but the language of the statute alone is sufficient to resolve the issue.  Generally, schools subject to FERPA cannot release education records to non-parent, non-student "third parties."  *See* 20 U.S.C. §§ 1232g(b)(1), (2).  Exceptions are made for certain types of third parties who satisfy specified requirements.  Section 1232g(b)(2) provides two general exceptions to the no-release rule:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, **unless**—
> (A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, **or**
> (B) except as provided in paragraph (1)(J), **such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith** by the educational institution or agency, except when a parent is a party to a court proceeding involving child abuse and neglect . . . or dependency matters, and the order is issued in the context of that proceeding, additional notice to the parent by the educational agency or institution is not required.

20 U.S.C. § 1232g(b)(2) (emphasis added).  Although these rules mostly police the policies and practices of schools maintaining education records, FERPA also penalizes third parties who lawfully obtain but later misuse education records.  That provision states:

> With respect to [subsection (b)], personal information shall only be transferred to a third party on the condition that such party will not permit any other party to have access to such information without the written consent of the parents of the student.  **If a third party outside the educational agency or institution permits access to**

---

the process is "*ad hoc*," opaque, generally unmoored from the statute, and that it does not give Plaintiffs or the public an opportunity to assess the validity of claims that a record is protected from disclosure.  *See generally* [Doc. 225, pp. 3–11].  The arguments will not be addressed further in this Order.  The quality or propriety of the Court's FERPA screening process does not bear at all on whether Plaintiffs violated FERPA, which is a matter of statutory interpretation.  Additionally, Doe 1 concurred in Defendants' motion to establish the FERPA screening process and registered no complaints about it with the Court until now.  *See* [Doc. 25, p. 2].  Plaintiffs have not moved to amend the FERPA Order but are free to so move.  Until such a motion is filed, it is unclear what the Court can or should do with these complaints.  The Court thus acknowledges them but will go no further.

**information in violation of paragraph (2)(A), or fails to destroy information in violation of paragraph (1)(F),** the educational agency or institution shall be prohibited from permitting access to information from education records to that third party for a period of not less than five years.

*Id.* at § 1232g(b)(4)(B) (emphasis added).  FERPA thus specifies circumstances under which education records can be accessed by third parties and, for specific situations where third parties do not live up to the obligations on which their access is conditioned, a penalty which cuts off that access.[6]

       iii.  Analysis

Although Doe 1 and her lawyers violated the Confidentiality Order, they did not violate FERPA, at least not in a way that would trigger its five-year penalty.  Section 1232g(b)(4)(B) states that the penalty is triggered if one of two other provisions, paragraphs (b)(1)(F) or (b)(2)(A), are violated.  20 U.S.C. § 1232g(b)(4)(B).  Paragraph (b)(1)(F) is not implicated because Plaintiffs and their lawyers are not "organizations conducting studies," so the issue is whether they violated paragraph (b)(2)(A).

Comparing the facts to the plain language of paragraph (b)(2) shows that Plaintiffs did not violate paragraph (b)(2)(A).  Paragraph (2)(A) creates an exception to the general no-release rule when "there is a written consent from the student's parents specifying the records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents[.]"  20 U.S.C. § 1232g(b)(2)(A).

---

[6] It is unclear whether the five-year penalty can be enforced by private action in court.  As Plaintiffs point out, students cannot to sue educational agencies or institutions under 28 U.S.C. § 1983 for violations of FERPA's nondisclosure requirements because FERPA relies on the Secretary of Education to enforce it and the statute lacks "clear and unambiguous" rights-creating language.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).  But Defendants are not pursuing a legal action for damages—they want the equitable remedy of an injunction cutting off Plaintiffs' access to education records.  *See, e.g., Signature Props. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1268 (10th Cir. 2002) ("It is well established that injunctive relief is equitable").  The Court can find no cases clearly addressing whether FERPA's enforcement scheme and language preclude private enforcement of it in equity.  Without holding either way, the Court assumes that FERPA's five-year penalty may be enforceable by private parties because it makes no difference, as Doe 1 and her lawyers did not trigger the five-year penalty anyway.

