IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JANE DOE,

    Plaintiff,

v.

JANE DOE 2,

    Intervenor-Plaintiff,

v.                                                                         No. 1:20-cv-01041-SCY-JHR

TAOS MUNICIPAL SCHOOLS; LILLIAN
TORREZ, ROBERT TRUJILLO, LISA
ABEYTA-VALERIO, and EMY
DeHERRERA, *in their individual capacities,*

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR PROTECTIVE ORDER [DOC. 184]**

**THIS MATTER** is before the Court on Defendant Taos Municipal Schools' Emergency Motion for Protective Order from Notice of 30(b)(6) Deposition and Reconsideration of Certain Deadlines, [Doc. 184] ("the Motion"). The parties' privately resolved Taos Municipal Schools' ("T.M.S.") objections to depositions on subjects 1, 3, and 5, as well as T.M.S.'s requests for relief based on scheduling issues, so those parts of the Motion are denied as moot. Having carefully considered the briefing and relevant law, T.M.S.'s remaining request for a protective order against Doe's Notice of Rule 30(b)(6) Deposition on Subject 4 is granted.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

Jane Doe, the pseudonymous Plaintiff, sued Defendants on October 8, 2020. [Doc. 1]. She alleges that she was sexually harassed and assaulted on the campus of Taos High School in 2018 and that Defendants, the public school district which operates the high school and its

1

administrators, are liable to her for damages. *See generally* [Doc. 201]. She alleges three counts on which they may be liable: Counts I and II allege violations of her substantive rights to bodily autonomy, guaranteed by the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, and Count III alleges tort claims arising from New Mexico common law. *See* [Doc. 201, pp. 49–64]. The gist of her theory of liability on each count is that Defendants enabled Doe's assaulter, failed to adequately monitor school premises, inadequately hired and trained employees, and failed to properly investigate instances of harassment and assault, all of which breached Defendants' constitutional and common law duties and caused Doe to be assaulted. *See* [Doc. 201, pp. 49–64]. Following a scheduling conference in June 2021, *see* [Doc. 31], parties proceeded with discovery on Doe's claims.

In September 2022, Doe noticed an organizational deposition of Defendant T.M.S. on five subjects pursuant to Federal Rule of Civil Procedure 30(b)(6). [Doc. 184-1]. The fourth subject in the notice was:

> Communications from October 8, 2020, to the present regarding this litigation (including witness interviews, requests for same, requests for information about the case, and responses to same) between agents, employees or representatives of Defendant Taos Municipal Schools (including their counsel of record in this case) and the following witnesses: (a) Tracy Galligan, (b) Angela Henderson, (c) Carmela Vargas-Gonzales, (d) Francis Hahn, (e) Matthew Sandoval, (f) Joe Winter, (g) Henry Sanchez, and (h) Bob Ortiz.

[Doc. 184-1, p. 2]. T.M.S. objected to the notice and corresponded with Doe. In a letter written by one of Doe's lawyers, Doe agreed to at least limit the scope of the Subject 4, stating in a letter that she wanted to know:

> (1) names and contact information of the person or person(s) who communicated with each of the listed witnesses on your behalf regarding this litigation, (2) dates on which those communications occurred, (3) the means by which those communications were made (*e.g.*, by e-mail or telephone call), (4) what each witness said or was told with respect to communicating with Plaintiff's counsel or having their deposition taken in this case, and (5) whether any verbatim transcripts

2

or records of those communications exist, not including counsel's mental impressions noted in their attorney work product.

[Doc. 204-2, pp. 5–6].

Two days later, T.M.S. filed the present Motion. [Doc. 184]. T.M.S. and Doe then spoke more and resolved almost all objections. *See* [Doc. 191]. They still, however, disagreed over the propriety of a deposition on Subject 4. *See* [Doc. 191, p. 2]. Briefing, now narrowly focused on the Subject 4 deposition, was completed in October 2022. [Doc. 216].

## II.   DISCUSSION

### a.   *Parties' Arguments*

The parties' arguments about Subject 4 generally fall into one of two buckets: arguments about the permissible scope of discovery (particularly "relevance"), and arguments about attorney-client privilege and the attorney work product doctrine. Because the Motion is resolved solely based on the relevance issue, the discussion below does not address the parties' privilege and work-product arguments.

