**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JANE DOE,**

     **Plaintiff,**

**v.**                                         **No. 1:20-cv-01041-SCY-JHR**

**TAOS MUNICIPAL SCHOOLS, and**
**LILLIAN TORREZ,**
**ROBERT TRUJILLO, and**
**LISA ABEYTA-VALERIO** *in their*
*individual capacities***,**

     **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER, OR, IN THE ALTERNATIVE, TO SET NEW DISCOVERY DEADLINES [DOCS. 397, 398]</u>

THIS MATTER comes before the Court on Defendants' Motion for Protective Order, or, in the Alternative, to Set New Discovery Deadlines [Docs. 397, 398]. Plaintiff filed a response in opposition [Doc. 400] and Defendants replied [Docs. 403, 404].[1] Having reviewed the briefing, case record, and applicable law, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

## I.    <u>PROCEDURAL BACKGROUND</u>

Jane Doe filed suit against Defendants on October 8, 2020, alleging civil rights and torts claims related to Defendants' failure to protect her and other students from sexual assault by a fellow student, T.R., whom Defendants knew had a propensity for such conduct. [Doc. 1]. Defendants filed an answer on April 2, 2021, and the Court issued a scheduling order on June 17,

---

[1] Docs. 398 and 404 are the provisionally sealed and unredacted versions of the motion and reply brief for Defendants' requested protective order. The Court cites to the publicly available, redacted versions of the filings in this Order, Docs. 397 and 403.

2021, with discovery set to close on January 5, 2022. [Docs. 19, 32]. During discovery from 2021 to 2022, the Court extended discovery four times pursuant to the parties' joint motions. [Docs. 47, 58, 75, 97].

On June 10, 2022, Doe moved to amend her complaint to add new factual allegations and flesh out the legal theories behind her claims. [Doc. 102]. The proposed amendments included specified § 1983 claims for violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. *Id.* at 3–4. Defendants opposed the motion, arguing the new factual allegations and updated claims were futile, inflammatory, and prejudicial. [Doc. 119]. While its decision on the motion to amend pended, the Court twice more extended discovery. [Docs. 133, 174].

On October 13, 2022, the Court granted Doe's motion to amend. [Doc. 186]. The Court rejected Defendants' futility arguments, holding they were better presented in a motion to dismiss for failure to state a claim. *Id.* at 9–10. Doe filed her first amended complaint ("FAC") on October 21, 2022. [Doc. 202]. Defendants moved to dismiss the FAC on November 10, 2022, arguing Doe 1's allegations failed to impute actions or knowledge to Defendants regarding T.R.'s assault and harassment of female students that would constitute due process or equal protection violations. [Doc. 232]. Defendants also raised qualified immunity and sought a stay of the case until the Court issued a ruling on a motion to dismiss. [Doc. 234]. On January 6, 2023, before the expert report deadlines and discovery had expired, the Court vacated all discovery deadlines pursuant to the parties' joint motion. [Docs. 254, 255].

Before the Court ruled on Defendants' motion to dismiss, Doe moved to file a second amended complaint ("SAC") on January 25, 2023. [Doc. 257]. Doe sought to amend the complaint by removing a Defendant, Emy DeHerrera, and to correct certain factual allegations. *Id.* On August

2

7, 2023, the Court granted Doe's motion to file the SAC and denied as moot Defendants' motion to dismiss and motion to stay. [Doc. 278]. Doe filed the SAC on November 8, 2023. [Docs. 296, 297]. Defendants moved to dismiss the SAC on January 3, 2024, asserting the amendments failed to correct the deficiencies in Doe's claims and could not overcome the individual Defendants' qualified immunity defense. [Doc. 317]. Defendants again moved to stay the case pending resolution of the qualified immunity defenses, which the Court granted on September 11, 2024. [Docs. 313, 348]. Both before and after the stay had been entered, the parties engaged in extensive motions practice regarding the adoption of confidentiality orders and violations thereof.

On September 23, 2024, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing Doe's claims except for equal protection violations under the Fourteenth Amendment and § 1983 against Defendants Trujillo, Abeyta-Valerio, and Taos Municipal Schools ("TMS"), and premises liability against all Defendants under the New Mexico Tort Claims Act. [Doc. 351]. Defendants filed their answer to the remaining claims in the SAC on December 13, 2024, followed by an amended answer on December 20, 2024. [Docs. 362, 368].

On February 3, 2025, the Court held a status conference to address new scheduling order parameters and deadlines. [Doc. 378 text only]. The Court ordered the parties to submit an abbreviated joint status report and discovery plan by March 5, 2025. *Id.* Before doing so, Defendants filed a second amended answer with leave of the Court on February 7, 2025. [Doc. 385]. The parties filed their joint status report on March 5 [Doc. 388]. At a discovery conference on May 13, 2025, the Court made clear that no stay remained in place following its resolution of the motion to dismiss, but all discovery deadlines had either expired or been vacated and never reinstated. [Doc. 394 text only]. Expert discovery had not formally ended but required new deadlines. *Id.* In response, Defendants noted their intent to file a motions for a protective order and

to reopen discovery. *Id.* Defendants filed the instant motion for a protective order on May 27, 2025.