The paragraph, however, must be read in the context.  It is first preceded by the general rule of

§ 1232g(b)(2); (b)(2)(A) then states an exception and ends with the word "or"; it then is followed

by an alternative exception in (b)(2)(B).  *See id.* at § 1232g(b)(2).  This means paragraph (b)(2)

is satisfied by meeting the requirements of either subparagraph (2)(A) or (2)(B).  Therefore, to

violate the requirements of (2)(A), paragraph (2)(B) must be inapplicable.

Paragraph (2)(B) not only applies to Doe 1's case—it was satisfied.  Paragraph (2)(B)

requires two things:  first, that there be a "judicial order" or a "lawfully issued subpoena," and

second, that parents and students be "notified of all such orders or subpoenas in advance of the

compliance therewith[.]"  *Id.* at § 1232g(b)(2)(B).  The Court issued a "judicial order" requiring

education records to be produced, then the relevant former students and their parents were

notified of that order "in advance of compliance therewith" according to the process in the

FERPA Order.  Given the either-or structure of § 1232g(b)(2), it would make no sense to hold

that Doe 1 and her lawyers acted "in violation of paragraph (2)(A)" when their compliance with

paragraph (2)(B) made compliance with paragraph (2)(A) unnecessary.  Doe 1 and her lawyers

thus did not violate paragraph (2)(A) and did not trigger the five-year penalty.

This reading of § 1232g(b) is consistent with the Department of Education's

interpretation of FERPA.  In its FERPA regulations, the Department imposes the five-year

penalty on third parties if they violate the record-destruction requirement associated with

performing studies (*see* 34 C.F.R. §§ 99.31(a)(6)(iii)(B); 99.67(c)) and, when disclosures are

pursuant to a court order, when they fail to "make[] a reasonable effort to notify the parent or

eligible student of the order or subpoena in advance of compliance, so that the parent or eligible

student may seek protective action[.]"  34 C.F.R. §§ 99.31(a)(9)(ii), 99.33(b)(2), 99.67(e).  This

language mostly mirrors the statute, requiring notification only of the order itself and that the

notification be provided before the school give over its education records.  *Compare* 20 U.S.C. § 1232g(b)(2)(B) *and* 34 C.F.R. § 99.31(a)(9)(ii).  The allowance for objections was provided for in the Court's FERPA Order as well, even if Plaintiffs now believe it is unnecessary.  *See* [Doc. 26, p. 2].  Having satisfied the statute itself and the regulations elaborating on how to comply with it, the Court cannot hold Plaintiffs and their lawyers violated FERPA.

Defendants' arguments for the five-year penalty fail.  Defendants primarily assert that Plaintiffs violated FERPA because they did not notify the affected students that their education records would be passed on to Doe 2 and used in her separate case.  To the degree that Plaintiffs' counsel used "education records" to prosecute Doe 2's case, they certainly violated the Confidentiality Order.  *See above.*  But FERPA's notification requirement under § 1232g(b)(2)(B) is less stringent.  The only notice required by paragraph (b)(2)(B) is notice "of all such [judicial] orders or subpoenas in advance of compliance therewith[.]"  20 U.S.C. § 1232g(b)(2)(B).  The language of that section does not, as Defendants suggest, require renotification for each redisclosure.  This makes sense because it allows courts to tailor their orders and subpoenas to the needs of the case and to remedy violations through equally tailored sanctions.  Plaintiffs' attorneys' disclosure of protected information thus violated the Confidentiality Order, but not FERPA itself.