Doe says that her noticed deposition on Subject 4 is relevant for three reasons: to determine "potential bias and credibility issues," whether counsel "has met with non-party witnesses to prepare declarations" or other non-privileged evidence, and – most importantly – the degree to which T.M.S. has and exercises "influence over non-party witnesses' willingness to report, discuss, or testify about serial childhood sexual abuse occurring in Taos High School[.]" [Doc. 204, pp. 7–8]. Almost her all briefing is dedicated to the "influence" argument. Doe claims that T.M.S. or its lawyers may be dissuading non-party witnesses from speaking or voluntarily providing evidence to Doe and her lawyers. [Doc. 204, pp. 3–8]. For support, Doe directs the Court to instances during discovery when non-party witnesses have expressed hesitance to speak to Doe's lawyers, reluctance having their depositions taken, and the fact that

at least three non-party witnesses have refused outright to speak to Doe's counsel. *See* [Doc. 204, pp. 3–7]. Some stated they were afraid of retaliation, citing the fact that Taos, New Mexico, is a relatively small town and that involvement in the lawsuit might cause them reputational harm or make it harder to find a job. [Doc. 204, pp. 4–6]. Others mentioned that they had privately spoken to yet other individuals who allegedly stated they would not speak to Doe's lawyers.[1] [Doc. 204, pp. 5–7]. Doe's theory thus seems to be that present reluctance to voluntarily testify may have been caused by T.M.S.'s lawyers, and that this, in turn, suggests that T.M.S. previously used similar tactics to silence others with knowledge about sexual assaults at Taos High School, which then goes to Doe's claims.[2]

T.M.S. argues that Doe's position strains the outer boundaries of "relevant" discovery. In its Motion, T.M.S. cites case law explaining the limited scope of permissible discovery. *See* [Doc. 184, p. 6] (citing *Rivera v. DJO, LLC*, 11-cv-01119-JB-RHS, 2012 WL 3860744 at *1 (D.N.M. Aug. 27, 2012)). Then, in its reply brief, T.M.S. addresses each discrete instance Doe relies upon to assert that T.M.S. or its attorneys silenced witnesses. [Doc. 215, pp. 5–8]. Each instance, they say, shows only that the non-party witnesses in question were afraid of generalized

---

[1] Doe also accuses defense counsel of threatening a non-party witness during her deposition by "confront[ing] her in an argumentative manner" with the accusation that "she could be found liable for others' misconduct she witnessed." *See* [Doc. 204, pp. 4–5]. The deposition transcript does not bear out the accusation. Defense counsel's questions were, at worst, an inartful illustration of Doe's theory of liability. *See* [Doc. 215-1, pp. 5–6]. Depositions are, for normal people, tense, uncomfortable, and exhausting. The fact that a lay witness made some defensive statements about her responsibilities as a teacher do not suggest that defense counsel was threatening her.

[2] Doe also claims that T.M.S.'s objections to the Subject 4 deposition are untimely and that T.M.S. waived its relevance argument. [Doc. 204, pp. 16–17]. The Court rejects Doe's position. First, defense counsel's failure to fully articulate their objections during an informal telephonic status conference was not waiver. The circumstances of that conference and the clerk's minutes should have made clear that, although most matters were worked out, some objections would likely come forward. *See* [Doc. 192] (viewable on CM/ECF). Counsel should strive for clarity, but requiring informal communications to be so clear that they be treated like oral briefing would nearly defeat the purpose of informal conferences. Second, Doe ignores Rule 26(b)(2)(C)(iii), which states that "[o]n motion *or on its own*, the court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added). The Court thus has the power to determine whether the noticed deposition is within the scope of Rule 26(b)(1) independent of any party's motion, making waiver irrelevant.

repercussions, not that T.M.S. or its lawyers dissuaded the witnesses from talking to Doe's lawyers. [Doc. 215, pp. 5–8]. And, T.M.S. says, the information Doe wants has no bearing on her claims. [Doc. 215, pp. 8–9]. T.M.S. asserts that the alleged pressuring of witnesses not to speak to Doe's lawyers "occurred years after both [Doe's and Doe 2's] assaults and does not bear on the reporting and investigating of [their assaults] by TMS personnel[.]" [Doc. 215, p. 8]. A deposition on Subject 4 would thus be outside the scope of allowable discovery and should blocked by a protective order. [Doc. 215, p. 9].

      b. *Relevant Law*

Information is discoverable when it is a "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Giving the word its plain meaning, information is "relevant" when it has a significant and demonstrable bearing on the matter at hand – here, "any party's claim or defense[.]" *See* Merriam-Webster's Collegiate Dictionary 1051, *relevant* (11th ed.); *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1207, 1233 (D.N.M. 2021) (quoting *State Farm Mut. Auto Ins. v. Fayda*, 14-cv-09792-WHP-JCF, 2015 WL 7871037 at *2 (S.D.N.Y. Dec. 3, 2015)). The wide breadth of relevance is counterbalanced by proportionality, which limits the scope of discovery according to various factors, including "the importance of the discovery in resolving the issues[.]" Fed. R. Civ. P. 26(b)(1). Although information within the scope of discovery goes far beyond just admissible evidence, the potential breadth of discovery is not a license to perform a "speculative fishing expedition" on matters unrelated to claims and defenses. *See Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1164 (10th Cir. 2010).