## II.    BRIEFING SUMMARY

Defendants request the Court prohibit Doe from engaging in discovery pursuant to Fed. R. Civ. P. 26(c) and 26(b)(2)(C) on eight fact topics in the SAC: (1) The move of the Chrysalis Alternative School campus—a program for behaviorally challenged students in which T.R. had been enrolled—to Taos High School; (2) The fact Defendants permitted T.R. to wrestle on the wresting team, which Doe alleges taught T.R. how to physically subdue victims and led Defendants to show favoritism towards him; (3) TMS's alleged gender bias in its sport programs and the impact it had on the safety of female students; (4) Defendants' actions in response to certain information;[2] (5) The adequacy of Defendants' staffing and stationing of security guards; (6) The sexual harassment training Defendants did or did not adequately provide to students; (7) T.R.'s work study assignments and records, and who supervised him; and (8) The Office of Civil Rights facilitated agreement between Doe and TMS for her Title IX administrative claim, which touched on subtopics of the location and monitoring of security cameras on campus and sexual harassment and Title IX training provided to teachers and staff. [Doc. 397]. Defendants argue these factual issues are immaterial to Doe's equal protection and premises liability claims but would require expensive and time-consuming discovery to defend against. *Id.* at 14. If, however, the Court determines any or all topics fall within the scope of Rule 26(b)(1), Defendants request the Court permit them to conduct such discovery. *Id.* at 14–15.

Doe responds that Defendants improperly disguise a motion in limine as a discovery motion to obtain a ruling on the eight fact topics' relevance that they can use at trial. [Doc. 400, at

---

[2] The information that Defendants received is subject to the confidentiality order in this case and redacted from the unsealed version of Defendants' briefing.

5]. Regardless, Doe does not seek more discovery beyond "a few small remaining supplements and other tasks," making Defendants' requested protective order unnecessary. *Id.* at 5–8. Doe further argues that all eight fact topics are relevant to whether Defendants knew female students at Taos High School were at serious risk of sexual harassment but failed to address it. *Id.* at 8. Doe then contends that her original complaint and discovery requests put Defendants on notice that she might raise these fact topics at trial, meaning they should have already completed their requested discovery prior to the FAC. *Id.* at 9–11. Defendants reply they properly seek a protective order regarding future discovery and that the issue of trial admissibility is incidental. [Doc. 403, at 1–2]. If the Court finds any of these eight fact topics relevant, Defendants assert they had no "opportunity [or] obligation" to conduct discovery given the proximity of the FAC's filing to the Court's suspension of the scheduling order's deadlines and eventual stay of discovery. *Id.* at 2–4.

### III.    APPLICABLE LAW

#### A.    Rule 26 Protective Orders.

Courts may limit or prohibit discovery for a variety of reasons, including but not limited to undue expense, needless duplication, or failure to stay within the scope of discovery. Fed. R. Civ. P. 26(b)(2)(C), 26(c)(1). "A party or any person from who discovery is sought" may receive a protective order against disclosure if they demonstrate "good cause" that the discovery will inflict "annoyance, embarrassment, oppression, or undue burden or expense" on it. *Id.* 26(c)(1). Good cause requires more than speculation; the movant must make "a particular and specific demonstration of fact" justifying the protective order. *S2 Automation LLC v. Micron Tech., Inc.*, 283 F.R.D. 671, 680 (D.N.M. 2012) (quotation omitted). Courts may grant, deny, or modify protective orders in their discretion. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990).

#### B.    Modifications of Scheduling Orders and Reopening of Discovery.

A pretrial scheduling order, including its discovery deadlines, may be modified for good cause. Fed. R. Civ. P. 16(b)(4). That standard governs discovery extensions before discovery has closed. *See Palczynsky v. Oil Patch Grp., Inc.*, No. 21-cv-01125, 2025 WL 2029731, at *1 (D.N.M. July 21, 2025). The linchpin of good cause under Fed. R. Civ. P. 16(b)(4) is whether the party could not have met its scheduling deadlines despite diligent efforts to do so. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Examples of good cause include the revelation of new information material to a claim or defense, recent changes to applicable law, or an unforeseeable need for more time to review or complete disclosures. *Id.*; *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 402–03 (D.N.M. 2018). If a party seeks to reopen discovery after it has closed, additional factors for consideration include the imminence of trial, opposition to the request to reopen, prejudice to the other parties, the foreseeability of the need to conduct additional discovery, and the likelihood additional discovery will lead to relevant evidence. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). Districts courts enjoy considerable discretion in pretrial management, but courts should avoid where possible the "drastic sanction" of keeping evidence from being offered at trial through enforcement of the scheduling order. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) (quotation omitted).