Defendants also lean on the first sentence of § 1232g(b)(4)(B), but the support here is no stronger.  The first sentence of paragraph (b)(4)(B) requires schools to condition transfer of education records to a third party on that third party prohibiting "any other party to have access to such information without the written consent of the parents of the student."  20 U.S.C. § 1232g(b)(4)(B).  This language looks broad and seems to favor Defendants, but only if isolated from the sentence that follows.  The five-year penalty provided in the second sentence is not

triggered by violation of the condition described in the first sentence.  Instead, the five-year

penalty expressly depends on violation of either paragraph (b)(1)(F) or (b)(2)(A).  *See* 20 U.S.C.

§ 1232g(b)(4)(B).  It would have been trivial for Congress to link violation of the condition in

the first sentence to the penalty in the second, but Congress chose instead to refer to specific

provisions elsewhere in § 1232g.  This is no scrivener's error, and the Court will not treat it as

one.  Even if Plaintiffs and their lawyers violated the no-release condition on which they

received education records, that violation did not trigger the five-year penalty.

In sum, Plaintiffs and their lawyers violated the Confidentiality Order, but the same

conduct did not violate FERPA as it applies to court-ordered disclosures and did not trigger

§ 1232g(b)(4)(B)'s five-year penalty.[7]  The Court will thus proceed to consider what other

sanctions may be appropriate.

c.   *Appropriate Sanctions*

i.   Parties' Arguments

Defendants argue for a laundry list of sanctions against Doe 2 and her lawyers.

Specifically, Defendants ask the Court to (a) award attorneys' fees and costs incurred by filing

and briefing the Motion for Sanctions and all fees and costs incurred in *Doe 2 v. T.M.S.* "to

address the violation of this Court's [Confidentiality Order]"; (b) strike Doe 2's complaint in

*Doe 2 v. T.M.S.*; (c) enjoin Plaintiffs' Counsel from using any information designated

confidential in the present case on behalf of Doe 2; and (d) order "that Defendants not produce

any education records to Plaintiff and Plaintiffs' Counsel for the next five years" in accordance

with FERPA.  [Doc. 207, p. 16].  The first three sanctions, Defendants argue, are proportional to

the egregiousness of the conduct to be sanctioned and would remediate the harm.  *Id.* at 14–16.

---

[7] Because the Court resolves this matter on statutory construction grounds, this opinion does not address the merits
of Doe 1's constitutional arguments as they relate to FERPA.

Monetary sanctions would directly compensate Defendants for the costs imposed by Plaintiffs' conduct; striking the *Doe 2 v. T.M.S.* complaint would be fitting since the document was borne of sanctionable conduct; and an injunction against cross-litigation use of designated-confidential information would prevent future harm. *Id.* at 14–16. Defendants' fourth proposed sanction, they argue, is required by unambiguous language in FERPA which prohibits institutions holding education records from continuing to give such records to third parties who have violated FERPA in ways specified by the statute. *Id.* at 13. The Court thus has no discretion, says Defendants, but to obey the statute. *Id.* at 14.

Plaintiffs deny they or their lawyers have engaged in sanctionable conduct and argue that, even if they have, each proposed sanction is disproportionate to the alleged sanctionable conduct. *See generally* [Doc. 225]. Relying on *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), Doe 2 argues that each factor listed in that case weighs against sanctions generally and the specific sanctions sought by Defendants. [Doc. 225, pp. 18–24]. Plaintiffs also argue that striking the *Doe 2 v. T.M.S.* complaint is beyond my power as pretrial magistrate in either case as well as being wholly disproportionate to the problem. *Id.* at 24. Finally, addressing the five-year FERPA sanction, Plaintiffs argue that Defendants are reading FERPA too broadly, that their sharing of education records did not violate the statute because it was pursuant to a court order, and that, even if it did violate FERPA, this instance of record-sharing does not reflect a "policy or practice" of prohibited record-sharing so the five-year prohibition is not required. *See id.* at 19 n.1.

ii. Relevant Law

Courts typically must award reasonable attorneys' fees and expenses for the violation of a protective order, including a stipulated confidentiality order, under Rule 37(a)(5). *See* Fed. R.