Though discovery is primarily directed by the parties, courts can limit it. If a court determines that proposed discovery is outside the scope of Rule 26(b)(1), the court must limit the

frequency or extent of discovery to fit within the permissible scope. Fed. R. Civ. P. 26(b)(2)(C)(iii). Parties from whom discovery is sought can also ask the court to prohibit discovery with a protective order. Fed. R. Civ. P. 26(c)(1). The movant for a protective order bears the burden to show there is good cause for it. *New Mexico ex rel. Balderas v. Real Estate L. Ctr., P.C.*, 429 F. Supp. 3d 996, 1007 (D.N.M. 2019). District courts have broad discretion to determine what discovery is permitted by the rules and to limit discovery for good cause shown. *See Sec. & Exch. Comm'n v. Merrill Scott & Assocs.*, 600 F.3d 1262, 1271 (10th Cir. 2010).

    c. *Analysis*

Doe's proposed deposition on Subject 4 is outside the scope of discovery allowed by Rule 26(b)(1) and thus will not be allowed. Defendant T.M.S. will thus be granted protection.

Doe's first two arguments for the deposition – that it will help assess credibility and reveal evidence in the form of witness declarations – fail on proportionality grounds. By her own admission, these are facts she can learn of through written discovery or which she could have addressed in depositions with the witnesses themselves. *See* [Doc. 204, pp. 3–4] (comparing Subject 4 to an interrogatory). A wholly new organizational deposition to address these specific facts is disproportionate to the needs of the case.

Doe's main argument fails because her proposed deposition seeks information irrelevant to the parties' potential claims and defenses. Doe wants to determine whether and to what degree T.M.S.'s lawyers, over the course of litigation, may have dissuaded eight non-party witnesses from speaking to her lawyers and voluntarily giving their depositions. Her underlying claims against T.M.S. are that it breached various constitutional and common-law duties in a way that caused her to be harassed and assaulted by another student on campus in 2018. These two things – what T.M.S.'s lawyers are doing now in the specific context of this litigation and

what T.M.S. itself was doing in and before 2018 – are not clearly related.  Doe attempts to bridge the logical gap by asserting that this goes to whether T.M.S. systematically silences its employees and others associated with T.M.S. about sexual assault, and that this in turn bears on T.M.S.'s culpability for and response to Doe's assault.  The claim, however, is purely speculative.  Relevance in discovery is broad, but parties seeking information must be able to show more than a speculative connection between the information they want and the issues being litigated.  Doe has failed at this.

Doe's argument is made more speculative by the instances she cites in support.  The reluctance she describes among the non-party witnesses does not suggest they have been threatened, dissuaded, or coerced.  Rather, the non-party witnesses plainly described the kind of social pressure that naturally comes with a lawsuit against a major public institution in a small town.  It is regrettable that the Court's mission – to seek truth and administer justice – is impeded from time to time by some individuals' reluctance to voluntarily participate in litigation.  But the Court cannot untangle cases from the social realities of the world in which they exist, and it is not surprising that those social realities dissuade people from voluntary participation.

Doe's response brief makes serious allegations.  It is sometimes a violation of a lawyer's professional duties to ask people not to voluntarily give information relevant to another party in a case.  *See* N.M.R.A. § 16-304.  The Court will not opine on whether the actions Doe suggests cross that boundary.  But if she believes, and has evidence to suggest, that T.M.S.'s lawyers have committed sanctionable actions, she is free to pursue a motion for sanctions.  The Court is not persuaded, however, that discovery on parties' claims and defenses should be used to threaten ethics sanctions.

**III.     CONCLUSION AND ORDER**

The Court holds as follows:

(1)  Defendant Taos Municipal Schools' request that it be protected from Jane Doe's Notice of Rule 30(b)(6) Deposition is **GRANTED** as to Subject 4 of the Notice.  The noticed deposition on that subject shall not proceed.

(2)  All other relief requested in Defendant Taos Municipal Schools' Emergency Motion for Protective Order from Notice of 30(b)(6) Deposition and Reconsideration of Certain Deadlines, [Doc. 184], is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

_____
Jerry H. Ritter
United States Magistrate Judge