## IV.    ANALYSIS

The Court finds that Defendants have failed to demonstrate good cause to justify a protective order. However, the Court finds good cause to allow Defendants to extend discovery on the eight fact topics raised in their motion.

### A.    Defendants Have Not Shown Good Cause for a Protective Order.

The parties argue whether Defendants' motion for a protective order constitutes an improper motion in limine. [Doc. 400, at 5–8]; [Doc. 403, at 1–2]. While Defendants insist their motion pertains to discovery, they do contend that ruling on the relevance of a topic during

6

discovery must precipitate the same ruling at trial. [Doc. 397, at 14 n.11]; [Doc. 403, at 2 n.2]. The Court need not speculate on Defendants' reason for their motion based on this argument. Discovery rulings do not, when discussing relevance, control or influence evidentiary rulings. Though relevance anchors the scope of discovery, it does not solely determine discoverability. *See Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1207, 1233 (D.N.M. 2021). The Court must balance a variety of factors that include cost of production, relative access to the material, and the nature and amount of damages at stake in the suit. Fed. R. Civ. P. 26(b)(1). But whether a party may admit evidence at trial depends only on the evidence's probity, materiality, and excludability under an applicable rule. Fed. R. Evid. 401, 402. Furthermore, relevance in discovery does not strictly equate to relevance in evidence. Discovery may extend the scope of relevance beyond Fed. R. Evid. 401 to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Tolbert*, 555 F. Supp. 3d at 1233 (internal quotation omitted); *see also Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 431 (D.N.M. 2022). In sum, discoverability concerns whether material a party is seeking is likely worth the resources and effort it will take to produce and disclose it, not what evidence may bear on a claim or defense's merit.

Turning to whether good cause exists for a protective order, Defendants offer no concrete examples of discovery Doe seeks to or might seek in the future from them. *See* [Doc. 397-1]. Instead, Defendants argue the expense they will incur pursuing discovery that *they* want from Doe on these eight fact topics will dwarf their relevance (if any) to Doe's claims. [Doc. 397, at 7]; [Doc. 397-1, at 9–24]. However, Defendants cannot manufacture their own justification for a protective order. By express language, protective orders relieve parties "from whom" another party is seeking overly expensive or burdensome discovery. Fed. R. Civ. P. 26(c)(1). In some exceptional cases,

parties have obtained relief related to their own deposition notices. *Haymes v. Smith*, 73 F.R.D. 572 (W.D.N.Y. 1976) (shifting costs of Plaintiffs' deposition of key witness where Plaintiffs were incarcerated, proceeding in forma pauperis, and raised significant constitutional claims); *Cent. Hide & Rendering Co. v. B-M-K Corp.*, 19 F.R.D. 296 (D. Del. 1956) (excluding unnecessary participants in deposition). However, none of these exceptions included a party receiving an order holding certain issues irrelevant to spare it from its *own* discovery requests. *See Stortz by Stortz v. Seier*, 835 S.W.2d 540, 542–43 (Mo. Ct. App. 1992) (interpreting state analogue to Fed. R. Civ. P. 26, holding "when . . . a party seeks discovery, a protective order is inappropriate to protect that party from [itself]"). The Court finds Defendants have not shown good cause for a protective order.

**B.    The Court Finds Good Cause to Permit Defendants Discovery on the Eight Fact Topics Listed in its Motion.**

In the alternative, Defendants ask the Court to extend discovery to allow them to serve new discovery requests and deposition notices on Doe, identify new fact and expert witnesses, and update their disclosures for Doe's surviving premises liability claim and new equal protection claim. [Doc. 397, at 7]. Defendants argue they could not have timely completed this discovery given the timing of Doe's amendments to her claims and the suspension of deadlines and discovery which followed shortly after. [Doc. 403, at 1–4]. Doe objects to the request, arguing that she had pleaded the factual allegations and legal theories supporting her equal protection and premises liability claims in her original complaint. [Doc. 400, at 9–10]. Therefore, Defendants could and should have already performed their requested discovery. *Id.*

First, the Court finds that the good cause standard for modifying scheduling orders, not the additional factors for reopening discovery, applies here. Discovery did not formally close in this case. After several extensions based on stipulated good cause, the parties agreed to suspend the scheduling order while the Court resolved Defendants' motion to stay and motion to dismiss the