Civ. P. 26(c)(3); *Env't Dimensions, Inc. v. EnergySolutions Gov't Grp., Inc.*, 16-cv-01056-KWR-JHR, 2021 WL 1060341 at *2 (D.N.M. Mar. 19, 2021).  The Court has discretion to assess fees against "the party or attorney advising the conduct, or both[.]"  Fed. R. Civ. P. 37(a)(5)(A).  Attorneys' fees under Rule 37(a)(5)(A) cannot be awarded, however, when the opposing party's position is substantially justified, or other circumstances make an award of expenses unjust.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).  A position is substantially justified when it is "justified to a degree that could satisfy a reasonable person."  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Awards of attorneys' fees imposed pursuant to civil procedures should be compensatory, not punitive.  *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).  This means the award must be enough to cover the legal bills occasioned by the nonmovant's misbehavior and no greater.  *Id.*  The award must also be reasonable, and movants have the burden to "prove and establish the reasonableness of each dollar [and] each hour" for which they seek compensation.  Fed. R. Civ. P. 37(a)(5)(A); *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).  That said, accountant-like precision is not necessary because "[t]he essential goal in shifting fees is to do rough justice[.]"  *Haeger*, 581 U.S. at 110 (quotation marks omitted).

Courts may grant other relief under Rule 37 for failure "to obey an order to provide or permit discovery[.]"[8]  Fed. R. Civ. P. 37(b)(2)(A).  Such relief includes prohibiting the introduction of designated matters into evidence, striking pleadings, and dismissing the action.

---

[8] Defendants say that Rule 37(b)(2) authorizes the Court to sanction parties for violating protective orders. [Doc. 207, pp. 10–11].  Circuit courts, however, disagree on whether protective orders are "discovery orders" within the sweep of Rule 37(b)(2).  *See Lipscher v. LRP Pub'ns*, 266 F.3d 1305, 1323 (11th Cir. 2001) (holding that protective orders are not orders "for discovery" and therefore outside the scope of Rule 37(b)(2)); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) (holding that a protective order was an "order to provide or permit discovery" and within the scope of Rule 37(b)(2)).  For purposes of this Memorandum Opinion and Order, the Court assumes that the Confidentiality Order is an "order to provide or permit discovery" because, even if it is, the requested sanctions should be denied as wholly disproportionate.

Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii), (v).  A district court's decision to impose such sanctions is reviewed only for abuse of discretion.  *Ehrenhaus*, 965 F.2d at 920.  That said, district courts must only grant sanctions which are just and related to the claim at issue in the discovery order. *See Insur. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). Because dismissal is an extreme sanction, before it is granted, courts should first consider:  (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.  *Ehrenhaus*, 965 F.2d at 921.

Defendants suggest that Plaintiffs be held in civil contempt, so it should be addressed here that the undersigned lacks the power to hold parties in contempt.  Magistrate judges have contempt power in civil cases only when they preside with consent of the parties.  *See* 28 U.S.C. § 636(e)(3), (4).  The undersigned is a pretrial magistrate without unanimous consent.  That said, civil contempt sanctions must be remedial in nature – usually, compensatory fees.  *See Fed. Trade Comm'n v. Kuykendall*, 371 F.3d 745, 752 (10th Cir. 2004) (en banc).  Fees for violation of the Confidentiality Order will be assessed pursuant to Rule 37(a)(5), so civil contempt will not be addressed further.

### iii.  <u>Analysis</u>

#### A.  *Attorneys' Fees and Costs*

The Court will award Defendants' attorneys' fees.  Plaintiffs' position – that Doe 2 and her lawyers were free to use information designated confidential to prosecute Doe 2's separate lawsuit – is not so well-justified that it would satisfy a reasonable person.  For the reasons stated above, it cuts against the plain language of the Confidentiality Order to which Plaintiffs' counsel

agreed and, to be believed, requires the reader to ignore that the Order restricts both disclosure and *use* of information.  Nor do the circumstances make an award unjust, so long as it is levied against the lawyers instead of Doe 2.  It is unlikely that Doe 2, a minor, read the Confidentiality Order and then directed her lawyers to file a complaint which would directly violate it.  It is even more unlikely she would expect to be compelled to pay opposing counsel a fee to do it.  Her attorneys, however, are experienced practitioners familiar with protective orders and the consequences of violating them.  The fee award will thus be assessed only against the attorneys whose names were at the bottom of Doe 2's complaint.