8

FAC. [Doc. 254]. The Court later stayed discovery pending resolution of Defendants' motion to dismiss the SAC before the parties could agree to new deadlines and discovery parameters. [Doc. 348]. And on February 3, 2025, the Court ordered the parties to prepare a joint status report for the issuance of a new scheduling order. [Doc. 378 text only]. Therefore, Defendants must demonstrate they could not have obtained their requested discovery earlier through diligent efforts. *Gorsuch*, 771 F.3d at 1240. To assess Defendants' diligence, the Court must determine the relevant time period for consideration. Doe's amended factual allegations and equal protection claim were not operative until she filed the FAC on October 21, 2022. [Doc. 202]. By that time, written discovery had progressed significantly and the deadlines for expert disclosures and discovery had extended to early 2023. After Doe filed the FAC, Defendants diligently pursued dismissal based on their qualified immunity defense and a stay of discovery, and the Court suspended all active scheduling order deadlines less than three months later. [Docs. 234, 255]. The lack of a formal stay until September 11, 2024, to which Defendants were entitled, resulted from the Court's delays in ruling on Defendants' motions. *See* [Docs. 278, 348]. For these reasons, the Court finds Defendants had inadequate cause and opportunity to conduct the discovery they now request after the filing of the FAC. As a result, the Court must consider whether the original complaint gave Defendants sufficient notice of the eight fact topics in its motion to have completed their requested discovery. *See City of Las Cruces v. United States*, No. 17-cv-00809, 2021 WL 1090040, at *2 (D.N.M. Mar. 22, 2021) (opportunity to pursue discovery does not show lack of diligence when party had no obligation to pursue it).

The original complaint contained allegations that related in part to the eight topics in dispute. *See e.g.*, [Doc. 1, at 11–12] (failure of TMS to install cameras and monitor areas known to be used by T.R. for sexual assault). The complaint included a broad § 1983 claim based on

Defendants' custom of conscious disregard of sexual assault and harassment perpetrated by T.R. against female students. *See id.* at 13–14, 16, 18. On the same basis, Doe pleaded a state tort claim for unsafe premises. *Id.* at 18–19. Thus, that aspect of Doe's equal protection and premises liability claims have been part of this case since its inception. *Compare id* at 18, *with* [Doc. 202, at 51–53].

However, the Court finds good cause to extend discovery. The original complaint gave no notice to Defendants that Taos High School's sports leagues, Chrysalis Alternative School, or T.R.'s wrestling and work study assignments were at issue. *See* [Doc. 1]. And even if these eight fact topics merely fleshed out existing allegations, the introduction of the equal protection claim materially changed their role in the case. For example, the Court dismissed Doe's substantive due process claims in the SAC, holding that a substantive due process violation required affirmative conduct directed at Doe specifically. [Doc. 351, at 45–46]. Actions and inactions by Defendants which affected the public at large did not suffice. *Id.* at 46–48. However, that same conduct could support an equal protection claim. *Id.* at 50–52. Therefore, the introduction of the equal protection claim (as well as the FAC's new elaboration of the premises liability claim) significantly changed Defendants' available defenses.

Defendants have consistently maintained that Doe's amendments to the FAC, and later the SAC, would require additional discovery.[3] [Doc. 232, at 6]; [Doc. 263, at 7–8]. Doe herself argued that she did not, and could not have, "connect[ed] the dots" to add or elaborate on these eight fact topics and her claims before the scheduling order's deadlines had begun to expire. [Doc. 102, at 7,

---

[3] Doe 1 argues that Defendants conceded her amendments in the FAC "added little to the basic issues in this case." [Doc. 400, at 4]. Doe 1, however, mischaracterizes Defendants. As the Court discussed above, the amendments added little to the primary issue of whether Defendants willfully neglected sexual assault and harassment occurring against Taos High School's female students. But Defendants have argued since the FAC was first filed that the equal protection claim raised new facts and changed the relevance of existing facts, meaning more discovery would be needed. [Doc. 232, at 6 n.1] ("[Defendants] have already expended significant resources on the discovery that has been conducted to date . . . The discovery conducted in this case does not entirely encompass the new theories in the FAC, and the expanded scope . . . will require additional . . . discovery.").

13–14]. The Court cannot rule Doe showed good cause to amend the scheduling order but rule Defendants lack good cause to do so too on the same grounds.

**V.      CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Defendants' motion for a protective order. The Court ORDERS the parties to meet and confer to discuss new discovery parameters and deadlines to allow Defendants to conduct discovery on the eight fact topics listed in its motion within **fourteen (14) days**. If the parties can stipulate entirely, they shall jointly file a motion to modify the scheduling order and submit a proposed order to the Court's email address at ritterproposedtext@nmd.uscourts.gov within **fourteen (14) days** of their conferral. If the parties cannot stipulate to an order, they shall file a new joint status report in CM/ECF stating their areas of agreement and disagreement within **fourteen (14) days** of their conferral. Upon receipt of the joint status report, the Court will set a scheduling conference.

IT IS SO ORDERED.

HON. JERRY H. RITTER
United States Magistrate Judge

11