Defendants must, however, prove their expenses.  Defendants did not attach any information suggesting the fees and expenses incurred in filing their Motion for Sanctions, nor any fees or expenses incurred in *Doe 2 v. T.M.S.* at address the violation.  Defendants will thus be ordered to submit a motion for attorney's fees and expenses, to which they must attach affidavits of the attorneys who worked on the Motion for Sanctions and other filings addressing Plaintiffs' violation of the Confidentiality Order.  The Court will award only reasonable fees, and Defendants will bear the burden to justify the hours spent and the amount charged for their work. *See Jane L.*, 61 F.3d at 1510.

### B.  *Striking Pleadings and Injunctive Relief*

Further relief is unwarranted.  Even assuming the undersigned can strike a complaint in a wholly separate case and order Defendants to withhold education records for five years, it would be unjust to do so.  Additionally, an injunction barring cross-litigation use of information designated confidential is unnecessary and thus will not be granted.

Considering the *Ehrenhaus* factors, striking Doe 2's complaint is an unjust sanction.  The culpability factor favors dismissal – the Confidentiality Order plainly prohibited cross-litigation

use of information designated confidential, yet Plaintiffs' counsel did it anyway.  So, too, does

the interference factor – Doe 2's violation has produced a small flurry of motions in both cases

and interrupted the regular process of discovery.  But all other factors cut against dismissal.

Defendants have not shown they are seriously prejudiced, and it is unlikely they were.  Doe 2's

lawyers deliberately censored Doe 2's complaint, ensuring that improperly used confidential

information was not exposed to the public.  To the degree they wrongly disclosed information to

Doe 2, she was already a significant fact witness in this case and thus likely to be exposed to

plenty of confidential information over the course of litigation.  Additionally, because her

allegations in *Doe 2 v. T.M.S.* overlap so much with allegations made in this case, discovery in

*Doe 2 v. T.M.S.* will almost inevitably give her access to much of the same information even if

her complaint were drafted in a non-violating way.  Warnings were present that confidential

information should not be misused, but the Court has issued no discrete warnings that this

conduct would result in having a case dismissed.  And it is hard to believe that sanctions less

than dismissal will not be effective.  Ideally, the discussion above roughly will finally clarify the

Confidentiality Order enough that parties will now universally adhere to it.

Nor should the five-year withholding of education records be ordered, neither as a

sanction nor pursuant to FERPA.  As discussed above, Plaintiffs did not trigger the five-year

penalty provision under 20 U.S.C. § 1232g(b)(4)(B).  Even if this Court has authority to enforce

FERPA by private action, the penalty would not be required.  Additionally, prohibiting a litigant

who is suing a school and its administrators from obtaining "education records" as defined by

FERPA would likely be a *de facto* dismissal of that case.  As discussed above, dismissal is

unwarranted here, and the Court declines to do it directly or otherwise.

Further, an injunction prohibiting "Plaintiffs' Counsel from using any information designated as Confidential Information on behalf of Jane Doe 2," [Doc. 207, p. 16], would be redundant.  As discussed above, the Confidentiality Order already forbids such use.  Doe 2 and her lawyers are thus admonished not to use information designated confidential again until the Confidentiality Order has been amended, she has been granted relief from it, or the information in question has been ruled not confidential.

        d.   *Amending the Confidentiality Order*

            i.   Parties' Arguments

As an alternative to holding that the Confidentiality Order, in its present form, permits her to use information designated confidential to prosecute *Doe 2 v. T.M.S.*, Doe 2 asks the Court to amend the Order "to permit her to access and utilize records and information subject to confidentiality designations, proposed redactions, and provisional sealing in this case without threat of sanctions or other prior restraints[.]"  [Doc. 182, p. 27].  She argues that this is a "common-sense solution" because *Doe 1 v. T.M.S.* and *Doe 2 v. T.M.S.* share a "common nucleus" of discoverable information and the same lawyers on each side.  *Id.* at 3–4.  Any other approach would produce repetitive work for parties, counsel, and the Court.  *Id.* at 4.

Defendants oppose amendment.  Rather than amend the Order, they say that "the appropriate relief here is for Doe 1, Doe 2, and Plaintiffs' Counsel to seek relief from the [Confidentiality] Order to share information with Doe 2."  [Doc. 195, p. 16].  Defendants further assert that the parties must agree to notify students and parents before any further release of education records as required by FERPA.  *Id.*  Though this may result in some duplicative work, Defendants argue that at least notification is required and proportional to the privacy interests at issue.  *Id.*

ii.  <u>Analysis</u>

Amendment does not seem appropriate for three reasons.  First, disputes addressed above make clear that, although the parties once agreed to the language of the Confidentiality Order, they no longer agree on its meaning.  Adding new language now without conferring with counsel may only add confusion.  Second, Doe 2 and Defendants are currently litigating what a protective order should look like in *Doe 2 v. T.M.S.* and briefing has revealed that the parties strongly disagree.  *See Doe 2 v. T.M.S.*, [Doc. 18].  It seems likely that such disagreements may soon spill over here.  Third, Defendants make good arguments for alternatives to amendment, such as granting relief from the Confidentiality Order, and point out that they may need to give another notification to parents and former students pursuant to FERPA.  Briefing on both sides, however, spent little time addressing these alternatives.  The parties thus seem to strongly disagree on the issue of amendment, but discussions and briefs have been overwhelmed by the issue of sanctions.  These are not ideal circumstances on which to address the issue, so the Court will not.

Amendment to the Confidentiality Order is thus denied.  Parties may pursue amendment by drafting the changes they wish to see, submitting their proposed changes to each other to seek concurrence, and if the parties disagree, they may seek an informal conference with me to try to resolve the dispute informally.  If this fails, the parties will have leave to file appropriate motions.

IV.   **CONCLUSION AND ORDER**

The Court holds as follows:

(A)  The Confidentiality Order, [Doc. 35], does not currently permit use of information designated confidential to litigate *Doe 2 v. Taos Municipal Schools et al.*, case no. 1:22-cv-

00590-KWR-JHR, unless the designation is properly challenged and the Court holds that the designation is improper.

(B)  Doe 2 and her lawyers violated the Confidentiality Order by using information designated confidential to litigate the separate case *Doe 2 v. Taos Municipal Schools et al.*, case no. 1:22-cv-00590-KWR-JHR.

(C)  Doe 2 and her lawyers did not violate 20 U.S.C. § 1232g(b)(4)(B)'s prohibition on improper third-party use of education records and thus did not trigger the statute's five-year penalty.  Defendants are not required to withhold education records from Plaintiffs pursuant to that statute.

(D)  Defendants' requests for injunctive relief are **DENIED.**

(E)  Defendants' request for attorneys' fees and costs is **GRANTED.**  Within thirty (30) days of entry of this Memorandum Opinion and Order, Defendants shall submit to the Court a motion for attorneys' fees and costs requesting a sum certain amount to be paid by lawyers representing Doe 2.  Defendants shall attach to their motion one or more affidavits of the attorneys who worked on the Motion for Sanctions and other motions necessary to respond to the violation of the Confidentiality Order, calculating the reasonable number of hours billed the reasonable fees and costs charged.

(F)  Doe 2's request that the Confidentiality Order be amended is **DENIED.**  The parties are free to pursue amendment or relief from the Confidentiality Order according to the process outlined above.

**IT IS SO ORDERED.**

_____
Jerry H. Ritter
United States Magistrate Judge

29